**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| REPUBLIC MAXIMAL LLC, | ) | |
| REPUBLIC MASTER FUND, LP, | ) | |
| EQUIPMENTSHARE GROWTH ONE, LP, | ) | |
| EQUIPMENTSHARE GROWTH TWO, LP, | ) | |
| EQUIPMENTSHARE GROWTH THREE, LP, | ) | |
| EQUIPMENTSHARE ROMULUS CLOSE TWO, LP, | ) | |
| EQUIPMENTSHARE SECONDARY ONE, LP, | ) | |
| EQUIPMENTSHARE SECONDARY TWO, LP, | ) | |
| EQUIPMENTSHARE SECONDARY THREE, LP, | ) | |
| EQUIPMENTSHARE SECONDARY 2020, LP, | ) | |
| EQUIPMENTSHARE SECONDARY II, LP, | ) | |
| EQUIPMENTSHARE SECONDARY III, LP, | ) | Case No.: _____ |
| EQUIPMENTSHARE QUALIFIED 2020, LP, | ) | |
| EQUIPMENTSHARE QUALIFIED 2020 II, LP, | ) | |
| EQUIPMENTSHARE QUALIFIED 2020 III, LP, | ) | |
| EQUIPMENTSHARE QUALIFIED 2020 IV, LP, | ) | |
| EQUIPMENTSHARE 2020 ONE, LP, | ) | |
| EQUIPMENTSHARE 2020 TWO, LP, | ) | |
| EQUIPMENTSHARE 2020 THREE, LP, | ) | |
| EQUIPMENTSHARE 2020 FOUR, LP, | ) | |
| EQUIPMENTSHARE 2020 FIVE, LP, | ) | |
| EQUIPMENTSHARE 2020 SIX, LP, | ) | |
| EQUIPMENTSHARE 2020 SEVEN, LP, | ) | |
| EQUIPMENTSHARE 2020 EIGHT, LP, | ) | |
| EQUIPMENTSHARE 2020 GAINGELS, LP, and | ) | |
| EQUIPMENTSHARE SAFE 1.7, LP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROMULUS CAPITAL PARTNERS II, LLC, | ) | |
| ROMULUS EQUIPMENTSHARE GROWTH LP, | ) | |
| ATHENA 2, INC., SNC 1 LCC, APOLLO1 INC., | ) | |
| ROMULUS EQUIPMENTSHARE GROWTH II | ) | |
| LP, RC EQUIPMENT SHARE GROWTH VI LP, | ) | |
| and NEIL CHHEDA, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Republic Maximal LLC ("Republic"), Republic Master Fund, LP ("Republic Master Fund"), EquipmentShare Growth One, LP, EquipmentShare Growth Two, LP, EquipmentShare Growth Three, LP, EquipmentShare Romulus Close Two, LP, EquipmentShare Secondary One, LP, EquipmentShare Secondary Two, LP, EquipmentShare Secondary Three, LP, EquipmentShare Secondary 2020, LP, EquipmentShare Secondary II, LP,  EquipmentShare Secondary III, LP, EquipmentShare Qualified 2020, LP, EquipmentShare Qualified 2020 II, LP, EquipmentShare Qualified 2020 III, LP, EquipmentShare Qualified 2020 IV, LP, EquipmentShare 2020 One, LP, EquipmentShare 2020 Two, LP, EquipmentShare 2020 Three, LP, EquipmentShare 2020 Four, LP, EquipmentShare 2020 Five, LP, EquipmentShare 2020 Six, LP, EquipmentShare 2020 Seven, LP, EquipmentShare 2020 Eight, LP, EquipmentShare 2020 Gaingels, LP, and EquipmentShare SAFE 1.7, LP (collectively, "Plaintiffs") file this Complaint against Defendants Romulus Capital Partners II, LLC ("Romulus"), Romulus EquipmentShare Growth LP (the "Series A Fund"), Athena 2, Inc. ("Athena"), SNC 1 LLC ("SNC"), Apollo1 Inc. ("Apollo"), Romulus EquipmentShare Growth II LP (the "Growth II Fund"), RC Equipment Share Growth VI LP (the "RC Growth VI Fund"), and Neil Chheda ("Chheda") (collectively, "Defendants") and state as follows:

## SUMMARY OF THE ACTION

1.      Plaintiffs bring this action seeking damages and/or recission related to their investments in the Series A Fund, the Growth II Fund, and the RC Growth VI Fund (collectively, the "Funds").  The Funds are limited partnerships created for the purpose of investing (directly or indirectly) in shares of preferred stock, or instruments convertible into shares of preferred stock, of EquipmentShare.com Inc. ("EquipmentShare").

2.      Through a series of false representations and willful omissions, Romulus and Chheda fraudulently induced Republic, as investment adviser and general partner ("GP") to each of the other Plaintiffs, to direct the purchase of limited partnership interests ("LP Interests") in the Series A Fund from Athena, SNC, and Apollo (collectively, the "Transferors") at a substantially inflated price.  To facilitate these transactions, Romulus and Chheda misrepresented the valuation of EquipmentShare that was used when the Transferors purchased their LP Interests, and failed to disclose that the Transferors were not the initial purchasers of their LP Interests.  Instead, the Transferors acquired their LP Interests through undisclosed intervening transactions that were based on a considerably higher valuation of EquipmentShare.  Because EquipmentShare stock is the only asset held by the Series A Fund, the value of the Series A Fund is determined solely by the value of EquipmentShare.  As a result of Romulus and Chheda's misrepresentations regarding the valuation of EquipmentShare used to determine the purchase price of the Transferors' LP Interests, Republic received a significantly smaller interest in the Series A Fund, and therefore a significantly smaller indirect interest in EquipmentShare, than Romulus and Chheda led Republic to believe.   Romulus and Chheda appear to have mislead Republic because – unbeknownst to Republic – the Transferors were owned and controlled by *members of Chheda's family*.  Romulus and Chheda failed to disclose that Chheda was an interested party in these transactions based on his familial relationship with the Transferors and their beneficial owners.  As a result of Romulus and Chheda's fraud, Plaintiffs' LP Interest in the Series A Fund is worth *at least $60 million less* than what Plaintiffs were led to believe they were purchasing when they entered into the transactions.

3.      As part of the transfer agreements related to the transactions, Transferors also made certain contractual representations and warranties that Plaintiffs now know were false.  Among

these representations and warranties, the Transferors represented that Romulus and Chheda were not acting as an advisor, finder, or agent on behalf of the Transferors.  Plaintiffs now know that Romulus and Chheda were acting on behalf of and for the benefit of the Transferors when they made the false representations.  Romulus and Chheda took this action on behalf of the Transferors, in part, to increase the purchase price paid to members of Chheda's family.

4.      In addition, Romulus entered into independent contractor agreements with a related company, WELD Advisory Holdings LLC ("WELD"), solely for the purpose of charging unauthorized monitoring expenses to many of Romulus' partnerships, including the Growth II Fund and the RC Growth VI Fund, in violation of Romulus' fiduciary duties owed to the limited partners (the "LPs").  Under the terms of the Funds' limited partnership agreements ("LPAs"), Romulus was only permitted to charge monitoring expenses that were related to the investment activities of the Funds.  To avoid this clear contractual limitation, Romulus entered the independent contractor agreements with WELD so that WELD could charge fees to the Growth II Fund and the RC Growth VI Fund that Romulus otherwise could not collect.  On information and belief, WELD and Romulus are under common control and the principals of Romulus hold a substantial economic interest in WELD.  It appears that Romulus entered the independent contractor agreements with WELD to funnel unauthorized monitoring fees to Romulus' owners at the expense of the Growth II Fund, the RC Growth VI Fund, and their LPs.  These unauthorized monitoring expenses had the effect of reducing the liquidation value and tax basis of Plaintiffs' investments in the Growth II Fund and the RC Growth VI Fund, thereby directly damaging Plaintiffs.

## **PARTIES**

5.      Plaintiff Republic is a Delaware Limited Liability Company with its principal place of business is in Boston, Massachusetts.  Plaintiff Republic is the parent company to Republic Capital Adviser LLC, a Delaware Limited Liability Company with its principal place of business

4

is in New York, New York.  Republic Capital Adviser LLC, as the successor to Republic, is the GP of Republic Master Fund and is the GP, controls the GP, or is affiliated with the GP of all entities (or "series") formed under Republic Master Fund.

6.      Plaintiff Republic Master Fund is a Delaware series limited partnership.  Republic Master Fund has multiple entities (or "series") formed under it for the purpose of investing.  Each series under Republic Master Fund is a special purpose vehicle ("SPV") organized solely to acquire a single asset.

7.      Plaintiffs EquipmentShare Growth One, LP, EquipmentShare Growth Two, LP, EquipmentShare Growth Three, LP, EquipmentShare Romulus Close Two, LP, EquipmentShare Secondary One, LP, EquipmentShare Secondary Two, LP, EquipmentShare Secondary Three, LP, EquipmentShare Secondary 2020, LP, EquipmentShare Secondary II, LP,   EquipmentShare Secondary III, LP, EquipmentShare Qualified 2020, LP, EquipmentShare Qualified 2020 II, LP, EquipmentShare Qualified 2020 III, LP, and EquipmentShare Qualified 2020 IV, LP, (collectively, the "Series A Plaintiffs") are each an individual series of Republic Master Fund that were established for the purpose of investing in the Series A Fund.

8.      Plaintiffs EquipmentShare 2020 One, LP, EquipmentShare 2020 Two, LP, EquipmentShare 2020 Three, LP, EquipmentShare 2020 Four, LP, EquipmentShare 2020 Five, LP, EquipmentShare 2020 Six, LP, EquipmentShare 2020 Seven, LP, EquipmentShare 2020 Eight, LP, EquipmentShare 2020 Gaingels, LP, (collectively, the "Growth II Plaintiffs") are each an individual series of Republic Master Fund that were established for the purpose of investing in the Growth II Fund.

9.      Plaintiff EquipmentShare SAFE 1.7, LP, ("Growth VI Plaintiff") is a series of Republic Master Fund that was established for the purpose of investing in the RC Growth VI Fund.

10.     Defendant Romulus is the GP of the Funds.  On information and belief, Romulus is a Delaware limited liability company with its principal place of business in Boston, Massachusetts.

11.     Defendant Series A Fund is a Delaware limited partnership created for the purpose of investing in shares of preferred stock of EquipmentShare.

12.     Defendant Growth II Fund is a Delaware limited partnership created for the purpose of investing in shares of preferred stock of EquipmentShare.

13.     Defendant RC Growth VI Fund is a Delaware limited partnership created for the purpose of investing in a Simple Agreement for Future Equity (a "SAFE") issued by EquipmentShare, which SAFE was convertible into shares of preferred stock of EquipmentShare upon the occurrence of a subsequent financing.

