**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

REPUBLIC MAXIMAL LLC, *et al.*,

      *Plaintiffs*,

v.

ROMULUS CAPITAL PARTNERS II, LLC,
*et al.*,

      *Defendants.*

Civil Action No. 1:22-cv-10429

## MEMORANDUM OF LAW IN SUPPORT OF TRANSFERORS' MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT BACKGROUND .................................................................................................. 3

LEGAL STANDARD ................................................................................................................. 6

ARGUMENT .............................................................................................................................. 7

    I.     COUNTS I AND II AGAINST THE TRANSFERORS MUST BE DISMISSED
    BECAUSE SECTION 6.1 OF EACH TRANSFER AGREEMENT DOES NOT CONTAIN
    REPRESENTATIONS TO PLAINTIFFS. ................................................................................ 7

    II.     COUNT III MUST BE DISMISSED BECAUSE PLAINTIFFS PROVIDE NO
    PARTICULARIZED ALLEGATIONS THAT COULD GIVE RISE TO A MISTAKE
    CLAIM. .................................................................................................................................. 10

    III.     COUNT IV MUST BE DISMISSED BECAUSE NO CLAIM FOR UNJUST
    ENRICHMENT CAN LIE WHERE A CONTRACT GOVERNS THE PARTIES'
    RELATIONSHIP. ................................................................................................................... 15

    IV.     COUNT IX MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS TO
    ALLEGE ANY UNDERLYING WRONGFUL CONDUCT TO SUPPORT THAT CLAIM. 16

    V.     COUNT X MUST BE DISMISSED BECAUSE NO UNDERLYING WRONGFUL
    CONDUCT SUPPORTS THIS CLAIM AGAINST TRANSFERORS. ................................. 18

    VI.     ALL CLAIMS BY PLAINTIFFS REPUBLIC AND REPUBLIC MASTER FUND
    MUST BE DISMISSED FOR LACK OF STANDING. ......................................................... 19

CONCLUSION ......................................................................................................................... 20

CERTIFICATION PURSUANT TO LOCAL RULE 7.1 ......................................................... 21

CERTIFICATE OF SERVICE ................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABRY Partners V, L.P. v. F&W Acquisition LLC*,
  891 A.2d 1032 (Del. Ch. 2006)..................................................15

*Advanced Cell Tech. v. Infigen, Inc.*,
  2002 Mass. Super. LEXIS 377 (Mass. Super. 2002)............................10, 11, 13, 14

*Aetna Cas. Sur. Co. v. P&B Autobody*,
  43 F.3d 1546 (1st Cir. 1994).....................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................6, 7, 19

*Austin v. Bradley, Barry & Tarlow, P.C.*,
  836 F. Supp. 36 (D. Mass. 1993)................................................18

*Bathla v. 913 Mkt., LLC*,
  200 A.3d 754 (Del. 2018) ........................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................6, 7

*Brug v. Enstar Group, Inc.*,
  755 F. Supp. 1247 (D. Del. 1991)...............................................18

*Crescent/Mach I P'ship, L.P. v. Dr. Pepper Bottling Co.*,
  2008 Del. Ch. LEXIS 68 (Del. Ch. June 4, 2008) ...............................14

*FdG Logistics LLC v. A&R Logistics Holdings Inc.*,
  131 A.3d 842 (Del. Ch. 2016)..............................................10, 13, 14

*Fortis Advisors LLC v. Johnson & Johnson*,
  2021 Del. Ch. LEXIS 290 (Del. Ch. Sept. 14, 2021) ...........................14

*Greene v. Ablon*,
  794 F.3d 133 (D. Mass. 2015) ..................................................10

*Hydrogen Master Rights, Ltd. v. Weston*,
  228 F.Supp.3d 320 (D. Del. 2017)..............................................18

*Kuroda v. SPJS Holdings, L.L.C.*,
  971 A.2d 872 (Del. Ch. 2009)..................................................15

*McLaughlin v. Copeland*,
    455 F.Supp. 749 (D.Del.1978),
    *aff'd*, 595 F.2d 1213 (3d Cir.1979) ..........................................................................16

*Metro. Prop. & Cas. Ins. Co. v. Savin Hill Family Chiropractic*,
    2016 U.S. Dist. LEXIS 201546 (D. Mass. June 15, 2016) ....................................10

*Monroe v. Medtronic, Inc.*,
    511 F.Supp.3d 26 (D.Mass. 2021) ........................................................................12

*Monsen v. Consolidated Dressed Beef Co.*,
    579 F.2d 793 (3d Cir.)............................................................................................18

*Nicolet, Inc. v. Nutt*,
    525 A.2d 146 (Del. 1987) .......................................................................................16

*Osborn ex rel. Osborn v. Kemp*,
    991 A.2d 1153 (Del. 2010) .......................................................................................9

*Payton v. Abbott Labs*,
    512 F. Supp. 1031 (D. Mass. 1981) .......................................................................19

*Ramunno v. Cawley*,
    705 A.2d 1029 (Del. Supr. 1998) ...........................................................................16

*Steele v. Kelley*,
    46 Mass. App. Ct. 712, 710 N.E.2d 973 (Mass. App. Ct. 1999) ...........................13

*Taylor v. Moskow*,
    No. 13–12675–FDS, 2014 WL 2573990 (D.Mass. 2014) ......................................12