14.     Defendant Chheda is the co-founder and managing partner of Romulus.  At all times relevant to this Complaint, Chheda purported to represent Romulus in facilitating the sale of Transferors' interests in the Series A Fund to the Series A Plaintiffs.  On information and belief, Chheda also was a member of EquipmentShare's board of directors and had direct access to EquipmentShares's financing history and capitalization records at all times relevant to the Complaint.  On information and belief, Chheda is Massachusetts citizen residing at 151 Tremont St., Apt 12F, Boston, MA 02111.

15.     Defendant Athena is a New York corporation with a principal place of business in New York.  On information and belief, Vasant Chheda is the founder and CEO of Athena.  On information and belief, Vasant Chheda is Chheda's father.

16.     Defendant SNC is a New York limited limitability company, with its principal place of business in New York.  On information and belief, Vasant Chheda also is the founder and CEO of SNC.

17.     Defendant Apollo is a Delaware corporation with a principal place of business in Delaware.  On information and belief, Vasant Chheda is the founder and CEO of Apollo, and Dhaval Lalan is an officer of Apollo.  On information and belief, Dhaval Lalan is Chheda's cousin.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs allege violations of federal laws, including without limitation, violations of Sections 10(b) and 20(A) of the Securities Exchange Act of 1934 (the "Exchange Act").

19.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions that form the basis of this action occurred within this District.

## FACTUAL ALLEGATIONS

20.     The Series A Fund acquired shares of preferred stock in EquipmentShare as part of EquipmentShare's Series A-1 and Series A-2 Preferred Stock financing (the "Series A Offering"). The Series A Offering closed on or around December 22, 2016.

21.     Pursuant to the terms of the Series A Offering, EquipmentShare issued and sold shares of EquipmentShare's Series A-1 Preferred Stock and Series A-2 Preferred Stock (collectively, the "Series A Preferred Stock") at a price of $4.7759 per share (the "Series A Preferred Share Price").

22.     The Series A Offering issued shares based on a $102.05 million post-money valuation (the "Series A Valuation") for EquipmentShare.

23.     At the closing of the Series A Offering, the Series A Fund purchased 795,662 shares of Series A Preferred Stock (the "ES Shares") for an aggregate purchase price of $3,800,000.12.

24.     The total amount invested into the Series A Fund by its LPs was $3,980,000 (the "Total Fund Amount").   After deducting the $3.8 million used to purchase the stock in EquipmentShare, the remaining balance held by the Series A Fund (*i.e.,* $179,999.88) was set aside for management fees, expense reimbursements, and related items.

25.     As of February 2019, EquipmentShare had 22,948,169 issued and outstanding shares of capital stock on a fully-diluted basis (the "2019 Share Amount").

26.     As a result of the Series A Fund's $3.8 million investment in the Series A Offering, the Series A Fund owned approximately 3.47% of the total ownership interest of EquipmentShare in 2019.  This ownership interest was calculated by dividing the number of shares owned by the Series A Fund by the total 2019 Share Amount (*i.e.*, 795,662 / 22,948,169 = 0.03473).

**A.     The Athena Transaction**

27.     In September 2019, Republic began discussions with Romulus and Chheda regarding Republic potentially purchasing an LP Interest in the Series A Fund from one of the Series A Fund's existing LPs (the "First Selling LP").

28.     On September 11, 2019, Chheda emailed Republic and said that a few of Romulus' larger LPs were purchasing the LP Interests of smaller individual LPs within Romulus' SPV that held ownership in EquipmentShare.  Chheda said these larger LPs were purchasing the smaller LP Interests "immediately and prior to any financing" by EquipmentShare.

29.     Chheda stated that he had matched Republic with an LP in Romulus Growth EquipmentShare LP (sic).  Chheda was referring to the Series A Fund when he identified "Romulus Growth EquipmentShare LP."

30.     Chheda said that this "[i]ndividual investor paid $600,000 for his stake" in the Series A Fund and that the First Selling LP was willing to transfer his entire LP Interest for $6.1 million.

31.     Chheda stated that the First Selling LP was invested in the SPV that did the 2017 Series A round at approximately $100 million post-money valuation of EquipmentShare. Chheda was referring to the Series A Fund's participation in the Series A Offering at the Series A Valuation.

32.     Chheda said that the Series A Fund had invested $3.8 million and owned 3.46% of EquipmentShare. Chheda was referring to the Series A Fund's purchase of the ES Shares.

33.     Romulus and Chheda did not initially disclose the identity of the First Selling LP, and at no time did Romulus or Chheda disclose either the identity of the First Selling LP's beneficial owners or Chheda's relationship thereto.

34.     In structuring this transaction and subsequent transactions, the parties agreed that an SPV advised by Republic would acquire the Transferor's entire LP Interest for a particular price.

35.     Romulus and Chheda told Republic that the First Selling LP would sell its LP Interest for a price determined by multiplying (i) the amount the First Selling LP paid for the LP Interest by (ii) 10.2. Romulus and Chheda told Republic that this methodology was designed to reflect the multiple by which the value of EquipmentShare, and the corresponding value of the ES Shares, had increased since the First Selling LP acquired its LP Interest. Republic understood that Chheda was referring to the Series A Fund's participation in the Series A Offering at the Series A Valuation relative to the implied current valuation of EquipmentShare.

36.     Using this methodology, it was critical that Romulus provide Republic with the correct value of EquipmentShare, and corresponding value of the ES Shares, that was used to determine the purchase price the First Selling LP (and each other Transferor) paid for its LP Interest.

37.     On September 14, 2019, Chheda identified Athena as the First Selling LP whose LP Interest Republic would potentially acquire.  Chheda confirmed that Athena had purchased its entire LP Interest in the Series A Fund for $600,000 (the "Athena LP Interest").

38.     Romulus and Chheda failed to disclose Athena's beneficial owners or Chheda's relationship thereto.

39.     Shortly thereafter, Republic asked Romulus to confirm the EquipmentShare valuation at which Athena acquired the Athena LP Interest.

40.     On September 14, 2019, Chheda sent an email responding to Republic's question. In the email, Chheda stated: "I believe that the precise answer to your question is: the post-money valuation at which the stake was acquired was $102,500,000.  But, will let Standish confirm exactly."

41.     Standish was a reference to Standish Management ("Standish"), the fund administrator that handled the administrative functions for Romulus and the Series A Fund.

42.     On September 16, 2019, Romulus – through its agent, Standish – confirmed Chheda's representation that Athena acquired the Athena LP Interest at the Series A Valuation. Romulus stated, "[a]ccording to the attached cap table, the post-money valuation was $102,500,000.  Please see the attached for the capitalization table and SPA from EquipmentShare SPV financing."

43.     Romulus and Chheda's representation that EquipmentShare's post-money valuation for the Series A Round was $102.5 million was incorrect.  EquipmentShare's post-money valuation for the Series A Round was actually $102.05 million.  Still, Republic understood that Romulus and Chheda were confirming that Athena purchased the Athena LP Interest at the Series A Valuation.

44.     As part of the September 16, 2019 email, Romulus attached a copy of the capitalization table from the Series A Offering (the "Series A Cap Table").  The Series A Cap Table showed that: (i) the Series A Fund had invested approximately $3.8 million in EquipmentShare at the Series A Preferred Share Price, and (ii) the ES Shares represented 3.47% of EquipmentShare's issued and outstanding shares of capital stock on a fully-diluted basis.

45.     Based on these representations from Chheda and Romulus, Republic was led to believe that (i) Athena purchased the Athena LP Interest for a purchase price based upon the Series A Valuation, and the corresponding Series A Preferred Share Price, and (ii) Republic was purchasing the Athena LP Interest at an approximately **10.2x** multiple of the Series A Valuation and Series A Preferred Share Price.

46.     Based on Romulus and Chheda's representation that that Athena invested $600,000 of the Total Fund Amount, Republic calculated that Athena owned approximately **15.08%** of the Series A Fund (*i.e.,* $600,000 / $3,980,000 = 0.1508).

47.     Based on these representations, Republic agreed to purchase the Athena LP Interest from Athena for $6.1 million (the "Athena Transaction").

48.     Romulus and Chheda represented to Republic that the purchase price for the Athena Transaction represented a multiple of 10.2x the amount that Athena paid for the Athena LP Interest in connection with the Fund's purchase of the ES Shares.

49.     Republic structured the Athena Transaction so that three separate entities (or "series") under Republic Master Fund purchased the Athena LP Interest.

50.     Specifically, the Athena LP Interest was divided between (i) EquipmentShare Growth One, (ii) EquipmentShare Growth Two, and (iii) EquipmentShare Growth Three (the "Athena Plaintiffs").

51.     Republic structured the Athena Transaction so that (i) EquipmentShare Growth One acquired 50.53% of the Athena LP Interest, (ii) EquipmentShare Growth Two acquired 33.57% of the Athena LP Interest, and (iii) EquipmentShare Growth Three acquired 15.90% of the Athena LP Interest.  Each of the Athena Plaintiffs paid a pro rata share of the $6.1 million purchase price for the Athena LP Interest.

52.     On September 19, 2019, each of the Athena Plaintiffs entered into a separate Limited Partner Transfer and Substitution Agreement with Romulus, the Series A Fund, and Athena.

53.     As alleged below, Republic, Republic Master Fund, and the Athena Plaintiffs recently discovered that, contrary to Romulus and Chheda's representations, the purchase price paid by the Athena Plaintiffs did not reflect a 10.2x multiple of the amount the Series A Fund's LPs paid for the LP Interests in connection with the Series A Fund's purchase of the ES Shares at the Series A Valuation.  Rather, on information and belief, the purchase price paid by the Athena Plaintiffs reflected a 10.2x multiple of the amount paid by Athena for the Athena LP Interest in an undisclosed intervening transaction that occurred shortly before the Athena Transaction.

54.     As a result, instead of acquiring an LP Interest representing **15.08%** of the Series A Fund (as would have been consistent with Romulus and Chhedas repeated representations), it appears that the Athena LP Interest represents only **2.51%** of the Fund's total LP Interests.

55.     Further, the purchase price paid by the Athena Plaintiffs for the Athena LP Interest was not a **10.2x** multiple of the Series A Valuation, but was actually an approximately **61x** multiple of the Series A Valuation.

**B.      The First SNC Transaction**

56.     On October 10, 2019, Chheda emailed Republic with an opportunity to purchase an LP Interest from a different LP (the "Second Selling LP").

57. Chheda said that the Second Selling LP had purchased its LP Interest for $675,000, and that the Second Selling LP would sell its LP Interest to Republic for $9.1 million. Referencing the Athena Transaction, Chheda confirmed "[t]his is exactly the same transaction as previously, just change numbers and names."

58. Republic responded that same day and asked Chheda or Romulus to clarify the rough valuation at which the Second Selling LP purchased its LP Interest.