*Thomas v. Harrington*,
    909 F.3d 483 (1st Cir. 2018)...................................................................................16

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,
    524 F.3d 315 (1st Cir. 2008) ...............................................................................3, 4

*Union Oil Co. v. Mobil Pipeline Co.*,
    2006 Del. Ch. LEXIS 213 (Del. Ch. Dec. 15, 2006) .............................................10

*United States ex rel. Rost v. Pfizer*,
    507 F.3d 720 (1st Cir. 2007)...................................................................................10

**STATUTES**

6 Del. C. § 17-218(a) ....................................................................................................19

6 Del. C. § 17-218(b)(2) ...............................................................................................19

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)................................................................................................1

Fed. R. Civ. P. 9(b) ...................................................................................................10

Restatement (Second) of Contracts § 153................................................................14

Defendants Apollo1, Inc. ("Apollo1"), Athena 2, Inc. ("Athena"), and SNC 1 LLC ("SNC") (collectively, "Movants") respectfully submit this memorandum in support of their motion to dismiss the Complaint (Dkt. No. 1) (the "Complaint" or "Compl.") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT[1]

After purchasing partnership interests piecemeal over the course of fourteen months, Plaintiffs—a sophisticated investment adviser and the investment vehicles it advises—now assert they completely misunderstood what they were purchasing and that others must bear the consequences of their investment decisions.  Plaintiffs allege that they believed that they had purchased, in the aggregate, more than 93% of the limited partnership interests in the Series A Fund through a series of transactions.  These transactions took place from September of 2019 through November of 2020.  Plaintiffs now complain that they purchased, in fact, approximately 12% of the Series A Fund.

In reality, Plaintiffs received precisely what they had bargained for in the written transactional agreements and none of those agreements included any of the factual assumptions on which Plaintiffs base their complaint.  Among other things, the Complaint seeks relief against the Transferors of those purchased partnership interests—even though the Transferors did not make the representations to Plaintiffs central to the Complaint, and even though the Complaint lacks any factual allegations showing any wrongdoing, or even knowledge of wrongdoing, by the Transferors.  Each of Plaintiffs' six claims against the Transferors must be dismissed.

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Relevant Background section.

*First*, Plaintiffs cannot state a claim for breach of Section 6.1 of any of the Transfer Agreements because that section made no representations at all to Plaintiffs.  Instead, Section 6.1 expressly contains representations that certain of the Plaintiffs and the Transferors made to others.  For the same reason, Plaintiffs cannot be indemnified under Section 7.2 for breaches of representations not made to them.  As such, Plaintiffs' breach of contract claim fails.

*Second*, for the same reason, Plaintiffs' attempt to plead "contractual fraud" cannot survive as a matter of law.  Whether any representation in Section 6.1 of the respective Transfer Agreements was false when made is irrelevant because, again, Section 6.1 does not contain any representations made to Plaintiffs.

*Third*, Plaintiffs' attempt to plead mistake fails not only because it is not pleaded with particularity, but because there could have been no mistake in any event.  Plaintiffs concede the Transfer Agreements did not specify or represent the percentage interest of the Series A Fund that the Transferees were purchasing, and Plaintiffs' litigation-driven attempt to construe the plain words of the Transfer Agreements as "ambiguous" is baseless.

*Fourth*, Plaintiffs' claim for unjust enrichment fails as a matter of law because, as the Complaint makes abundantly clear, the relationship between Plaintiffs and the Transferors was governed in each instance by the Transfer Agreements.

*Fifth*, Plaintiffs' civil conspiracy claim fails because the Complaint does not allege any actionable underlying tort by the Transferors or otherwise plead a single fact showing that the Transferors were aware of, let alone conspired to support, the commission of some wrong.

*Sixth*, Plaintiffs' aiding and abetting claim also fails for lack of some underlying wrong and lack of any factual allegations that plausibly suggest the Transferors knew about any such wrong or supported it.

2

*Finally*, all claims by Republic and the Republic Master Fund must be dismissed because they lack standing to seek any relief. They are not Transferees; instead, they created the Transferees as "series" under the Republic Master Fund, and those series alone may sue and be sued in their own name.

## **RELEVANT BACKGROUND**

According to the Complaint, Plaintiff Republic Maximal LLC ("Republic") is the general partner of and investment adviser to the other Plaintiffs, which are various private investment funds organized as limited partnerships that Republic manages. Compl. ¶¶ 1, 2. The Series A Fund is governed by a limited partnership agreement. Compl. ¶ 62; Dalsen Decl. Ex. 15 (filed herewith).[2]

The Complaint centers on investments in an entity called Romulus EquipmentShare Growth LP, which the Complaint calls the "Series A Fund." Compl. at 2, ¶ 2. Investors in the Series A Fund purchased limited partnership interests in the Series A Fund for an aggregate amount of approximately $3.98 million. Compl. ¶¶ 24, 26. The Series A Fund, in turn, invested in a single entity—EquipmentShare.com, Inc. ("EquipmentShare")—by acquiring certain of EquipmentShare's preferred stock in 2016, giving the Series A Fund in total an approximate 3.47% interest in EquipmentShare's preferred stock. Compl. ¶¶ 20-21, 24, 26.[3]

_____

[2] The limited partnership agreement for the Series A Fund is not attached to the Complaint, but is properly before the Court for purposes of this motion because the Complaint refers to that agreement, that agreement defines the interests Plaintiffs purchased through the Transfer Agreements, and that agreement is central to Plaintiffs' information rights pertaining to their purchased interests in the Series A Fund. *See, e.g.*, *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) ("In ruling on a Rule 12(b)(6) motion, a district court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint.") (citations omitted).