59. On October 10, 2019, Romulus responded and stated that the Series A Fund invested at the $102.5 million valuation used in the Series A Offering. Again, Romulus incorrectly represented that the Series A Valuation was $102.5 million, rather than $102.05 million. Romulus said that Republic was "contemplating acquiring a limited partnership interest acquired for $675,000 in [the Series A Fund], for a total of $9,1000,000." Romulus then represented that this acquisition implied a $1.38 billion valuation for EquipmentShare. Romulus wrote "[9,1000,000 / 675,000] * $102,500,000 = ~ 1.38B."

60. Romulus attached an EquipmentShare Cap Table dated February 6, 2019 (the "February 6 Cap Table"). The February 6 Cap Table showed that the Series A Fund owned 795,662 preferred shares in EquipmentShare, which represented 3.4672% of EquipmentShare's total outstanding shares after the conversion of the SAFE.

61. Later that day, Romulus told Republic that Standish would send Republic the financing documents for the transaction. Romulus said it believed Standish had already sent similar financing documents on September 16, 2019, as part of the Athena Transaction.

62. Romulus stated that the financing documents would have all rights associated with the Series A Offering. Romulus also confirmed that Republic already had the Series A Fund's LPA, which specified all the rights that LPs had in the Series A Fund.

63.     On October 11, 2019, Republic asked Romulus to confirm the rights that the Series A Fund had with EquipmentShare; not the rights that the LP had with the Series A Fund.

64.     In response, Romulus confirmed that the Series A Fund had rights as an investor and shareholder in the Series A Offering.  Romulus stated that those rights were embodied in the financing documents that Standish provided to Republic.

65.     Based on these representations, Republic was led to believe that the Second Selling LP had purchased its LP Interest for a purchase price based on the Series A Valuation.

66.     On October 21, 2019, Romulus disclosed to Republic that the Second Selling LP was SNC, but failed to disclose either the identity of SNC's beneficial owners or Chheda's relationship thereto.

67.     Romulus confirmed that SNC would sell Republic the LP Interest that SNC purchased for $675,000 (the "First SNC LP Interest") for the price of $9.1 million.

68.     Based on Romulus and Chheda's representations, Republic calculated that SNC's $675,000 investment represented approximately **16.96%** of the Series A Fund's total LP Interests (*i.e.*, $675,000 / $3,980,000 = 0.1696).

69.     Based on these representations, Republic agreed to purchase the First SNC LP Interest for $9.1 million (the "First SNC Transaction").

70.     Romulus and Chheda represented to Republic that the purchase price for the First SNC Transaction represented a multiple of **13.5x** the amount that SNC paid for the First SNC LP Interest in connection with the Fund's purchase of the ES Shares.

71.     Republic structured the First SNC Transaction so that four separate entities (or "series") under Republic Master Fund purchased the First SNC LP Interest.

72.     Specifically, the First SNC LP Interest was divided between: (i) EquipmentShare Secondary One, (ii) EquipmentShare Secondary Two, (iii) EquipmentShare Secondary Three, and (iv) EquipmentShare Romulus Close Two (the "First SNC Plaintiffs")

73.     Republic structured the First SNC Transaction so that (i) EquipmentShare Secondary One acquired 44.78% of the First SNC LP Interest, (ii) EquipmentShare Secondary Two acquired 12.36% of the First SNC LP Interest, (iii) EquipmentShare Secondary Three acquired 32.20% of the First SNC LP Interest, and (iv) EquipmentShare Romulus Close Two acquired 10.66% of the First SNC LP Interest.  Each of the First SNC Plaintiffs paid a pro rata share of the $9.1 million purchase price for the First SNC LP Interest.

74.     On October 25, 2019, each of the First SNC Plaintiffs entered into a separate Limited Partner Transfer and Substitution Agreement with Romulus, the Series A Fund, and SNC.

75.     As alleged below, Republic, Republic Master Fund, and the First SNC Plaintiffs recently discovered that, contrary to Romulus and Chheda's representations, the purchase price paid by the First SNC Plaintiffs did not reflect a 13.5x multiple of the amount the Series A Fund's LPs paid for LP Interests in connection with the Series A Fund's purchase of the ES Shares.  Rather, on information and belief, the purchase price paid by the First SNC Plaintiffs reflected a 13.5x multiple of the amount SNC paid in an undisclosed intervening transaction that occurred shortly before the First SNC Transaction.

76.     As a result, instead of acquiring an LP Interest representing **16.96%** of the Series A Fund's total LP Interests (as would have been consistent with Romulus and Chheda's repeated representations), it appears that the First SNC LP Interest represents only **2.51%** of the Series A Fund's total LP Interests.

77.     Further, the purchase price paid by the First SNC Plaintiffs was not a **10.2x** multiple of the Series A Valuation, but was actually an approximately **91x** multiple of the Series A Valuation.

**C.     The Second SNC Transaction**

78.     Sometime in April 2020, Romulus asked Republic if it was interested in purchasing another LP Interest in the Series A Fund.  On April 30, 2020, Romulus disclosed that Republic would be purchasing another LP Interest from SNC (the "Second SNC LP Interest").

79.     In response to Romulus' proposal, Republic asked Romulus and Chheda to disclose SNC's total LP Interest in the Series A Fund.  On April 30, 2020, Republic sent Chheda an email specifically asking "[c]an you let me know the total partnership interest of [SNC] when you have time?"

80.     On May 1, 2020, Chheda responded "its actually exactly the same as last time. They have two investments of $675k each.  Last time you bought 100% of a 675k investment they had.  This time, the total price is $6.75M.  So, will need to adjust the % in the document (relative to whatever your amount is)."

81.     Based on Romulus and Chheda's representations, Republic calculated that the Second SNC LP Interest represented approximately **16.96%** of the Series A Fund's total LP Interests (*i.e*., $675,000 / $3,980,000 = 0.1696).

82.     Romulus and Chheda represented to Republic that the $6.75 million purchase price for the Second SNC LP Interest represented a multiple of **10x** the amount that SNC paid for the Second SNC LP Interest in connection with the Fund's purchase of the ES Shares.

83.     Based on Romulus and Chheda's representations, and given that the Series A Fund's sole asset was the ES Shares, Republic calculated that purchasing the Second SNC LP Interest at 10x the original purchase price (*i.e.,* the Series A Valuation) resulted in an implied valuation for EquipmentShare of approximately $1 billion (*i.e.*, $102 million x 10 = $1.02 billion).

84.     On July 1, 2020, Republic informed Romulus that Republic was "ready to start signatures for the entire $6.75m available at the $1b valuation."

85.     Romulus responded, "Thank you! Actually for this piece the seller is the same entity, so we can plan to use the same document from the October 2019 transaction with date, numbers, and your entity names updated.  Should be easy this time!"

86.     Romulus did not correct Republic's calculation of the $1 billion valuation for EquipmentShare.

87.     Based on Romulus and Chheda's representations and omissions, Republic agreed to purchase the Second SNC LP Interest for $6.75 million (the "Second SNC Transaction").

88.     Republic structured the Second SNC Transaction so that two separate entities (or "series") under Republic Master Fund purchased the Second SNC LP Interest.

89.     Specifically, the Second SNC LP Interest was divided between: (i) EquipmentShare Secondary III and (ii) EquipmentShare Secondary 2020 (the "Second SNC Plaintiffs").

90.     Republic structured the Second SNC Transaction so that (i) EquipmentShare Secondary III acquired 70.36% of the Second SNC LP Interest, and (ii) EquipmentShare Secondary 2020 acquired 29.64% of the Second SNC LP Interest.  Each of the Second SNC Plaintiffs paid a pro rata share of the $6.75 million purchase price for the Second SNC LP Interest.

91.     On July 27, 2020, each of the Second SNC Plaintiffs entered into a separate Limited Partner Transfer and Substitution Agreement with Romulus, the Series A Fund, and SNC.

92.     As alleged below, Republic, Republic Master Fund, and the Second SNC Plaintiffs recently discovered that, contrary to Romulus and Chheda's representations, the purchase price paid by the Second SNC Plaintiffs did not reflect a 10.0x multiple of the amount the Series A Fund's LPs paid for LP Interests in connection with the Series A Fund's purchase of the ES Shares.

Rather, on information and belief, the purchase price paid by the Second SNC Plaintiffs reflected a 10.0x multiple of the amount paid by SNC for the Second SNC LP Interest in an undisclosed intervening transaction that occurred shortly before the Second SNC Transaction.

93.     As a result, instead of acquiring an LP Interest representing **16.96%** of the Series A Fund's total LP Interests (as would have been consistent with Romulus and Chheda's repeated representations), it appears that the Second SNC LP Interest represents only **1.7%** of the Series A Fund's total LP Interests.

94.     Further, the purchase price paid by the Second SNC Plaintiffs was not a **10.0x** multiple of the Series A Valuation, but was actually an approximately **100x** multiple of the Series A Valuation.

**D.      The Apollo Transaction**

95.     Shortly after the completion of the Second SNC Transaction, Romulus and Chheda presented Republic with an opportunity to purchase another LP Interest from a different LP (the "Third Selling LP").

96.     On July 24, 2020, Chheda sent Republic an email stating that the Third Selling LP had invested $1 million in the Series A Fund, and now wanted liquidity.  Chheda said the Third Selling LP would sell its $1 million LP Interest for $13 million.

97.     Republic asked Romulus to confirm that the $13 million purchase price would be roughly equivalent to a $1.3 billion valuation for EquipmentShare.

98.     Chheda responded "No, dilution."

99.     Republic then asked Romulus to do an implied valuation for EquipmentShare.

100.    Romulus responded on July 27, 2020, and disclosed that Apollo was the Third Selling LP.  Again, Romulus failed to disclose either the identity of Apollo's beneficial owners or Chheda's relationship thereto.

101.    Romulus stated that Apollo had purchased its LP Interest in the Series A Fund for $1.1 million (the "Apollo LP Interest").  Romulus stated that the Series A Fund currently owned approximately 3.54% of EquipmentShare, but that the ownership would drop to approximately 3.36% after the conversion of outstanding SAFE.  Romulus said that the Series A Fund had total subscriptions of $3,980,000.  Romulus then provided Republic with a mathematical equation to show what the Apollo LP Interest represented in terms of Apollo's indirect ownership interest in EquipmentShare.  Specifically, because Apollo invested $1.1 million of the Total Fund Amount, Romulus represented that the Apollo LP Interest's indirect ownership in EquipmentShare was 0.93% ("[$1,100,000 / $3,980,000] * 3.36% = **0.93%**").  Romulus further represented that if Republic purchased the Apollo LP Interest for $12.95 million, such a purchase price would imply a valuation of $1.39 billion for EquipmentShare.  Romulus wrote: "$12.95M Price / 0.93% = ~$1.39 Billion."

102.    Based on Romulus and Chheda's representations, Republic calculated that the Apollo LP Interest represented approximately **27.64%** of the Series A Fund's total LP Interests (*i.e.*, $1,100,000 / $3,980,000 = 0.2764).