[3] The general partner of the Series A Fund is Defendant Romulus Capital Partners II, LLC, and Defendant Neil Chheda is the co-founder and managing partner of that entity (collectively with Defendants Romulus EquipmentShare Growth II LP and FC Equipment Share Growth VI LP, the "Romulus Defendants"). Compl. ¶¶ 10, 14.

According to the Complaint, Defendants Athena 2, Inc. ("Athena"), SNC 1 LLC ("SNC"),[4] and Apollo1, Inc. ("Apollo") (together, the "Transferors") were not original investors in the Series A Fund, but at some point acquired interests in the Series A Fund. *See, e.g.*, Compl. ¶¶ 53, 75, 92.

Beginning in late 2019 and over the next fourteen months, each of the Transferors separately offered to sell their limited partnership interests in the Series A Fund for specified prices. In September 2019, Athena offered to sell its interest in the Series A Fund for $6.1 million. Compl. ¶ 30. SNC offered to sell one of its positions in the Series A Fund in October 2019 for $9.1 million, Compl. ¶ 58, a second position in the Series A Fund in April 2020 for $6.75 million, Compl. ¶ 80, and a third position in the Series A Fund in August 2020 for $9.1 million, Compl. ¶ 117. Apollo also offered to sell its position in the Series A Fund for $13 million. Compl. ¶ 96.

Certain of the Plaintiffs purchased Transferors' respective limited partnership interests in the Series A Fund for the prices the Transferors proposed. Compl. ¶¶ 47, 69, 87, 106, 122. Specifically, Plaintiff Republic Master Fund created different entities—or "series"—for each specific transaction. Compl. ¶ 7. Each of those purchases by each series was conducted through a Transfer Agreement. Compl. ¶ 130. All fourteen Transfer Agreements are governed by Delaware law (*see, e.g.*, Dalsen Decl. Ex. 1, § 8.8), and are identical as to all material terms except as to the specific entities involved, the prices involved in each transaction, and the respective Transferor positions certain of the Plaintiffs purchased. *See generally* Dalsen Decl. Ex. 1-14.[5]

---

[4] The Complaint refers to SNC 1 LLC and "SNC 1 LCC," the latter of which appears to be a typographical error.

[5] The Transfer Agreements are not attached to the Complaint but are properly before the Court for purposes of this motion because the Complaint refers to the Transfer Agreements, alleges breach of each Transfer Agreement, and the Transfer Agreements are integral to the Complaint. *See, e.g.*, *Caterpillar Inc.*, 524 F.3d at 321.

Each Transfer Agreement identifies what each Transferor is selling in terms of its own ownership interest—not expressed as a percentage of ownership of the Series A Fund.  For example, the September 2019 Transfer Agreement between Athena (i.e., the "Transferor") and Plaintiff EquipmentShare Growth One states that the Transferor has an interest in the Series A Fund that it "purchased for a total of $600,000" (Dalsen Decl. Ex. 1 at 1) that the Transferor desired to sell 50.53% of that Partnership Interest—that is, 50.53% of what Athena itself owned—to the Transferee as a "Transferred Interest" (*id.*), and that the Transferee agreed to purchase that Transferred Interest for $3,082,000 (*id.* § 2.1).  Nowhere does the Transferor (or anyone else) express the Transferred Interest in terms of the percentage interest of ownership of the Series A Fund.

Plaintiffs do not make any factual allegations that any Transferor made any representation relating to the percentage of the Series A Fund it owned and transferred.  In fact, Plaintiffs specifically admit that "[e]ach Transfer Agreement does not specify . . . the percentage of the Series A Fund's total LP Interests that is represented by the LP Interest being sold by the Transferor."  Compl. ¶ 224.  Likewise, Plaintiffs do not make any factual allegations concerning ***any*** communications between the Transferors and the Transferee Plaintiffs at all, and do not make any factual allegations relating to the Transferors' awareness of communications between Romulus, Chheda, and Plaintiffs.

Each Transfer Agreement also specifies to whom respective representations in the Transfer Agreements are being made.  In Section 4, "[t]he Transferor" makes certain representations "for the benefit of the Transferee, the General Partner, and the Partnership[.]"  *See, e.g.*, Dalsen Decl. Ex. 1 § 4.  Section 5, in turn, provides that "[t]he Transferee" makes certain representations "for the benefit of the Transferor, the General Partner, and the Partnership[.]"  *Id.* at § 5.  Section 6, in

contrast, contains no representations as between the Transferors and Plaintiff Transferees.  *Id.* at §
6.  Instead, Section 6 contains representations expressly made only to two entities—Defendant
Romulus Capital Partners II, LLC (the "<u>General Partner</u>") and to the Series A Fund itself—stating
that each of the Transferor and Transferee "represents, acknowledges and agrees (***for the benefit
of the General Partner and the Partnership***) as follows," including as for representations in
Section 6.1.  *Id.* (emphasis added).