103.    Based on these representations, Republic indicated that it was interested in acquiring Apollo LP Interest.  On July 27, 2020, Republic told Romulus and Chheda "[w]e'd like to take this piece…I will revert back as soon as possible with indications on timing and a firm answer."

104.    On August 21, 2020, Republic wrote that it wanted Romulus to get started on the paperwork and side letters for the Apollo LP Interest at the implied valuation of $1.39 billion.  Republic stated that it was getting close to signatures and was hoping to close in early September.

105.    Again, Romulus did not correct Republic's statement regarding the valuation for EquipmentShare relative to the Apollo LP Interest to be transferred.

106.    Based on Romulus and Chheda's representations and omissions described above, Republic agreed to purchase the Apollo LP Interest for $12.95 million (the "Apollo Transaction").

107.    Based on Romulus and Chheda's representations and omissions, Republic believed this purchase price implied a valuation of $1.39 billion for EquipmentShare.

108.    Romulus and Chheda represented to Republic that the purchase price for the Apollo Transaction represented a multiple of **11.8x** the amount that Apollo paid for the Apollo LP Interest in connection with the Series A Fund's purchase of the ES Shares.

109.    Republic structured the Apollo Transaction so that three separate entities (or "series") under Republic Master Fund purchased the Apollo LP Interest.

110.    Specifically, the Apollo LP Interest was divided between (i) EquipmentShare Secondary II, (ii) EquipmentShare Qualified 2020, (iii) EquipmentShare Qualified 2020 II, and (iv) EquipmentShare Qualified 2020 IV (the "Apollo Plaintiffs").

111.    Republic structured the Apollo Transaction so that (i) EquipmentShare Secondary II acquired 8.539% of the Apollo LP Interest, (ii) EquipmentShare Qualified 2020 acquired 26.541% of the Apollo LP Interest, (iii) EquipmentShare Qualified 2020 II acquired 49.176% of the Apollo LP Interest, and (iv) EquipmentShare Qualified 2020 IV acquired 15.745% of the Apollo LP Interest.  Each of the Apollo Plaintiffs paid a pro rata share of the $12.95 million purchase price for the Apollo LP Interest.

112.    On November 9, 2020, each of the Apollo Plaintiffs entered into a separate Limited Partner Transfer and Substitution Agreement with Romulus, the Series A Fund, and Apollo.

113.    As alleged below, Republic, Republic Master Fund, and the Apollo Plaintiffs recently discovered that, contrary to Romulus and Chheda's representation, the purchase price paid by the Apollo Plaintiffs did not reflect an 11.8x multiple of the amount the Series A Fund's LPs paid for LP Interests in connection with the Series A Fund's purchase of the ES Shares.  Rather, on information and belief, the purchase price paid by the Apollo Plaintiffs reflected an 11.8x multiple of the amount paid by Apollo for the Apollo LP Interest in an undisclosed intervening transaction that occurred shortly before the Apollo Transaction.

114.    As a result, instead of acquiring an LP Interest representing **27.64%** of the Fund's total LP Interests (as would have been consistent with Romulus and Chheda's repeated representations), it appears that the Apollo LP Interest represents only **2.76%** of the Series A Fund's total LP Interests.

115.    Further, the purchase price paid by the Apollo Plaintiffs was not a **11.8x** multiple of the Series A Valuation, but was actually an approximately **117.7x** multiple of the Series A Valuation.

### E.    **The Third SNC Transaction**

116.    At the same time Republic was negotiating the Apollo Transaction, Romulus presented Republic with the opportunity to purchase another LP Interest from SNC (the "Third SNC LP Interest") on terms substantially similar to the First SNC Transaction.

117.    On or about August 24, 2020, Romulus indicated that SNC was willing to sell Republic the Third SNC LP Interest for $9.1 million.

118.    Romulus represented that SNC purchased the Third SNC LP Interest for $675,000.

119.    Based on Romulus and Chheda's representations, Republic calculated that SNC's third $675,000 investment in the Series A Fund represented approximately **16.96%** of the Series A Fund's total LP Interests (*i.e.*, $675,000 / $3,980,000 = 0.1696).

120.    On August 25, 2020, Republic asked Chheda and Romulus whether SNC would sell the Third SNC LP Interest in the same implied price per share ("PPS") range as the previous transactions.

121.    In a subsequent phone call between the parties, Chheda confirmed to Republic that the SNC would sell the Third SNC LP Interest within the same implied PPS range as the previous transactions.

122.    Based on Romulus and Chheda's representations, Republic agreed to purchase the Third SNC Partnership Interest for $9.1 million (the "Third SNC Transaction").

123.    Romulus and Chheda represented to Republic that the purchase price for the Third SNC Transaction represented a multiple of **13.5x** the amount that SNC paid for the Third SNC LP Interest in connection with the Series A Fund's purchase of the ES Shares.

124.    Republic structured the Third SNC Transaction so that only one entity (or "series") under Republic, EquipmentShare Qualified 2020 III (the "Third SNC Plaintiff"), purchased the Third SNC LP Interest.

125.    The Third SNC Plaintiff paid the full $9.1 million purchase price for the Third SNC LP Interest.

126.    On November 9, 2020, the Third SNC Plaintiff entered a Limited Partner Transfer and Substitution Agreement with Romulus, the Series A Fund, and SNC.

127.    As alleged below, Republic and the Third SNC Plaintiff recently discovered that, contrary to Romulus and Chheda's representations, the purchase price paid by the Third SNC Plaintiff did not reflect a 13.5x multiple of the amount the Series A Fund's LPs paid for LP Interests in connection with the Series A Fund's purchase of the ES Shares.  Rather, on information and belief, the purchase price paid by the Third SNC Plaintiff reflected a 13.5x multiple of the amount

paid by SNC for the Third SNC LP Interest in an undisclosed intervening transaction that occurred shortly before the Third SNC Transaction.

128.    As a result, instead of acquiring an LP Interest representing **16.96%** of the Series A Fund's total LP Interests (as would have been consistent with Romulus and Chheda's repeated representations), it appears that the Third SNC LP Interest represents only **2.51%** of the Series A Fund's total LP Interests.

129.    Further, the purchase price paid by Republic and EquipmentShare Qualified 2020 III was not a **13.5x** multiple of the Series A Valuation, but was actually an approximately **91x** multiple of the Series A Valuation.

**F.**      **The Transferors' Representations & Warranties**

130.    Each of the Limited Partner Transfer and Substitution Agreements signed by the Series A Plaintiffs, Romulus, the Series A Fund, and the Transferors (individually, a "Transfer Agreement," and collectively, the "Transfer Agreements") contained certain representations and warranties.

131.    In Section 6.1 of the Transfer Agreements, the Transferors represented that:

   a.      Romulus and Chheda were not acting as an advisor, finder, agent, broker, or dealer on behalf of the Transferor;

   b.      Romulus and Chheda had not received and would not receive any fee or similar compensation from the Transferor for services provided with respect to the transaction; and

   c.      Romulus and Chheda's actions in connection with the transaction was solely for the account of Romulus or the Series A Fund.

132.    Specifically, Section 6.1 of the Transfer Agreement stated that each of the Transferors represented, acknowledged, and agreed that:

> None of the Partnership, General Partner, or Related Persons has acted…with respect to the transactions contemplated by this Agreement, as an advisor, finder, agent, broker or dealer on behalf of such party.

133.    Section 6.1 also stated that each of the Transferors represented, acknowledged, and agreed that:

> None of the Partnership, General Partner, or Related Persons has received or will receive, from or on behalf of such Party, any fee or similar compensation for services provided with respect to such transaction.

134.    Section 6.1 further stated that each of the Transferors represented, acknowledged, and agreed that:

> …any activities undertaken by the General Partner in connection with the transactions contemplated by this Agreement have been and will be solely for the account of the General Partner or the Partnership….

**G.     Plaintiffs Discover Defendants' Fraud**

135.    In January 2022, Plaintiffs undertook an audit of their investments.  As part of that audit, Plaintiffs learned for the first time that their LP Interests in the Series A Fund, and the corresponding indirect ownership in EquipmentShare, were significantly smaller than Romulus and Chheda represented at the time of the Athena Transaction, the First SNC Transaction, the Second SNC Transaction, the Apollo Transaction, and the Third SNC Transaction (collectively, the "Transactions").

136.    Upon learning that their LP Interests were smaller than promised, Plaintiffs contacted the Series A Fund's accountant, Baumann & Baumann CPAs ("Bauman"), to understand the reason for the discrepancy.

137.    During their phone call, Baumann disclosed that the Transferors had not actually purchased their respective LP Interests in connection with the Series A Fund's purchase of the ES

Shares.  Rather, Baumann disclosed that the Transferors were subsequent purchasers who acquired their respective LP Interests after the Series A Offering in undisclosed intervening secondary transactions.

138.    The Plaintiffs also discovered that, contrary to Romulus and Chheda's representations, the purchase price paid by the Transferors for their respective LP Interests was not based on the Series A Valuation.  Rather, the Transferors purchased their respective LP Interests at a significant mark-up from the Series A Valuation.

139.    For example, on information and belief, in connection with the Series A Offering, the Series A Fund issued and sold the First SNC LP Interest to another LP (the "Original LP") for $100,000 before SNC purchased the First SNC LP Interest.  Such $100,000 purchase price was based upon, and is consistent with, the Series A Valuation. On information and belief, shortly before the First SNC Transaction, SNC purchased the First SNC LP Interest from the Original LP for $675,000, which represents a 6.75x multiple of the Series A Valuation.  With the direct assistance of Romulus and Chheda, including their misrepresentations regarding the basis for determining the applicable purchase price, SNC sold the First SNC LP Interest to the First SNC Plaintiffs for a purchase price representing a 13.5x multiple of the immediately preceding 6.75x multiple.

140.    Romulus, Chheda, and the other Transferors engaged in substantially similar undisclosed intervening transactions with the original LPs for the Transferors' other LP Interests.

141.    Thus, contrary to Romulus and Chheda's representations, the purchase prices paid by the Transferors for their respective LP Interests were not based on the Series A Valuation, but were actually based on a hidden multiple thereof.  Further, as a result of these undisclosed intervening transactions, the LP Interests purchased by the Series A Plaintiffs represent only a

small fraction of what Republic and the Series A Plaintiffs had been led to believe they were purchasing.

142.   In the Athena Transaction, based on Romulus and Chheda's representations, Republic and the Athena Plaintiffs were led to believe that the Athena LP Interest represented **15.08%** of the Series A Fund's total LP Interests.  During the audit, however, Republic and the Athena Plaintiffs learned that that the Athena LP Interest represents only **2.51%** of the Series A Fund's total LP Interests.

143.   In the First SNC Transaction, based on Romulus and Chheda's representations, Republic and the First SNC Plaintiffs were led to believe that the First SNC LP Interest represented **16.96%** of the Series A Fund's total LP Interests.  During the audit, however, Republic and the First SNC Plaintiffs learned that that the First SNC LP Interest represents only **2.51%** of the Series A Fund's total LP Interests.