Plaintiffs assert six claims against the Transferors.  Count I asserts a breach of Section 6.1
of the respective Transfer Agreements.  Count II asserts "Contractual Fraud" on the grounds the
representations in Section 6.1 were false when made.  Count III asserts mistake on the grounds
that each Transfer Agreement is "ambiguous" as to the proportion of the Series A Fund each
Transfer Agreement conveyed to the Transferees.  Count IV asserts unjust enrichment arising from
the Transferees paying the Transferors for limited partnership interests in the Series A Fund.  Count
IX asserts civil conspiracy, and Count X asserts "aiding and abetting," on the grounds the
Transferors knew that Defendants Romulus and Chheda had misrepresented the valuation of
EquipmentShare and "failed to disclose the truth" about it.

## LEGAL STANDARD

A complaint cannot survive a motion to dismiss unless it "contain[s] sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,
556 U.S. 662, 667 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  As
such, while the Court must accept factual allegations as true, it is not required to accept as true
allegations that amount to legal conclusions, conclusory statements, "a formulaic recitation of the
elements of a cause of action," or "'naked assertion[s]' devoid of 'further factual enhancement.'"
*Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).  Further, even taking a complaint's factual
allegations as true and drawing reasonable inferences in plaintiffs' favor, "[w]here a complaint

pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As such, allegations consistent with lawful conduct that would be a "more likely explanation[]" or an "'obvious alternative explanation'" than unlawful conduct do not plausibly state a claim. *Id.* at 681 (quoting *Twombly*, 550 U.S. at 567).

## ARGUMENT

### I. Counts I and II Against the Transferors Must Be Dismissed Because Section 6.1 of Each Transfer Agreement Does Not Contain Representations to Plaintiffs.

In Count I, Plaintiffs assert a breach of Section 6.1 of each Transfer Agreement on the grounds that, contrary to the representation in that provision, Defendants Romulus and Chheda received some fee or other compensation as a result of the transfers. Compl. ¶¶ 201-207. Similarly, in Count II, Plaintiffs assert "contractual fraud" on the grounds that the Transferors knew the representations in Section 6.1 were false and misleading when made. Compl. ¶¶ 210-218. But Plaintiffs cannot state a claim arising from Section 6.1 of the Transfer Agreement as a matter of law because, by the Transfer Agreements' plain terms, the representations in Section 6.1 were not made for the benefit of Plaintiffs.

The law is clear that unambiguous contracts must be interpreted in accordance with their plain terms. *See, e.g.*, *Bathla v. 913 Mkt., LLC*, 200 A.3d 754, 759–60 (Del. 2018) ("The Court must interpret clear and unambiguous terms according to their ordinary meaning, and in an unambiguous, integrated written contract, the Court may not use extrinsic evidence to vary[ ] or contradict[ ] the terms of that contract.") (internal quotation marks omitted) (alternations in original).

Here, Section 6 of each Transfer Agreement expressly states that the representations in Section 6 (including those in Section 6.1) are being made for the benefit of the General Partner and the Series A Fund—not to any of the Plaintiffs:

> 6. Covenants and Representations of both Transferor and Transferee. Each of the Transferor and the Transferee hereby represents, acknowledges and agrees (***for the benefit of the General Partner and the Partnership***) as follows.

*See, e.g.*, Dalsen Decl. Ex. 1 § 6 (emphasis added).  Plaintiffs cannot establish a claim (for breach of contract or "contractual fraud") against the Transferors based on representations that were made for the benefit of others (i.e., not Plaintiffs).

This straightforward conclusion is also corroborated by the plain text of Section 4 and Section 5 of the Transfer Agreements, which expressly provide for representations between the Transferors and Transferees using the same structure.  Section 4 expressly contains representations from the Transferors to the Transferees:

> 4. Covenants and Representations of the Transferor. The Transferor hereby represents, acknowledges and agrees (***for the benefit of the Transferee, the General Partner and the Partnership***) as follows.

*See, e.g.*, Dalsen Decl. Ex. 1 § 4 (emphasis added).  Similarly, Section 5 expressly contains representations from the Transferees to the Transferors:

> 5. Covenants and Representations of the Transferee. The Transferee hereby represents, acknowledges and agrees (***for the benefit of the Transferor, the General Partner and the Partnership***) as follows.

*See, e.g.*, Dalsen Decl. Ex. 1 § 5 (emphasis added).  In each instance, the parties to the Transfer Agreements specified to whom the specific representations in Sections 4, 5, and 6 were being made.  *See* Dalsen Decl. Exs. 1-14 §§ 4, 5, 6.

Here, the parties to the Transfer Agreements expressly provided that the representations in Section 6 were ***not*** made to the Transferees.  As such, the Transferees cannot seek relief for any

supposed "breach" of, or "misrepresentation" arising from, any representations in Section 6 by its plain terms. *See, e.g.*, *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010) ("When the contract is clear and unambiguous, we will give effect to the plain-meaning of the contract's terms and provisions.").  Counts I and II must be dismissed.