144.   In the Second SNC Transaction, based on Romulus and Chheda's representations, Republic and the Second SNC Plaintiffs were led to believe that the Second SNC LP Interest represented **16.96%** of the Series A Fund's total LP Interests.  During the audit, however, Republic and the Second SNC Plaintiffs learned that that the Second SNC LP Interest represents only **1.70%** of the Series A Fund's total LP Interests.

145.   In the Apollo Transaction, based on Romulus and Chheda's representations, Republic and the Apollo Plaintiffs were led to believe that the Apollo LP Interest represented **27.64%** of the Series A Fund's total LP Interests.  During the audit, however, Republic and the Apollo Plaintiffs learned that that the Apollo LP Interest represents only **2.76%** of the Series A Fund's total LP Interests.

146.    In the Third SNC Transaction, based on Romulus and Chheda's representations, Republic and the Third SNC Plaintiff were led to believe that the Third SNC LP Interest represented **16.96%** of the Series A Fund's total LP Interests.  During the audit, however, Republic and the Third SNC Plaintiffs learned that that the Third SNC LP Interest represents only **2.51%** of the Series A Fund's total LP Interests.

147.    Based on Romulus's and Chheda's representations, Republic and the Series A Plaintiffs were led to believe that the LP Interests acquired by the Series A Plaintiffs in the Transactions represented, in the aggregate, **93.59%** of the Series A Fund's total LP Interests. Based on the information uncovered during the audit, however, Republic and the Series A Plaintiffs learned that the LP Interests acquired by the Series A Plaintiffs in the Transactions represent, in the aggregate, only **12.00%** of the Series A Fund's total LP Interests.

148.    Plaintiffs further discovered that each of the Transferors (or their respective beneficial owners) has a significant familial connection with Chheda.

149.    On information and belief, Athena's Founder and CEO, Vasant Chheda, is Chheda's father.

150.    On information and belief, Vasant Chheda also is the Founder and CEO of SNC and Apollo.

151.    Further, Vasant Chheda's home address is listed as the address of SNC's registered agent.

152.    Dhaval Lalan is Apollo's signatory on the Apollo Transfer Agreement.   On information and belief, Dhaval Lalan is Chheda's cousin.

153.    On information and belief, Romulus and Chheda assisted the Transferors' purchase and subsequent sale of their respective LP Interests to increase the price that Plaintiffs or other purchasers would pay for such LP Interests.

154.    On information and belief, Romulus and Chheda acted as an advisor, finder, agent, broker, or dealer on behalf of the Transferors to facilitate the Transactions.

155.    On information and belief, Romulus and Chheda intentionally mislead Plaintiffs and/or omitted material information regarding (i) the circumstances under which Transferors purchased their respective LP Interests, (ii) the valuations used to determine the purchase prices applicable to such purchases, and (iii) Romulus and Chheda's relationship with the Transferors, in order to ensure that Plaintiffs consummated the Transactions and purchased the LP Interests at prices far in excess of their actual value.

156.    On information and belief, Romulus and Chheda directly or indirectly received or will receive a fee, profits, or other compensation from the Transferors as a result of the Transactions.

### H.    Monitoring Expenses

157.    Romulus also improperly charged certain monitoring expenses to the limited partnerships for which it serves as the GP, including without limitation, the Growth II Fund and the RC Growth VI Fund.

158.    On or about February 25, 2020, EquipmentShare 2020 One invested $1,970,000 in the Growth II Fund.

159.    On or about February 25, 2020, EquipmentShare 2020 Three invested $3,910,00 in the Growth II Fund.

160.    On or about February 25, 2020, EquipmentShare 2020 Four invested $2,960,000 in the Growth II Fund.

161.    On or about February 25, 2020, EquipmentShare 2020 Five invested $628,500 in the Growth II Fund.

162.    On or about February 27, 2020, EquipmentShare 2020 Two invested $4,276,760 in the Growth II Fund.

163.    On or about February 27, 2020, EquipmentShare 2020 Six invested $329,080 in the Growth II Fund.

164.    On or about February 27, 2020, EquipmentShare 2020 Eight invested $235,000 in the Growth II Fund.

165.    On or about February 27, 2020, EquipmentShare 2020 Gaingels invested $216,200 in the Growth II Fund.

166.    On or about February 28, 2020, EquipmentShare 2020 Seven invested $5,224,280 in the Growth II Fund.

167.    On or about September 30, 2020, Growth VI Plaintiff invested $1,000,000 in the RC Growth VI Fund.

168.    Growth VI Plaintiff is the only LP in the RC Growth VI Fund.

169.    Growth VI Plaintiff's $1 million investment is the only money that the RC Growth VI Fund has under management.

170.    Pursuant to Section 5.1.1 of the LPAs, Romulus was entitled to charge "Monitoring Expenses," not to exceed $500,000, for (i) compensation and expenses of employees or consultants of Romulus and (ii) fees and expenses for administrative, clerical and related support services provided by third parties, Romulus, or the Management Company, office space and facilities, utilities and telephone; *but only insofar as the expenses in these two categories relate to the investment activities of the Funds being charged*.

171.    On or about October 1, 2020, the Growth II Fund and the RC Growth VI Fund entered into separate Independent Contractor Agreements with WELD.

172.    Romulus, the Growth II Fund, and the RC Growth VI Fund did not disclose the Independent Contractor Agreements with WELD to the Growth II Plaintiffs or Growth VI Plaintiff at the time they entered the Independent Contractor Agreements.

173.    The Independent Contractor Agreements stated that the Growth II Fund and the RC Growth VI Fund engaged WELD to provide advisory services, including "(i) investment activities, strategic financial planning, and corporate transactions including equity financing, debt financing, mergers & acquisitions, sales and strategic partnerships, and (ii) other ad hoc projects."

174.    Pursuant to the Independent Contractor Agreements, the Growth II Fund and the RC Growth VI Fund each agreed to pay WELD an annual fee of $400,000 for the advisory services.

175.    On information and belief, the RC Growth VI Fund paid WELD the $400,000 annual fee, and the Growth II Fund paid WELD $350,000.

176.    On information and belief, the RC Growth VI Fund paid WELD the $400,000 annual fee prior to or contemporaneously with the purchase of the EquipmentShare SAFE and before WELD could perform any monitoring services.

177.    The $400,000 annual fee paid to WELD represented 40% of the RC Growth VI Fund's assets under management, and 40% of the amount that Growth VI Plaintiff paid for its interest in the RC Growth VI Fund.

178.    On information and belief, the Growth II Fund and the RC Growth VI Fund each held (and did not invest) another $100,000 to pay additional expenses, including fees for attorneys, accountants, and other professional service providers.

179.    The RC Growth VI Fund invested $500,000 in an EquipmentShare SAFE.  This investment was 50% of the RC Growth VI Fund's assets under management, and *only* 50% of the amount that Growth VI Plaintiff paid for its interest in the RC Growth VI Fund.  The RC Growth VI Fund invested just 50% of the amount that Growth VI Plaintiff paid for its interest because the RC Growth VI Fund allocated the other 50% to pay Monitoring Expenses and other fees.

180.    On information and belief, WELD is related to Romulus or shares common ownership.

181.    On information and belief, Romulus entered the Independent Contractor Agreements with WELD to maximize the Monitoring Expenses charged to the Growth II Fund and the RC Growth VI Fund, and to avoid the requirement in Section 5.1.1 of the LPAs that any Monitoring Expenses must "relate to the investment activities of the Partnership" (*i.e.* the Growth II Fund and the RC Growth VI Fund).

182.    On information and belief, WELD's employee compensation and expenses attributable to investment activities of the RC Growth VI Fund and the fees and expenses for administrative, clerical and related support services, office space and facilities, and utilities and telephone provided by WELD related to the investment activities of the RC Growth VI Fund, was substantially less than $400,000.

183.    On information and belief, WELD's employee compensation and expenses attributable to investment activities of the Growth II Fund and the fees and expenses for administrative, clerical and related support services, office space and facilities, and utilities and telephone provided by WELD related to the investment activities of the Growth II Fund, was substantially less than $400,000.

184.    On information and belief, WELD is charging the Growth II Fund and the RC Growth VI Fund for the exact same work that WELD is charging other limited partnerships for which Romulus serves as the GP.

185.    On information and belief, WELD failed to allocate its shared expenses for work performed on behalf of all Romulus limited partnerships *pro rata* based on the size of each limited partnership.  Rather, on information and belief, WELD charges all of the limited partnerships an annual fee of $400,000 regardless of the size of the limited partnership or the amount of work WELD did related to the investment activities of the limited partnership.

I.    **Romulus Withholds Records to Cover its Fraud**

186.    Sometime in March or April 2021, Republic received its first K-1 tax form associated with the Growth VI Plaintiff's interest in the RC Growth VI Fund (the "Growth VI K-1").

187.    The Growth VI K-1 reflected that the RC Growth VI Fund paid Monitoring Expenses that were more than 40% of the amount invested by the Growth VI Plaintiff.

188.    In May 2021, Republic asked Romulus and Chheda for information regarding the Monitoring Expenses paid by the RC Growth VI Fund.

189.    Romulus and Chheda initially refused to provide Republic any information in response to the request.  Romulus and Chheda stated that Romulus would not provide the requested information unless Republic signed an agreement releasing Romulus from all potential claims (whether known or unknown) that might be bought by any of the Republic SPVs, not just claims that could be brought the Growth VI Plaintiff.

190.    On June 4, 2021, Republic sent Romulus a formal demand to inspect the books and records of RC Growth VI pursuant to Section 14.2 of the relevant LPA (the "Books & Records Request").

191.    Along with the Books & Records Request, Republic requested to review the books and records of all Romulus managed funds that had been charged similar Monitoring Expenses.

192.    Romulus and Chheda initially refused to comply with the Books & Records Request.

193.    On or about July 9, 2021, Republic sent Romulus an email following up on the Books & Records Request.  The July 9, 2021 email set forth Romulus' contractual requirement to comply with the Books & Records Request under the terms of the LPA, and identified specific Romulus managed funds of which Republic was aware.

194.    On or about August 13, 2021, Romulus agreed to provided Republic access to the books and records for the three Funds, which Romulus represented were the only Romulus managed funds in which a Republic managed entity was an LP.

195.    Romulus initially stated that it would provide access to the Funds' books and records on August 27, 2021, but Romulus later extended this date to August 30, 2021.

196.    On or about August 30, 2021, Romulus and Chheda finally provided Republic with limited electronic access to certain books and records for the Funds.  Romulus initially only provided Republic access to the Funds' books and records during a three-hour window (from 10 am until 1 pm ET).  Republic eventually agreed to provide Republic with access for an additional two hours (from 4 pm until 6 pm ET).