Further, for the same reasons, Plaintiffs' request for an award of fees and costs pursuant to Section 7.2 fails as a matter of law.  Section 7.2 provides that the Transferors will indemnify the Transferees, the General Partner, and the Partnership for "Losses" resulting from breach of the Transferors' representations (Dalsen Decl. Ex. 1 § 7.2).  But Section 7.2 can only mean that the person to whom the representation was made could seek relief for an alleged breach—not that *anyone* could seek relief for alleged breaches of representations to *others* not seeking relief—in view of the contract as a whole and the structure of Sections 4, 5, and 6. *See, e.g.*, *Kemp*, 991 A.2d at 1159 ("Delaware adheres to the objective theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party.  We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage. We will not read a contract to render a provision or term meaningless or illusory.") (internal quotation marks omitted).  Reading Section 7.2 to enable Plaintiffs to rely on the representations in Section 6 would change the meaning and purpose of the text in Section 6, as well Section 4, such that the parenthetical in those sections that includes the phrase "for the benefit of" would have no practical effect.  Plaintiffs therefore cannot seek to recover for "Losses" relating to alleged breaches of representations not made to them.[6]

---

[6] Further, the Complaint does not allege that any of the representations the Transferors made to any of the Transferees in Section 4 of each Transfer Agreement were false when made or breached.

**II.      Count III Must Be Dismissed Because Plaintiffs Provide No Particularized Allegations That Could Give Rise to a Mistake Claim.**

Plaintiffs likewise fail to state a claim for mistake.  Allegations of mistake are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which require plaintiffs to "state with particularity the circumstances constituting fraud or mistake." "Conclusory allegations and references to 'plans and schemes' are not sufficient." *United States ex rel. Rost v. Pfizer*, 507 F.3d 720, 727 (1st Cir. 2007).  Instead, plaintiffs must provide detailed allegations of the time, place, and content of alleged misstatement or misrepresentations, and where a complaint involves multiple defendants, "each defendant's role must be particularized with respect to their alleged involvement." *Metro. Prop. & Cas. Ins. Co. v. Savin Hill Family Chiropractic*, 2016 U.S. Dist. LEXIS 201546, at *13 (D. Mass. June 15, 2016).

Plaintiffs fail to meet these pleading requirements, regardless of whether Massachusetts or Delaware law applies.  The laws of each state set "a very high bar for unilateral mistake claims, requiring the party [seeking a remedy for mistake] to prove by clear and convincing evidence that the other party had actual knowledge of the mistake, but nonetheless remained silent." *Union Oil Co. v. Mobil Pipeline Co.*, 2006 Del. Ch. LEXIS 213, at *56 (Del. Ch. Dec. 15, 2006) (citation omitted); *accord FdG Logistics LLC v. A&R Logistics Holdings Inc.*, 131 A.3d 842, 861 (Del. Ch. 2016) ("Rescission of a transactions of a unilateral mistake is an extraordinary remedy."); *Advanced Cell Tech. v. Infigen, Inc.*, 2002 Mass. Super. LEXIS 377, at *18 (Mass. Super. 2002) ("The party asserting a unilateral mistake bears the burden of showing by clear evidence that he is entitled to relief . . . A party may avoid a contract for unilateral mistake only if . . . [among other things, the other party] knows of his mistake"); *see also Greene v. Ablon*, 794 F.3d 133, 147 (D. Mass. 2015) (applying Massachusetts law and observing that "[u]nilateral mistake is a disfavored defense.").  "If one party understood the agreement to be substantially as written, the other party

will generally not be entitled to relief on the ground of unilateral mistake." *Infigen, Inc.*, 2002 Mass. Super. LEXIS 377, at *18.

Here, Plaintiffs' entire claim rests on the conclusory allegation that the Transferor defendants "knew of the Series A Plaintiffs' mistake and failed to correct the mistake." Compl. ¶ 233.   They do not allege, however, that the Transferor Defendants themselves made any misrepresentations. *See* Compl. ¶ 227.  Further, nowhere do the Plaintiffs allege that the Transferor Defendants were party to any of the communications containing alleged misrepresentations between Plaintiffs and the other Defendants or their agents.   Nor do Plaintiffs allege that the Transferors had any reason to believe the Transfer Agreements failed to capture the parties' complete understanding as written.  *See* Dalsen Decl. Exs. 1-14 § 8.2.  Instead, the single provision Plaintiffs cite as the basis for the alleged mistake contains no misstatement, as the Plaintiffs themselves admit.  *See* Compl. ¶¶ 222–24 (alleging only that Section 2.1 states that "the Transferor transfers to the Transferee the Transferred Interest" for a set price, and that the definition of "Transferred Interest" does not include or fix a proportion of the "total LP Interests that is represented by the LP Interest being sold by the Transferor").

Further, there can be no reasonable inference of unilateral mistake because Plaintiffs—a sophisticated investment adviser and the entities it advises—had over fourteen months to seek information and clarity about what it actually owned.  The Complaint recites Plaintiffs' piecemeal purchases of partnership interests in the Series A Fund over fourteen months (*see, e.g.*, Compl. ¶¶ 47, 69, 87, 106, 122).  Yet none of the fourteen Transfer Agreements state the percentage of the Series A Fund that Plaintiffs were purchasing.  Compl. ¶ 224.