197.    Despite agreeing to provide access to the books and records for all three Funds, including the Series A Fund, Romulus did not include any documents or information related to the Transferors' original purchases of their LP Interests from the original LPs, or documents or information disclosing that the Transferors purchased their LP Interest in a subsequent transaction, and not as part of the Series A Offering.

198.    On information and belief, Romulus and Chheda intentionally refused to provide complete information in response to the Books & Records Request in order continue hiding the fact that the Transferors had not purchased their LP Interests as part of the Series A Offering, but had actually purchased their LP Interests in subsequent, undisclosed transactions that were based on a much higher valuations than Romulus and Chheda represented to Republic.

**COUNT I**
**Breach of Contract**
**(Against Transferors)**

199.    Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though fully set forth herein.

200.    Each of the Series A Plaintiffs entered into a Transfer Agreement with one of the Transferors.  Specifically:

a.   The Athena Plaintiffs entered into a Transfer Agreement with Athena.

b.   The First SNC Plaintiffs, Second SNC Plaintiffs, and Third SNC Plaintiff entered into a Transfer Agreement with SNC.

c.   The Apollo Plaintiffs entered into a Transfer Agreement with Apollo.

201.    In Section 6.1 of each Transfer Agreement, the Transferor represented that "[n]one of the Partnership, General Partner, or Related Persons has acted…with respect to the transactions contemplated by this Agreement, as an advisor, finder, agent, broker or dealer on behalf of such Party."

202.    Each of the Transferors breached this representation in Section 6.1 by having Romulus and Chheda act as their advisor, finder, and/or agent.  Among other things, Romulus and Chheda acted as the Transferor's advisor, finder, and/or agent by facilitating the Transferor's purchase of the LP Interest from the original LP, and facilitating the Transferor's sale of the LP Interest to the Series A Plaintiffs at an inflated price.

34

203.    In Section 6.1 of each Transfer Agreement, the Transferor represented that "any activities undertaken by the General Partner in connection with the transactions contemplated by this Agreement have been and will be solely for the account of the General Partner or the Partnership."

204.    Each of the Transferors breached this representation in Section 6.1 by having Romulus and Chheda take action for the benefit of the Transferor, including (i) by presenting false information to Republic and the Series A Fund Plaintiffs regarding the valuation of EquipmentShare used in the Transferor's purchase of its LP Interest, (ii) by failing to disclose that the Transferor was a subsequent purchaser that did not acquire its LP Interest at the Series A Valuation, and (iii) by failing to disclose the Transferor's relationship with Romulus and Chheda.

205.    In Section 6.1 of each Transfer Agreement, the Transferor represented that "[n]one of the Partnership, General Partner, or Related Persons has received or will receive, from or on behalf of such Party, any fee or similar compensation for services provided with respect to such transaction."

206.    Each of the Transferors breached this representation in Section 6.1 by directly or indirectly causing Romulus and/or Chheda to receive a fee, profits, or other compensation from the Transferor as a result of the Transactions.

207.    At the time each Transferor entered into the applicable Transfer Agreement, the Transferor knew that Section 6.1 was false because: (i) the Transferor knew that Romulus and Chheda had act as the Transferor's advisor, finder, and/or agent in connection with the Transactions; (ii) the Transferor knew that Romulus and Chheda had taken action for the benefit of the Transferor; and (iii) the Transferor knew that Romulus and Chheda had directly or indirectly

received or would receive a fee or similar compensation from the Transferor for services provided with respect to the Transactions.

208.    As a direct and proximate result of the Transferors' breaches of contract, Republic and the Series A Plaintiffs have incurred damages.

WHEREFORE, Republic, Republic Master Fund, and the Series A Plaintiffs respectfully request that this Court enter an order finding in favor of Republic, Republic Master Fund, and the Series A Plaintiffs on Count I and providing the following relief:

(a)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs money damages in an amount to be determined at trial;

(b)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs pre- and post- judgment interest;

(c)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs' attorneys' fees and costs under Section 7.2 of the Transfer Agreement, statute, or equity; and

(d)    Awarding such other and further relief that the Court deems just and proper.

## COUNT II
### Contractual Fraud
### (Against Transferors)

209.    Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though fully set forth herein.

210.    In Section 6.1 of each Transfer Agreement, the Transferors represented that "[n]one of the Partnership, General Partner, or Related Persons has acted…with respect to the transactions contemplated by this Agreement, as an advisor, finder, agent, broker or dealer on behalf of such Party."

211.    At the time each Transferor made this representation, the Transferor knew it was materially false and misleading because Romulus and Chheda had acted as the Transferor's

advisor, finder, and/or agent, including without limitation, by facilitating the Transferor's purchase of their LP Interest from the original LP and by facilitating the sale of the Transferor's LP Interest to the applicable Series A Plaintiffs.

212.    In Section 6.1 of each Transfer Agreement, the Transferor represented that "any activities undertaken by the General Partner in connection with the transactions contemplated by this Agreement have been and will be solely for the account of the General Partner or the Partnership."

213.    At the time each Transferor made this representation, the Transferor knew it was materially false and misleading because Romulus and Chheda had acted for the benefit of the Transferor, including by presenting false valuation information to Republic and the Series A Plaintiffs and by failing to disclose to Republic and the Series A Plaintiffs that the Transferor had purchased its LP Interest in a secondary transaction that occurred long after the closing of the Series A Offering.

214.    In Section 6.1 of each Transfer Agreement, the Transferor represented that "[n]one of the Partnership, General Partner, or Related Persons has received or will receive, from or on behalf of such Party, any fee or similar compensation for services provided with respect to such transaction."

215.    At the time each Transferor made this representation, the Transferor knew it was materially false and misleading because Romulus and/or Chheda had received or would receive a fee, profits, or other compensation from the Transferor as a result of the applicable Transaction.

216.    At the time each Transferor entered into the applicable Transfer Agreement, the Transferor knew that these representations were materially false or the Transferor made these representations with reckless indifference to their truth or falsity.

217.    Each Transferor intended to induce Republic and the Series A Plaintiffs' reliance on these representations.

218.    Republic and the Series A Plaintiffs actually and justifiably relied on these representations, to their detriment.

219.    As a direct and proximate result of the wrongful conduct by Transferors, Republic, Republic Master Fund, and the Series A Plaintiffs have incurred damages.

WHEREFORE, Republic, Republic Master Fund, and the Series A Plaintiffs respectfully request that this Court enter an order finding in favor of Republic, Republic Master Fund, and the Series A Plaintiffs on Count II and providing the following relief:

(a)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs money damages in an amount to be determined at trial, including punitive damages;

(b)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs pre- and post- judgment interest;

(c)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs' attorneys' fees and costs under Section 7.2 of the Transfer Agreement, statute, or equity; and

(d)    Awarding such other and further relief that the Court deems just and proper.

**COUNT III**
**Mistake – Transfer Agreements Section 2.1**
**(Against Transferors)**

220.    Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though fully set forth herein.

221.    Each Transfer Agreement states the total purchase price each Transferor paid for the Transferor's LP Interest (the "Subscription Amount").

222.    Section 2.1 of each Transfer Agreement states that "the Transferor hereby transfers to the Transferee the Transferred Interest" for a specified aggregate purchase price.

223.    Each Transfer Agreement defines the "Transferred Interest" as a specified percentage of the Transferor's total LP Interest.

224.    Each Transfer Agreement does not specify and is ambiguous regarding the percentage of the Series A Fund's total LP Interests that is represented by the LP Interest being sold by the Transferor.

225.    At the time each Series A Plaintiff entered the Transfer Agreement, the Series A Plaintiff believed that the relevant Transferor had purchased its LP Interest for a purchase price that was based on the Series A Valuation and the corresponding value of the ES Shares at the time of the Series A Offering.

226.    Specifically, each Series A Plaintiff believed that the purchase price paid by the Transferor for its LP Interest represented a pro rata share of the Series A Fund based on the Total Fund Amount.

227.    Each Series A Plaintiff based this understanding on representations made by Romulus and Chheda regarding the valuation of EquipmentShare used by the Series A Fund to determine the purchase price that the Transferor would pay to purchase its LP Interest.

228.    The Series A Plaintiffs have now learned that the Transferors did not purchase their respective LP Interests in connection with the closing of the Series A Offering or the Series A Fund's purchase of the ES Shares.  The Series A Plaintiffs also have learned that the purchase price used for each such purchase was not based on the Series A Valuation, but rather a significant multiple thereof.  As a result, the portion of the Series A Fund's total LP Interests represented by the Transferor's LP Interest, and the corresponding indirect ownership interest in EquipmentShare, was a small fraction of what the Series A Plaintiffs understood they were purchasing when they entered into each Transfer Agreement.

229.    The Series A Plaintiffs' mistake regarding the percentage of the Series A Fund's total LP Interests represented by a given Transferor's LP Interest was caused by a latent ambiguity in the applicable Transfer Agreement.

230.    The Series A Plaintiffs would not have consummated any of the Transactions at the purchase price stated in the applicable Transfer Agreements if the Series A Plaintiffs had been provided with accurate, unambiguous information regarding the percentage of the Series A Fund's total LP Interests represented by the applicable Transferor's LP Interest.

231.    The Series A Plaintiffs would not have consummated any of the Transactions at the purchase price stated in the applicable Transfer Agreements if the Series A Plaintiffs were aware of the actual percentage of the Series A Fund's total LP Interests represented by each Transferor's LP Interest.

232.    Because of the ambiguity in the Transfer Agreements and Series A Plaintiffs' mistake regarding the percentage of the Fund's total LP Interests represented by the applicable Transferor's LP Interest, the parties did not have a mutual agreement (*i.e.*, a "meeting of the minds") regarding the material terms of the Transactions.

233.    Further, Romulus, Chheda, and the Transferors knew of the Series A Plaintiffs' mistake and failed to correct the mistake.

234.    The Series A Plaintiffs seek to rescind the Transactions based on the parties' failure to reach mutual agreement regarding the material terms.

WHEREFORE, the Series A Plaintiffs respectfully request that this Court enter an order finding in favor of the Series A Plaintiffs on Count III and providing the following relief:

(a)    Rescission of the Transactions and the corresponding Transfer Agreements;

(b)     Awarding the Series A Plaintiffs' attorneys' fees and costs under Section 7.2 of the

Transfer Agreement, statute, or equity; and

(c)     Awarding such other and further relief that the Court deems just and proper.

**COUNT IV**
**Unjust Enrichment**
**(Against Transferors)**

235.    Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though

fully set forth herein.

236.    The Transferors were enriched through payment by the Series A Plaintiffs to the

Transferors.

237.    The Series A Plaintiffs were impoverished by paying the Transferors.

238.    No adequate justification exists for the Transferors' enrichment from the Series A

Plaintiffs' payments, as these payments were for a percentage of the Series A Fund's total LP

Interests that the Series A Plaintiffs did not receive.