Plaintiffs apparently believed that they had cobbled together more than 93% of the interest in the Series A Fund, but had never done anything to confirm their belief.  Indeed, Plaintiffs do

not allege that they undertook any efforts over the course of fourteen months to verify what they actually owned—despite repeated opportunities as part of each transaction and despite the absolute right to do so under the Series A Fund's limited partnership agreement.  *See* Dalsen Decl. Ex. 15 at § 3.1 (Subscription for each Partner part of Series A Fund's books and records); *id.* § 14.1.1 (Partners may access Subscription for each Partner); *id.* at Appendix I, Page I-5 (defining Subscription to include amount each Partner owns).  Instead, Plaintiffs allege that they did not learn of their actual ownership interest in the Series A Fund until January 2022 (Compl. ¶ 135)— which is a red flag for any fiduciary, such as Plaintiffs.  Put simply, this admission establishes Plaintiffs' failure to conduct basic diligence around the investments it made at each stage, both before their first purchase and for over a year as they made subsequent purchases—not a "mistake" for which these sophisticated Plaintiffs can seek relief from the Transferors.

The only factual allegation the Plaintiffs provide to substantiate their threadbare recital of the knowledge element of unilateral mistake is their claim that the Transferors are affiliated with Defendant Chheda's father and cousin.  *See* Compl. ¶¶ 14–17.  Based solely on the allegations they are family, the Plaintiffs assert that the Transferors engaged conspired to make false representations.  This allegation amounts to the sort of vague reference to a plan or scheme that must be rejected under Rule 9(b).  *See, e.g.*, *Monroe v. Medtronic, Inc.*, 511 F. Supp. 3d 26, 39 (D. Mass. 2021) (dismissing claims for fraudulent concealment and negligent misrepresentation because plaintiff's "vague allegations" and "vague recitation of the elements of each claim [were] insufficient to allow a party to quickly and specifically respond to a potentially damaging allegation as required by Rule 9(b).") (internal quotations omitted); *Taylor v. Moskow*, No. 13–12675–FDS, 2014 WL 2573990, at *5 (D. Mass. 2014) (dismissing fraud and misrepresentation counts for failing to satisfy Fed. R. Civ. P. 9(b) because the complaint "d[id] not include the time

or place of defendants' alleged fraudulent acts and misrepresentations . . . [and] [t]he allegations [were] vague as to which of the defendants made the purportedly misleading statements and what the content of those statements were."); *see also, e.g.*, *Steele v. Kelley*, 46 Mass. App. Ct. 712, 739, 710 N.E.2d 973, 992–93 (Mass. App. Ct. 1999) ("The fact that familial relationships on both sides of the transaction were involved does not in itself . . . give rise to a supportable inference of impropriety, let alone fraud."). Because the Plaintiffs fail to provide any particularized, factual pleading that Defendant Chheda and Romulus communicated their alleged misrepresentations to the Transferor Defendants, Plaintiffs' mistake claim does not pass muster.

The Defendants also do not and cannot allege that the agreement was unconscionable, as is necessary to state a claim for mistake. *See FdG Logistics*, 131 A.3d at 862 (stating that rescission due to unilateral mistake is only available where "enforcement of the agreement would be unconscionable," among other requirements); *Infigen Inc.*, 2002 Mass. Super. LEXIS at *18 ("A party may avoid a contract for unilateral mistake only if he does not bear the risk of the mistake and the other party either knows of his mistake or the mistake has the effect of rendering the contract unconscionable."). Here, the Plaintiffs do not allege any disparity in bargaining power as between all of the sophisticated parties involved here, and certainly none giving rise to the conclusion that the Plaintiffs had no meaningful choice in entering the transfer agreements. *See FdG Logistics*, 131 A.3d at 862 ("It is not alleged, nor would it be credible to suggest, that [defendants] wielded such overwhelming power as to present [plaintiff], a private equity firm, with an absence of meaningful choice."). And Plaintiffs do not allege that the price they paid is unreasonable, let alone oppressive; Plaintiffs merely complain that they did not receive the proportion of the Series A Fund they thought they would. Regardless, "a dispute over price

alone—even a substantial one—is not grounds for finding an agreement between sophisticated parties to be unconscionable." *Id.*

In all events, even had the Plaintiffs carried their initial pleading burden, their mistake claim must also be dismissed because Plaintiffs, as sophisticated commercial parties, knowingly assumed any risk associated with mistakes arising from party representations in connection with the transfer agreements.  "A party may avoid a contract for unilateral mistake only if he does not bear the risk of the mistake." *Infigen, Inc.*, 2002 Mass. Super. LEXIS 377, at *18; *accord, e.g.*, *Crescent/Mach I P'ship, L.P. v. Dr. Pepper Bottling Co.*, 2008 Del. Ch. LEXIS 68, at *24–25 n.47 (Del. Ch. June 4, 2008) (citing Restatement (Second) of Contracts § 153 for the proposition that "bearing the risk of mistake is fatal to a claim of unilateral mistake"), *overturned on other grounds*, 962 A.2d 205 (Del. 2008).  A party assumes the risk of a mistake where, among other circumstances, "the contract expressly assigns the risk to that party."  *Fortis Advisors LLC v. Johnson & Johnson*, 2021 Del. Ch. LEXIS 290, at *38 (Del. Ch. Sept. 14, 2021) (citation omitted); *accord Infigen, Inc.*, 2002 Mass. Super. LEXIS 377, at *18 ("A party bears the risk of a mistake when the risk as allocated to him by agreement of the parties.").