239.    The Series A Plaintiffs have no adequate remedy at law.

WHEREFORE, the Series A Plaintiffs respectfully request that this Court enter an order

finding in favor of the Series A Plaintiffs on Count IV and providing the following relief:

(a)     Awarding the Series A Plaintiffs money damages in an amount to be determined at

trial;

(b)     Reformation of the Transfer Agreement to return the portion of the Series A

Plaintiffs' purchase price that exceeds the valuation of the Partnership Interest;

(c)     Awarding the Series A Plaintiffs pre- and post- judgment interest;

(d)     Awarding the Series A Plaintiffs' attorneys' fees and costs under Section 7.2 of the

Transfer Agreement, statute, or equity; and

(e)      Awarding such other and further relief that the Court deems just and proper.

## COUNT V
### Fraudulent Inducement
### (Against Romulus and Chheda)

240.    Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though fully set forth herein.

241.    During due diligence, Romulus misrepresented material facts regarding the Transactions to Republic and the Series A Plaintiffs.  Some of these material misrepresentations include the following statements.

242.    On September 11, 2019, Chheda said that he had identified an LP in the Series A Fund whose interest Republic could purchase.  Chheda said that the LP was invested in the SPV that did the 2017 Series A round at approximately $100 million post-money valuation of EquipmentShare.  Chheda was referring to Athena and its investment in the Series A Fund.

243.    On September 14, 2019, as part of the Athena Transaction, Chheda told Republic that "the post-money valuation at which [Athena's] stake was acquired was $102,500,000."

244.    On September 16, 2019, as part of the Athena Transaction, Romulus sent Republic an email stating "[a]ccording to the attached cap table, the post-money valuation was $102,500,000."

245.    On October 10, 2019, as part of the First SNC Transaction, Chheda stated that the First SNC Transaction was "exactly the same transaction as previously, just change numbers and names."

246.    On October 10, 2019, as part of the First SNC Transaction, Republic asked Chheda or Romulus to clarify the rough valuation at which SNC purchased the First SNC LP Interest in the Series A Fund.  Romulus responded that same day and stated that the Series A Fund invested

at a $102.5 million valuation, which Romulus represented was the Series A Valuation. Romulus said that Republic was "contemplating acquiring a limited partnership interest acquired for $675,000 in [the Series A Fund], for a total of $9,1000,000." Romulus then represented that this acquisition implied a $1.38 billion valuation for EquipmentShare. Romulus wrote "[9,1000,000 / 675,000] * $102,500,000 = ~ 1.38B."

247.    On May 1, 2020, as part of the Second SNC Transaction, Republic asked Chheda to confirm SNC's total LP Interest in the Series A Fund. In response, Chheda stated "its actually exactly the same as last time. They have two investments of $675k each. Last time you bought 100% of a 675k investment they had."

248.    On July 24, 2020, as part of the Apollo Transaction, Republic asked Romulus to confirm that the purchase price would be roughly equivalent to a $1.3 billion valuation for EquipmentShare. Chheda responded "No, dilution."

249.    On July 24, 2020, Republic asked Romulus to provide an implied valuation for the Apollo Transaction. On July 27, 2020, Romulus represented that Apollo's interest in the Series A Fund was the equivalent of 0.93% indirect ownership in EquipmentShare, and that the $12.95 million purchase price in the Apollo Transaction implied a valuation of $1.39 billion for EquipmentShare.

250.    All these statements by Romulus and Chheda were materially false.

251.    Romulus and Chheda knew that these representations were false or made these representations with reckless indifference to their truth or falsity.

252.    Romulus and Chheda intended to induce Republic and the Series A Plaintiffs' reliance on these representations.

253.    Republic and the Series A Plaintiffs actually and justifiably relied on Romulus and Chheda's representations.

254.    Romulus and Chheda also falsely omitted material facts to Republic and the Series A Plaintiffs, including that the Transferors did not purchase their respective LP Interests in connection with the closing of the Series A Offering or for purchase prices that were remotely related to the Series A Valuation.

255.    On July 1, 2020, in anticipation of the Second SNC Transaction, Republic told Romulus and Chheda that it was prepared to move forward with the Transaction at a $1 billion valuation for EquipmentShare.

256.    Romulus and Chheda did not correct Republic's statement or otherwise disclose to Republic that the actual valuation of EquipmentShare being used in the Second SNC Transaction was not $1 billion.

257.    On August 21, 2020, Republic sent Romulus an email confirming that it wanted to move forward with the Apollo Transaction at the $1.39 billion implied valuation.

258.    Romulus and Chheda did not correct Republic's statement or otherwise disclose to Republic that the actual valuation of EquipmentShare being used in the Apollo Transaction was not $1.39 billion.

259.    Romulus and Chheda knew that the valuation of EquipmentShare used in the Transactions was material to Republic and the Series A Plaintiffs.

260.    Romulus and Chheda knew they had provided incorrect valuations of EquipmentShare to Republic and the Series A Plaintiffs.

261.    Romulus and Chheda intended that Republic and the Series A Plaintiffs would rely on the incorrect information and Romulus and Chheda's omissions.

262.     Republic and the Series A Plaintiffs relied on Romulus and Chheda's false statements and omissions.

263.     As a direct and proximate result of the wrongful conduct by Romulus and Chheda, Republic, Republic Master Fund, and the Series A Plaintiffs have incurred damages.

WHEREFORE, Republic, Republic Master Fund, and the Series A Plaintiffs respectfully request that this Court enter an order finding in favor of Republic, Republic Master Fund, and the Series A Plaintiffs on Count V and providing the following relief:

(a)     Awarding Republic, Republic Master Fund, and the Series A Plaintiffs money damages in an amount to be determined at trial, including punitive damages;

(b)     Awarding Republic, Republic Master Fund, and the Series A Plaintiffs pre- and post- judgment interest;

(c)     Awarding Republic, Republic Master Fund, and the Series A Plaintiffs' attorneys' fees and costs under statute or equity; and

(d)     Awarding such other and further relief that the Court deems just and proper.

### COUNT VI
### Violation of SEC Section 10(b) of the Exchange Act, SEC Rule 10b-5
### (Against Romulus and Chheda)

264.     Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though fully set forth herein.

265.     Romulus and Chheda made materially false and misleading statements to Republic and the Series A Plaintiffs and omitted material facts, including without limitation those representations and omission listed in Paragraphs 241-258 of this Complaint.

266.     Romulus made these statements and omissions with scienter, knowing that these representations were false or with reckless indifference to their truth or falsity.

267.    Romulus and Chheda intended to induce Republic and the Series A Plaintiffs' reliance on these representations and omissions.

268.    Republic and the Series A Plaintiffs actually and justifiably relied on these representations and omissions.

269.    Republic, Republic Master Fund, and the Series A Plaintiffs have incurred damages as a direct and proximate result of the wrongful conduct by Romulus and Chheda.

WHEREFORE, Republic, Republic Master Fund, and the Series A Plaintiffs respectfully request that this Court enter an order finding in favor of Republic, Republic Master Fund, and the Series A Plaintiffs on Count VI and providing the following relief:

(a)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs money damages in an amount to be determined at trial, including punitive damages;

(b)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs pre- and post- judgment interest;

(c)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs' attorneys' fees and costs pursuant to statute or equity; and

(d)    Awarding such other and further relief that the Court deems just and proper.

## COUNT VII
### Violation of Section 20(A) of the Exchange Act
### (Against Chheda)

270.    Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though fully set forth herein.

271.    All alleged in Count VI, Romulus committed a primary securities fraud violation.

272.    Defendant Chheda controlled Romulus.

273. Republic, Republic Master Fund, and the Series A Plaintiffs have incurred damages as a direct and proximate result of the wrongful conduct by Chheda.

WHEREFORE, Republic, Republic Master Fund, and the Series A Plaintiffs respectfully request that this Court enter an order finding in favor of Republic, Republic Master Fund, and the Series A Plaintiffs on Count VII and providing the following relief:

    (a) Awarding Republic, Republic Master Fund, and the Series A Plaintiffs money damages in an amount to be determined at trial;

    (b) Awarding Republic, Republic Master Fund, and the Series A Plaintiffs pre- and post- judgment interest;

    (c) Awarding Republic, Republic Master Fund, and the Series A Plaintiffs' attorneys' fees and costs pursuant to statute or equity; and

    (d) Awarding such other and further relief that the Court deems just and proper.

## <u>COUNT VIII</u>
### Violation of Massachusetts Securities Act, Mass. Gen. Laws ch. 110A, §410
### (Against Romulus and Chheda)

274. Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though fully set forth herein.

275. Romulus and Chheda offered and sold securities by selling LP Interests in the Series A Fund.

276. Romulus and Chheda sold these securities in Massachusetts.

277. Romulus and Chheda made materially false and misleading statements to Republic and the Series A Plaintiffs and omitted material facts, including without limitation those representations and omissions listed in Paragraphs 241-258 of this Complaint.

278.    Republic and the Series A Plaintiffs did not know the untruth or omission of these material facts.

279.    Romulus and Chheda knew or in the exercise of reasonable care would have known of the untruths and omissions.

280.    Republic, Republic Master Fund, and the Series A Plaintiffs have incurred damages as a direct and proximate result of the wrongful conduct by Romulus and Chheda.

WHEREFORE, Republic, Republic Master Fund, and the Series A Plaintiffs respectfully request that this Court enter an order finding in favor of Republic, Republic Master Fund, and the Series A Plaintiffs on Count VIII and providing the following relief:

(a)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs money damages in an amount to be determined at trial;

(b)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs pre- and post- judgment interest;

(c)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs' attorneys' fees and costs pursuant to statute or equity; and

(d)    Awarding such other and further relief that the Court deems just and proper.

### COUNT IX
### Civil Conspiracy
### (Against Romulus, Chheda, and the Transferors)

281.    Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though fully set forth herein.

282.    Romulus, Chheda, and the Transferors constitute a confederation or combination of two or more persons.

283.    The Transferors committed unlawful acts in furtherance of the conspiracy, as Transferors were aware that Romulus and Chheda misrepresented the valuation of

EquipmentShare used in the Transferors' purchase of their LP Interests from the original LPs, and the Transferors failed to disclose the truth to ensure that Republic and the Series A Plaintiffs overpaid for the LP Interests.

284.    Republic, Republic Master Fund, and the Series A Plaintiffs have incurred damages as a direct and proximate result of the wrongful conduct by Transferors, Romulus, and Chheda.

WHEREFORE, Republic, Republic Master Fund, and the Series A Plaintiffs respectfully request that this Court enter an order finding in favor of Republic, Republic Master Fund, and the Series A Plaintiffs on Count IX and providing the following relief:

(a)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs money damages in an amount to be determined at trial, including punitive damages;

(b)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs pre- and post- judgment interest;

(c)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs' attorneys' fees and costs under Section 7.2 of the Transfer Agreement, statute, or equity; and

(d)    Awarding such other and further relief that the Court deems just and proper.

### COUNT X
**Aiding & Abetting**
**(Against Romulus, Chheda, and the Transferors)**

285.    Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though fully set forth herein.