Here, the Transfer Agreements do precisely that.  They make clear that each agreement "contains the entire understanding among the Parties," superseding all prior communications and stating "[w]ithout limitation" that "there are no representations . . . among the Parties relating to the transfer and substitution contemplated by this Agreement which are not fully expressed in this Agreement."  *See* Dalsen Decl. Ex. 1-14 § 8.2.  Plaintiffs also had over a year to conduct any diligence they saw fit while purchasing the various partnership interest at issue, and each Transferee stated in each Transfer Agreement that it "has conducted its own independent review and analysis of the transactions contemplated by this Agreement without reliance upon any

information provided by the Partnership, the General Partner or any Related Person thereof." Dalsen Decl. Exs. 1-14 § 6.2.  To the extent the Plaintiffs, as sophisticated commercial parties, relied on prior representations that went unstated in these fully integrated agreements, they knowingly did so at their own risk.  *Cf. ABRY Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006) ("[A] party cannot promise, in a clear integration clause of a negotiated agreement, that it will not rely on promises and representations outside of the agreement and then shirk its own bargain in favor of a 'but we did rely on those other representations' fraudulent inducement claim").  Plaintiffs' mistake claim must therefore be dismissed.

### III.    Count IV Must Be Dismissed Because No Claim for Unjust Enrichment Can Lie Where a Contract Governs the Parties' Relationship.

Plaintiffs also plainly cannot state a claim for unjust enrichment because, with respect to each transfer of limited partnership interests in the Series A Fund that they seek to challenge, the Transfer Agreements governed the parties' relationship.

The law is clear that "[a] claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim, and that where a complaint "alleges an express, enforceable contract that controls the parties' relationship . . . a claim for unjust enrichment will be dismissed."  *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009) (internal quotation marks omitted).

Here, there is no dispute that the Transfer Agreements govern the parties' relationship with respect to each transfer of limited partnership interests in the Series A Fund.  The Complaint alleges that the challenged transfers each arose out of a Transfer Agreement, *see, e.g.*, Compl. ¶¶ 2, 130, and Plaintiffs seek to enforce each Transfer Agreement.  Further, the Complaint does not allege any manner other than through the Transfer Agreements that the Transferors were supposedly "enriched through payment by the Series A Plaintiffs to the Transferors" (Compl. ¶

236), let alone unjustly.  Plaintiffs cannot state a claim for unjust enrichment, and Count IV must be dismissed.

**IV.    Count IX Must Be Dismissed Because the Complaint Fails to Allege Any Underlying Wrongful Conduct to Support That Claim.**

Plaintiffs' conspiracy claim must also be dismissed because the Complaint fails to allege facts showing any underlying wrongful act, the Transferors' participation in it, or even the Transferors' knowledge of any supposed scheme.

Civil conspiracy is not a standalone cause of action, because it requires the commission of some underlying wrong.  *See, e.g.*, *Ramunno v. Cawley*, 705 A.2d 1029, 1039 (Del. Supr. 1998); *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149–50 (Del. 1987) (citing *McLaughlin v. Copeland,* 455 F.Supp. 749, 752 (D. Del.1978), *aff'd*, 595 F.2d 1213 (3d Cir.1979)); *Thomas v. Harrington*, 909 F.3d 483, 490 (1st Cir. 2018) (citing *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1564 (1st Cir. 1994)).  In particular, civil conspiracy requires "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage."  *Nicolet, Inc.*, 525 A.2d at 149–50.  Here, Plaintiffs cannot meet at least the first two elements as a matter of law.

As a threshold issue, Plaintiffs have not stated any claim showing an underlying wrong by any of the Transferors.  Plaintiffs' claim for breach of contract (Count I) and claim of "contractual fraud" (Count II) both fail because the alleged misrepresentation at center of those claims was not made to Plaintiffs at all.  *See supra* Section I.  Plaintiffs' assertion of unilateral mistake cannot succeed because the Transfer Agreements "do[] not specify" what percentage of the Series A Fund the Transferees purchased (Compl. ¶ 224); further, the clear statement in Section 2.1 of each Transfer Agreement as what Plaintiffs acquired cannot be made ambiguous now by hoping it said something different.  *See supra* Section III.  And, Plaintiffs' assertion of unjust enrichment fails

16

because no such claim exists where—as here—a contract governs the parties' relationship.  *See supra* Section III.  Without any actionable underlying wrong, Plaintiffs conspiracy claim must fail.

Here, to the extent that Plaintiffs base their civil conspiracy claim on the alleged underlying wrong of one of more of the other Defendants, the Complaint fails to plead facts that plausibly show the Transferors performed any act in furtherance of a conspiracy.  The Complaint asserts in conclusory fashion that the "Transferors were aware that Romulus and Chheda misrepresented the valuation of EquipmentShare used in the Transferors' purchase of their LP Interests from the original LPs, and the Transferors failed to disclose the truth to ensure that Republic and the Series A Plaintiffs overpaid for the LP Interests" (Compl. ¶ 283), but no factual allegations support that assertion.  Among other things, the Complaint does not even allege that the Transferors were copied on communications containing alleged misrepresentations, let alone some other plausible reason to conclude that the Transferors were both (1) aware of some specific misrepresentation and (2) acted in combination with anyone else to harm Plaintiffs.

Plaintiffs' entire theory of civil conspiracy appears to rest on their allegation that Defendant Chheda's father is a founder and/or officer of the Transferor entities (*see, e.g.*, Compl. ¶¶ 15-17, 149-51), and Plaintiffs seek to use the simple fact of familial relation to claim the Transferors conspired to commit wrongful acts.  That is not enough:  familial relation standing alone does not plausibly suggest conspiracy to harm others.