286.    Romulus and Chheda, engaged in tortious conduct, including fraud.

287.    Transferors had knowledge of this tortious conduct by Romulus and Chheda.

288.    Transferors substantially assisted in this tortious conduct, as Transferors were aware that Romulus and Chheda misrepresented the valuation for EquipmentShare used in the

Transferors' purchase of their LP Interests from the original LPs, and the Transferors failed to disclose the truth to ensure that Republic and the Series A Plaintiffs overpaid for the LP Interests.

289.    Republic, Republic Master Fund, and the Series A Plaintiffs have incurred damages as a direct and proximate result of the wrongful conduct by Transferors, Romulus, and Chheda.

WHEREFORE, Republic, Republic Master Fund, and the Series A Plaintiffs respectfully request that this Court enter an order finding in favor of Republic and the Series A Plaintiffs on Count X and providing the following relief:

(a)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs money damages in an amount to be determined at trial, including punitive damages;

(b)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs pre- and post- judgment interest;

(c)    Awarding Republic, Republic Master Fund, and the Series A Plaintiffs' attorneys' fees and costs under Section 7.2 of the Transfer Agreement, statute, or equity; and

(d)    Awarding such other and further relief that the Court deems just and proper.

### COUNT XI
### Breach of Contract – Limited Partnership Agreement Section 5.1.1
### (Against Romulus)

290.    Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though fully set forth herein.

291.    The Growth II Plaintiffs and Growth VI Plaintiff entered into LPAs with Romulus related to the Growth II Fund and the RC Growth VI Fund, respectively.

292.    Section 5.1.1 of each LPA states that "the Partnership shall bear and be responsible for all expenses of the Partnership," including the "Monitoring Expenses" of the Partnership.

293.    Appendix I of each LPA defines "Monitoring Expenses" as:

> Insofar as they relate to the investment activities of the Partnership: compensation and expenses of employees or consultants of the General Partner or the Management Company (as applicable); and fees and expenses for administrative, clerical and related support services provided by third parties, the General Partner, or the Management Company, office space and facilities, utilities and telephone.

294. Romulus breached Section 5.1.1 of each LPA by charging the Growth II Fund and the RC Growth VI Fund for expenses that did not "relate to the investment activities" of the Growth II Fund and the RC Growth VI Fund.

295. On information and belief, Romulus entered the Independent Contractor Agreements with WELD to maximize the Monitoring Expenses charged to the Growth II Fund and the RC Growth VI Fund, and to avoid the requirement in Section 5.1.1 of each LPA that any Monitoring Expenses must "relate to the investment activities" of the Growth II Fund and the RC Growth VI Fund.

296. The Growth II Plaintiffs and Growth VI Plaintiff have incurred damages as a direct and proximate result of the wrongful conduct by Romulus.

WHEREFORE, the Growth II Plaintiffs and Growth VI Plaintiff respectfully request that this Court enter an order finding in favor of the Growth II Plaintiffs and Growth VI Plaintiff on Count XI and providing the following relief:

(a) Awarding the Growth II Plaintiffs and Growth VI Plaintiff money damages in an amount to be determined at trial;

(b) Awarding the Growth II Plaintiffs and Growth VI Plaintiff pre- and post- judgment interest;

(c) Awarding the Growth II Plaintiffs and Growth VI Plaintiff's attorneys' fees and costs pursuant to statute or equity; and

(d) Awarding such other and further relief that the Court deems just and proper.

<u>COUNT XI</u>
**Fraud – Contractual Fraud**
**(Against Romulus)**

297.     Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though fully set forth herein.

298.     Pursuant to Section 5.1.1 of each LPA, Romulus represented that it would charge "Monitoring Expenses," not to exceed $500,000, for (i) compensation and expenses of employees or consultants of Romulus and (ii) fees and expenses for administrative, clerical and related support services provided by third parties, Romulus, or the Management Company, office space and facilities, utilities and telephone; ***but only insofar as the expenses in these two categories relate to the investment activities of the Growth II Fund and the RC Growth VI Fund.***

299.     This representation was false because Romulus charged the Growth II Fund and the RC Growth VI Fund for expenses that were not related to the investment activities of the Growth II Fund and the RC Growth VI Fund.

300.     Further, this representation was false because, on information and belief, WELD failed to allocate its shared expenses for work performed on behalf of all Romulus limited partnerships *pro rata* based on the size of each limited partnership.  Rather, on information and belief, WELD charged all of the limited partnerships an annual fee of $400,000 regardless of the size of the limited partnership or the amount of work WELD did related to the investment activities of the limited partnership.

301.     Romulus knew that the representation in Section 5.1.1 of each LPA was false or made the representations with reckless indifference to its truth or falsity.

302.     Romulus intended to induce the Growth II Plaintiffs and Growth VI Plaintiff's reliance on the representation in Section 5.1.1 of each LPA.

303.     The Growth II Plaintiffs and Growth VI Plaintiff actually and justifiably relied on Romulus' representation in Section 5.1.1 of each LPA.

304.     The Growth II Plaintiffs and Growth VI Plaintiff have incurred damages as a direct and proximate result of the wrongful conduct by Romulus.

WHEREFORE, the Growth II Plaintiffs and Growth VI Plaintiff respectfully request that this Court enter an order finding in favor of the Growth II Plaintiffs and Growth VI Plaintiff on Count XI and providing the following relief:

(a)     Awarding the Growth II Plaintiffs and Growth VI Plaintiff money damages in an amount to be determined at trial, including punitive damages;

(b)     Awarding the Growth II Plaintiffs and Growth VI Plaintiff pre- and post- judgment interest;

(c)     Awarding the Growth II Plaintiffs and Growth VI Plaintiff's attorneys' fees and costs pursuant to statute or equity; and

(d)     Awarding such other and further relief that the Court deems just and proper.

**COUNT XII**
**Breach of Fiduciary Duty**
**(Against Romulus and Chheda)**

305.     Plaintiffs reallege and incorporate the prior paragraphs of this Complaint as though fully set forth herein.

306.     Chheda controls Romulus.

307.     Romulus is the GP of the Growth II Fund and the RC Growth VI Fund.

308.     The Growth II Plaintiffs are LPs in the Growth II Fund.

309.     Growth VI Plaintiff is an LP in the RC Growth VI Fund.

310.     As the GP to the Growth II Fund and the RC Growth VI Fund, Romulus and Chheda owed fiduciary duties to the Growth II Plaintiffs and Growth VI Plaintiff, including the duty of loyalty and duty of care.

311.     Romulus and Chheda breached their fiduciary duties to the Growth II Plaintiffs and Growth VI Plaintiff by improperly charging Monitoring Expenses to the Growth II Fund and the RC Growth VI Fund that were not related to the investment activities of the Growth II Fund and the RC Growth VI Fund, respectively.

312.     Romulus and Chheda breached their fiduciary duties to the Growth II Plaintiffs and Growth VI Plaintiff by failing to allocate Monitoring Expenses on a *pro rata* basis based on the size of all the limited partnerships for which Romulus serves as a GP.  Rather, on information and belief, Romulus signed an agreement with WELD, pursuant to which WELD charged all of the limited partnerships an annual fee of $400,000 regardless of the size of the limited partnership or the amount of work WELD did related to the investment activities of the limited partnership.

313.     Romulus and Chheda breached their fiduciary duties the Growth II Plaintiffs and Growth VI Plaintiff by entering the Independent Contractor Agreements with WELD, pursuant to which the Growth II Fund and the RC Growth VI Fund (i) paid WELD for work that WELD did not perform on behalf of the Growth II Fund and the RC Growth VI Fund, (ii) paid WELD for work that was not required for the Growth II Fund and the RC Growth VI Fund, and (ii) overpaid WELD artificially inflated rates for any work performed for the Growth II Fund and the RC Growth VI Fund.

WHEREFORE, the Growth II Plaintiffs and Growth VI Plaintiff respectfully request that this Court enter an order finding in favor of the Growth II Plaintiffs and Growth VI Plaintiff on Count XII and providing the following relief:

(a)     Awarding the Growth II Plaintiffs and Growth VI Plaintiff money damages in an amount to be determined at trial, including punitive damages;

(b)     Awarding the Growth II Plaintiffs and Growth VI Plaintiff pre- and post- judgment interest;

(c)     Awarding the Growth II Plaintiffs and Growth VI Plaintiff's attorneys' fees and costs pursuant to statute or equity; and

(d)     Awarding such other and further relief that the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs hereby demands a trial by jury on all issues so triable.

March 22, 2022                    By:    */s/Daniel M. Rabinovitz*

Bryan M. Westhoff (pro hac forthcoming)
Kevin M. Hogan (pro hac forthcoming)
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
(312) 873-2973
bwesthoff@polsinelli.com
kmhogan@polsinelli.com

Elizabeth M. Marden (pro hac forthcoming)
POLSINELLI PC
900 West 48th Place, Suite 900
Kansas City, MO 64112
 (816) 691-3757
lmarden@polsinelli.com

Daniel M. Rabinovitz (BBO #558419)
Alexandra M. Papas (BBO #707581)
MURPHY & KING P.C.
28 State Street
Suite 3101
Boston, MA 02109
(617) 226-3429
drabinovitz@murphyking.com
apapas@murphyking.com

COUNSEL FOR PLAINTIFFS REPUBLIC
MAXIMAL LLC, REPUBLIC MASTER FUND,
LP, EQUIPMENTSHARE GROWTH ONE, LP,
EQUIPMENTSHARE GROWTH TWO, LP,
EQUIPMENTSHARE GROWTH THREE, LP,
EQUIPMENTSHARE ROMULUS CLOSE TWO,
LP, EQUIPMENTSHARE SECONDARY ONE,
LP, EQUIPMENTSHARE SECONDARY TWO,
LP, EQUIPMENTSHARE SECONDARY THREE,
LP, EQUIPMENTSHARE SECONDARY 2020,
LP, EQUIPMENTSHARE SECONDARY II, LP,
EQUIPMENTSHARE SECONDARY III, LP,
EQUIPMENTSHARE QUALIFIED 2020, LP,
EQUIPMENTSHARE QUALIFIED 2020 II, LP,
EQUIPMENTSHARE QUALIFIED 2020 III, LP,
EQUIPMENTSHARE QUALIFIED 2020 IV, LP,
EQUIPMENTSHARE 2020 ONE, LP,

EQUIPMENTSHARE 2020 TWO, LP,
EQUIPMENTSHARE 2020 THREE, LP,
EQUIPMENTSHARE 2020 FOUR, LP,
EQUIPMENTSHARE 2020 FIVE, LP,
EQUIPMENTSHARE 2020 SIX, LP,
EQUIPMENTSHARE 2020 SEVEN, LP,
EQUIPMENTSHARE 2020 EIGHT, LP,
EQUIPMENTSHARE 2020 GAINGELS, LP, AND
EQUIPMENTSHARE SAFE 1.7, LP