 Plaintiffs also fail to allege facts showing any unlawful act by the Transferors.  Plaintiffs complain that the Transferors "failed to disclose the truth" of supposed misrepresentations (Compl. ¶ 283), even though the Complaint fails to allege facts that would plausibly show the Transferors were ***aware*** of any alleged misrepresentations in the first place.  Further, Plaintiffs provide no reason why the Transferors would have had an affirmative obligation to disclose anything more.

The Complaint does not allege a single communication between Plaintiffs and the Transferors such that there was any occasion to "tell the truth" or say more.  Further, the parties were at arms' length, there is no plausible basis to conclude that the Transferors were asked or required to clarify what they were selling in view of the plain text of Section 2.1 of each Transfer Agreement, and no articulated legal basis to impose additional affirmative obligations on the Transferors to say more.[7]

## V.   Count X Must Be Dismissed Because No Underlying Wrongful Conduct Supports This Claim Against Transferors.

As with Count IX, Plaintiffs' attempt to assert secondary liability for "aiding and abetting" must fail because the Complaint does not contain factual allegations that plausibly allege the Transferors knew of or participated in any underlying wrongful conduct.

A plaintiff asserting aiding and abetting must demonstrate that (1) a wrongful act was committed; (2) the defendant had knowledge of the act; and (3) the defendant knowingly and substantially participated in or provided substantial assistance for the wrongful act.  *Brug v. Enstar Group, Inc.*, 755 F. Supp. 1247, 1256 (D. Del. 1991) (citing *Monsen v. Consolidated Dressed Beef Co.,* 579 F.2d 793, 799 (3d Cir.)  Like civil conspiracy, aiding and abetting is a derivative tort, and so "there must be an actionable underlying wrong to which the claim of aiding and abetting can attach."  *Hydrogen Master Rights, Ltd. v. Weston*, 228 F.Supp.3d 320, 341 (D. Del. 2017).  *See also Austin v. Bradley, Barry & Tarlow, P.C.*, 836 F. Supp. 36, 40 (D. Mass. 1993) (aiding and abetting requires plaintiff to show "(1) the defendant provides 'substantial assistance or encouragement to the other party;" and (2) the defendant has "unlawful intent, i.e., knowledge that

---

[7] Count IX and Count X should be dismissed for the additional reason that Plaintiffs have failed to allege any underlying claim against the Romulus Defendants for the reasons identified in the Romulus Defendants' separate motion to dismiss.

the other party is breaching a duty and the intent to assist that party's actions.'") (quoting *Payton v. Abbott Labs,* 512 F. Supp. 1031, 1036 (D. Mass. 1981)).  Plaintiffs fail to meet these elements.

For the reasons noted above, Plaintiffs have not pleaded factual allegations showing any underlying wrong committed by Transferors, or that the Transferors had any knowledge or awareness of any underlying wrong such that they could have knowingly participated in or assisted in such a wrong.  Further, the Complaint does not contain factual allegations that plausibly show ***how*** the Transferors supposedly assisted or supported some underlying wrong.  Instead, Plaintiffs again ask the Court to find familial relation standing alone enough to assert secondary liability— but that alone is not "sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 667 (internal quotation marks omitted).

## VI.   All Claims By Plaintiffs Republic and Republic Master Fund Must Be Dismissed for Lack of Standing.

All claims by two of the Plaintiffs—Republic and the Republic Master Fund—must be dismissed for a separate reason:  they lack standing to sue on behalf of the limited partnerships they created to receive the Transferred Interests from the Transferors.

The Complaint asserts that each of the Transferee Plaintiffs is a "series" formed under Republic Master Fund, itself a "series limited partnership."  Compl. ¶¶ 5-9.  Under Delaware law, "[a] partnership agreement may establish or provide for the establishment of 1 or more designated series of limited partners, general partners, partnership interests or assets" and "[a]ny such series may have separate rights, powers or duties with respect to specified property or obligations . . . ."  6 Del. C. § 17-218(a).  And, critically, has the ability to, "***in its own name***, contract, hold title to assets . . . ***and sue and be sued***."  6 Del. C. § 17-218(b)(2) (emphasis added).

Here, it is clear that only the respective Transferee entities could attempt to assert claims against the Transferors, as the Transferees as the legal persons recognized under Delaware law

that can seek to assert their rights under the Transfer Agreements.  As such, Republic and the Republic Master Fund must be dismissed for lack of standing.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated:  May 24, 2022

Respectfully submitted,

*/s/ William D. Dalsen*

Timothy W. Mungovan (BBO No. 600702)
William D. Dalsen (BBO No. 689334)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110-2600
Telephone: (617) 526-9600
Facsimile: (617) 526-9899
tmungovan@proskauer.com
wdalsen@proskauer.com

*Attorneys for Defendants Athena 2, Inc., SNC 1 LLC, and Apollo1, Inc.*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

The undersigned attorney certifies that counsel for the parties conferred and attempted in good faith to resolve or narrow the issues described in this motion.  Plaintiffs oppose the relief sought by this motion.

*/s/ William D. Dalsen*
William D. Dalsen (BBO No. 689334)

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was filed via the Court's CM/ECF system and that and a copy will be sent automatically to all counsel of record on May 24, 2022.

*/s/ William D. Dalsen*
William D. Dalsen (BBO No. 689334)