## ROMULUS EQUIPMENTSHARE GROWTH OPPORTUNITY L.P.

## A DELAWARE LIMITED PARTNERSHIP

## LIMITED PARTNER TRANSFER AND SUBSTITUTION AGREEMENT

THIS LIMITED PARTNER TRANSFER AND SUBSTITUTION AGREEMENT (this "Agreement") is dated as of September 20, 2019 by and among ROMULUS CAPITAL PARTNERS II, LLC, a Delaware limited liability company acting in its capacity as "General Partner" of ROMULUS EQUIPMENTSHARE GROWTH L.P., a Delaware limited partnership (the "Partnership"), Athena 2, Inc. (the "Transferor"), and EquipmentShare Growth Two, a series of Republic Master Fund, LP (the "Transferee") (collectively, the "Parties").

Capitalized terms not otherwise defined herein have the same meaning as in the Limited Partnership Agreement of the Partnership (the "Partnership Agreement").

WHEREAS, under the terms of the Partnership Agreement, the Transferor is a Limited Partner with a Subscription to the Partnership purchased for a total of $600,000; and

WHEREAS, in its capacity as a Limited Partner, the Transferor holds an interest in the Partnership representing the Transferor's entire right, title, interest, obligations, and commitments in respect of the Partnership (together, the "Partnership Interest"); and

WHEREAS, the Transferor desires to transfer to the Transferee 33.57% (equal to $201,420.00) of the Partnership Interest (such portion referred to herein as the "Transferred Interest"), and the Transferee desires to accept such transfer and to become a substitute Limited Partner with respect to the Transferred Interest; and

WHEREAS, under the terms of the Partnership Agreement, there generally shall be no transfer of the Partnership Interest, nor the admission of a substitute Limited Partner in respect thereof, without the consent of the General Partner.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the Parties do hereby agree as follows.

1. ***Definitions***. As used in this Agreement:

***Act*** shall mean the Delaware Revised Uniform Limited Partnership Act, Title 6, Delaware Code, Section 17-101 et seq., as amended.

***Close of Business*** shall mean 5:00 p.m., local time, in Boston, Massachusetts.

***Code*** shall mean the United States Internal Revenue Code of 1986, as amended, including the regulations promulgated thereunder.

***Dollar or $*** shall mean the lawful currency of the United States.

***Effective Time*** shall mean September 20, 2019.

***ERISA*** shall mean the United States Employee Retirement Income Security Act of 1974, as amended, including the regulations promulgated thereunder.

***Exchange Act*** shall mean the United States Securities Exchange Act of 1934, as amended, including the rules and regulations promulgated thereunder.

**FOIA Obligation** shall mean any obligation arising under a "freedom of information," "sunshine," "public records" or similar law to make available to the public (or to a member of the public upon request) any information relating to the Partnership or any portfolio company of the Partnership (including, without limitation, information relating to the terms of this Agreement or the Partnership Agreement, the Partnership's investment performance, or the identity or value of any portfolio company of the Partnership). Without limitation on the preceding sentence, a FOIA Obligation shall be deemed to exist if such an obligation to make information available does not currently apply, but would be triggered by a request duly made pursuant to any "freedom of information," "sunshine," "public records" or similar law.

**Investment Advisers Act** shall mean the United States Investment Advisers Act of 1940, as amended, including the rules and regulations promulgated thereunder.

**Investment Company Act** shall mean the United States Investment Company Act of 1940, as amended, including the rules and regulations promulgated thereunder.

**Losses** shall mean losses, claims, debts, demands, liabilities, expenses or other adverse consequences of any kind.

**Plan Assets Regulation** shall mean 29 C.F.R. Section 2510.3-101, as modified by Section 3(42) of ERISA.

**Related Persons** shall mean, with respect to the Partnership or the General Partner, any members, constituent partners, equityholders, officers, directors, managers, employees or agents thereof.

**Securities Act** shall mean the United States Securities Act of 1933, as amended, including the rules and regulations promulgated thereunder.

**United States** shall mean the United States of America.

2. **Transfer**.

2.1 Effective as of the Effective Time, the Transferor hereby transfers to the Transferee the Transferred Interest for an aggregate purchase price of US $2,048,000.

2.2 Effective as of the Effective Time, the Transferee hereby accepts the Transferred Interest, undertakes all obligations of the Transferor under the Partnership Agreement to the extent attributable to or otherwise arising in connection with the Transferred Interest, makes all of the representations required of a Limited Partner under the Partnership Agreement, and otherwise agrees to comply with, and be bound under, all provisions of the Partnership Agreement (including, without limitation, the amendment, penalty and dispute resolution provisions thereof) in its capacity as a substitute Limited Partner in respect of the Transferred Interest.

3. **Approval of Transfer and Admission of the Transferee to the Partnership**.

3.1 Effective as of the Effective Time, and subject to the provisions of this Agreement, the General Partner hereby approves the transfer of the Transferred Interest to the Transferee and the Transferee is hereby admitted to the Partnership as a Limited Partner in respect of the Transferred Interest.

3.2 The General Partner hereby (i) waives in whole the requirement of an opinion of counsel set out in Section 11.2.7 of the Partnership Agreement and (ii) agrees that the representations set forth herein shall satisfy the requirements of Section 11.2.5.

4. **Covenants and Representations of the Transferor**. The Transferor hereby represents, acknowledges and agrees (for the benefit of the Transferee, the General Partner and the Partnership) as follows.

4.1     Upon the consummation of the transactions contemplated by this Agreement, the Transferee will receive good and valid title to the Transferred Interest, free and clear of any lien, liability or encumbrance (other than the obligations that the Transferee explicitly assumes hereunder, including without limitation obligations arising under the Partnership Agreement).

4.2     The Transferor has satisfied 100 percent of its Subscription as of the Effective Time.

4.3     The Transferor has disclosed to the General Partner in writing all defaults, if any, of the Transferor in respect of the Transferred Interest under the Partnership Agreement.

4.4     The Transferor shall, promptly upon request by either the Transferee or the General Partner, disclose to both the Transferee and the Partnership the amount of loss (if any) recognized by the Transferor in respect of its transfer of the Transferred Interest pursuant to this Agreement (as calculated for purposes of Section 743 of the Code).

4.5     The Transferor's obligations to the Partnership and the Partners (other than the Transferee) under this Agreement and the Partnership Agreement shall not be subject to any right of offset, condition or other diminution in favor of the Transferor by virtue of any action or omission of the Transferee.

5.     ***Covenants and Representations of the Transferee***.  The Transferee hereby represents, acknowledges and agrees (for the benefit of the Transferor, the General Partner and the Partnership) as follows:

5.1     The Transferee is familiar with the Partnership, its financial condition and business operations and has determined that the Transferred Interest is a suitable investment for the Transferee.  Without limitation on the preceding sentence: (i) the Transferee understands that an investment in the Transferred Interest involves substantial risk, including a possible loss of the entire amount invested, and the Transferee has the capacity to bear the financial and other risks of holding the Transferred Interest for an indefinite period of time; (ii) the Transferee has read, and understands, the Partnership Agreement; and (iii) the Transferee, alone or with the Transferee's legal counsel and other advisors, has such knowledge and experience in financial and business matters that the Transferee is capable of evaluating the merits and risks of acquiring the Transferred Interest and of making an informed investment decision with respect thereto.

5.2     The Transferee is aware that: (i) interests in the Partnership (including the Transferred Interest) have not been and will not be "registered" as that term is used in the Securities Act and that the Partnership is not and will not be registered as an investment company pursuant to the Investment Company Act; (ii) the Transferee's ability to transfer the Transferred Interest will be restricted by the Securities Act, applicable state securities laws, the laws of other jurisdictions, the Partnership Agreement, and the absence of a market for interests in the Partnership; and (iii) except as provided in the Partnership Agreement, the Transferee will have no right to withdraw from the Partnership or to receive distributions in liquidation of the Transferred Interest.  The Transferee is acquiring the Transferred Interest for investment for the Transferee's own account, with no intention of distributing or reselling any portion thereof within the meaning of the Securities Act.

5.3     The Transferee is an "accredited investor" within the meaning of Regulation D under the Securities Act.

5.4     The Transferee is not: (x) an employee benefit plan subject to regulation under ERISA; or (y) an entity deemed to hold assets of such a plan pursuant to the Plan Assets Regulation.  The Transferee is not a "benefit plan investor" within the meaning of the Plan Assets Regulation.

5.5     The Transferee is aware that the Partnership will seek to comply with all applicable laws concerning money laundering and similar activities.  In furtherance of such efforts, the Transferee hereby represents and agrees that, to the best of its knowledge based upon appropriate diligence and investigation, consistent with the law applicable to the Transferee: (i) none of the cash or property that is paid or contributed to

the Partnership by the Transferee shall be derived from, or related to, any activity that is criminal under United States law or would otherwise cause the Partnership, the General Partner, or any member or equityholder thereof to be in violation of United States law and (ii) no contribution or payment to the Partnership by the Transferee shall (to the extent that such matters are within the Transferee's control) cause the Partnership or the General Partner to be in violation of the United States Bank Secrecy Act, the United States Money Laundering Control Act of 1986, the United States International Money Laundering Abatement and Anti-Terrorist Financing Act of 2001, the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, or any other anti-money laundering, bank secrecy or other similar laws or regulations of the United States or of any other applicable jurisdiction, in each case as amended and nay successor statute thereto and including all regulations promulgated thereunder.

5.6     The following information relating to the Transferee is provided for purposes of Schedule A to the Partnership Agreement:

> Full legal name: EquipmentShare Growth Two, a series of Republic Master Fund, LP
> Address:  c/o Assure Fund Management II, LLC
>               P.O. Box 171305
>               Salt Lake City, UT 84117
> Telephone: (801) 419-0677
> Taxpayer ID:

5.7     The Transferee has reviewed a list of the Partnership's portfolio companies (which consists solely of the Target Company) and has no intention or expectation of using its status as a Limited Partner, or any information received in respect thereof, in a manner detrimental to any such portfolio company.

5.8     The Transferee's obligations to the Partnership and the Partners (other than the Transferor) under this Agreement and the Partnership Agreement shall not be subject to any right of offset, condition or other diminution in favor of the Transferee by virtue of any action or omission of the Transferor.

5.9     Upon its receipt of the Transferred Interest, the Transferee will not be subject to a FOIA Obligation.

5.10     The Transferee hereby represents that, with respect to each capital contribution (if any) made by the Transferee to the Partnership pursuant to the Partnership Agreement, the funds used to make such capital contribution shall not (at the time of such contribution) consist of actual proceeds from the issuance of securities by a State, a political subdivision of a State, a municipal corporate instrumentality of a State, or any agency, authority or instrumentality of any of the foregoing ("proceeds of municipal securities").  Without limitation, for purposes of the preceding sentence: (x) funds that were (at some time) proceeds of municipal securities shall be deemed no longer to be proceeds of municipal securities once such funds have been applied to carry out the authorized purposes of the associated municipal financing (e.g., such funds have been deposited into a public retirement fund or university endowment) and are no longer specifically segregated, tracked or otherwise accounted for by the Transferee as proceeds of municipal securities; and (y) funds that are not directly tracked and identifiable as proceeds of municipal securities shall not be deemed proceeds of municipal securities merely because the Transferee also is in possession of proceeds of municipal securities that are directly tracked and identified as proceeds of municipal securities (and are being held pending application to the authorized purposes of the associated municipal financing).

6.     ***Covenants and Representations of both Transferor and Transferee***.  Each of the Transferor and the Transferee hereby represents, acknowledges and agrees (for the benefit of the General Partner and the Partnership) as follows:

6.1     None of the Partnership, the General Partner, or their Related Persons has acted or is obligated to act, with respect to the transactions contemplated by this Agreement, as an advisor, finder, agent,

broker or dealer on behalf of such Party. None of the Partnership, the General Partner, or their Related Persons has received or will receive, from or on behalf of such Party, any fee or similar compensation for services provided with respect to such transactions. Without limitation on the foregoing, such Party hereby acknowledges and agrees that: (i) any activities undertaken by the General Partner in connection with the transactions contemplated by this Agreement have been and will be solely for the account of the General Partner or the Partnership; (ii) notwithstanding any activities undertaken by the General Partner in connection with the transactions contemplated by this Agreement, such Party was free to seek other counterparties for transactions relating to an interest in the Partnership and was not compelled in any manner to deal with a counterparty selected or identified by the Partnership, the General Partner or any Related Person thereof; and (iii) none of the Partnership, the General Partner, or their Related Persons has any obligation to provide such Party with any advice, analysis or guidance regarding the availability, appropriateness, attractiveness or value of the transactions contemplated by this Agreement, and each of the Partnership, the General Partner, and their Related Persons specifically disclaims any such advice, analysis or guidance that may appear, for whatever reason, to have been provided. Such Party further acknowledges and agrees that: (i) the Partnership, the General Partner and their Related Persons may undertake, or have undertaken, various activities in connection with other transfers of interests in the Partnership, which activities may provide, or have provided, assistance or value to the participants in such transactions; and (ii) such Party has and shall have no rights or claims, by virtue of this Agreement or the transactions contemplated hereby, to equivalent assistance or value.

6.2     Such Party has conducted its own independent review and analysis of the transactions contemplated by this Agreement without reliance upon any information provided by the Partnership, the General Partner or any Related Person thereof. To the extent that it has reviewed any statements, reports or other information provided by the Partnership, the General Partner or any Related Person thereof, such Party hereby acknowledges and agrees that the Partnership, the General Partner and such Related Persons have and shall have no obligation or liability with regard to the accuracy or completeness of such statements, reports or other information. Without limitation on the preceding sentence, such Party hereby acknowledges and agrees that: (i) the periodic reports provided by the Partnership to the Limited Partners (including quarterly and annual financial statements) are for general informational purposes only and are not intended to provide a basis for evaluating transactions of the type contemplated by this Agreement; (ii) it is inherently difficult to determine the value of investment securities held by the Partnership and neither the Partnership nor the General Partner or any Related Person thereof has made any representation that the value of investment securities set forth in the books and records of the Partnership reflects the true fair market value of such securities; (iii) any private placement memorandum or similar materials prepared or delivered by the General Partner in connection with the original issuance of the Partnership Interest may be materially inaccurate with respect to the Transferred Interest due to circumstances arising after the preparation of such materials (including, without limitation, negotiations or amendments relating to the Partnership Agreement, changes in market conditions, specific investments made by the Partnership, or changes in the plans, operations or staff of the General Partner); (iv) neither the General Partner nor the Partnership, nor any Related Person thereof, has approved or endorsed any information assembled, compiled, developed or otherwise provided by a third party; (v) the Partnership, the General Partner and their Related Persons are likely to be in possession of information that would be material to such Party's review and analysis of the transactions contemplated by this Agreement (including, without limitation, information relating to the value, status and prospects of the Partnership and its portfolio companies, to the existence of other potential transferors or transferees, or to the terms and conditions of other transfers of interests in the Partnership), which information has not been and will not be disclosed to such Party; (vi) none of the Partnership, the General Partner and their Related Persons has or shall have any obligation to ensure that the Transferor and the Transferee have received identical information for purposes of their respective review and analysis of the transactions contemplated by this Agreement; (vii) such Party has not relied upon any statement, belief or expectation that the General Partner or any Related Person thereof will, in connection with the transactions contemplated by this Agreement or otherwise, increase its ownership interest in the Partnership or refrain from disposing of any such ownership interest; (viii) none of the Partnership, the General Partner and their Related Persons has provided, or is obligated to provide, any assurances to the Transferor regarding the sophistication, creditworthiness, or other status or attributes of the Transferee or vice versa; and (ix) "capital account" and similar balances reported by the General Partner or the Partnership, due to a variety of technical

-5-

calculation, allocation and timing issues arising under the Partnership Agreement, as well as considerations of Limited Partner liquidity, control, and similar matters that are not taken into account in determining such balances, generally cannot be expected to serve as an accurate surrogate for, or approximation of, the true fair market value of the Transferred Interest.  Notwithstanding the foregoing, the Transferee acknowledges that it has been advised to carefully review the Partnership's private placement memorandum and, in particular, the "risk factors" and other disclosure materials contained therein.

6.3     This Agreement and the Partnership Agreement contain provisions that are complex and technical in nature.  Such Party has been advised to consult with legal and tax counsel before executing this Agreement and has consulted with such counsel to the extent determined by it to be appropriate.  Such Party is not relying in any respect on the Partnership, the General Partner, any Related Person thereof, or counsel to the Partnership to provide any advice with respect to the legal or tax consequences of the transactions contemplated by this Agreement.  Each of the Transferor and the Transferee will bear its own respective legal and tax consequences, if any, associated with such transactions and will not seek any reimbursement in connection therewith from the Partnership or the General Partner.

6.4     To the best of such Party's knowledge, the transactions contemplated by this Agreement will not: (i) give rise to a requirement that interests in the Partnership be registered under Section 5 of the Securities Act or under the securities laws of any state or foreign country; (ii) give rise to a requirement that the Partnership or any affiliate of the Partnership register as an investment company or elect to be a "business development company" under the Investment Company Act; (iii) give rise to a requirement that the General Partner or any equityholder, member, officer, or employee of the General Partner register as an investment adviser under the Investment Advisers Act; (iv) give rise to a requirement that the General Partner or any equityholder, member, officer, or employee of the General Partner register as a broker or dealer under the Exchange Act; or (v) cause the Partnership to be a "publicly traded partnership" within the meaning of Section 7704 of the Code.

6.5     Such Party has full power and authority or full capacity, as appropriate, to execute, deliver and satisfy its obligations under this Agreement and the Partnership Agreement, and such actions will not cause such Party to be in breach or violation of any legal or contractual duty or obligation.  To the best of such Party's knowledge, the transactions contemplated by this Agreement will be made in compliance with all applicable laws and will not subject the Partnership, the General Partner, or any Related Person thereof to additional legal requirements, compliance with which would subject the Partnership or such other Person to material expense or burden.

6.6     The transfer and substitution contemplated by this Agreement will not constitute a transaction effected through an "established securities market" within the meaning of United States Treasury Regulation Section 1.7704-1(b).  In connection with the transfer and substitution contemplated by this Agreement, such Party has not utilized the services, or participated in the operations, of any person that conducts market-making activities of the type described in United States Treasury Regulation Section 1.7704-1(c)(2).

6.7     Such Party shall promptly notify the General Partner in the event that any representation made by such Party pursuant to this Agreement ceases to be true.

6.8     All reasonable legal and other out-of-pocket expenses incurred by the Partnership or the General Partner in connection with the preparation of this Agreement or the transactions contemplated hereby shall be paid by the Partnership and deducted from the Capital Account balance of the Transferee; provided, however, that the General Partner may, at its option, require that the Transferee promptly reimburse the Partnership for such expenses, in which case there shall be no deduction from the Transferee's Capital Account balance.

6.9     Such Party is aware that the Partnership takes the position that the Partnership is an "electing investment partnership" within the meaning of Section 743 of the Code and agrees that (except as

otherwise approved by the General Partner) such Party shall not file any tax-related form or other document, or otherwise take any position for tax purposes, that is inconsistent with such position of the Partnership.

7. ***Exculpation and Indemnification***.

7.1 None of the Partnership, the General Partner or their Related Persons shall be liable to the Transferor or the Transferee for any Losses resulting from: (i) the transactions contemplated by this Agreement; or (ii) the Partnership, the General Partner or such other Persons relying upon, or otherwise acting in accordance with, the stated terms and conditions of this Agreement. Without limitation on the preceding sentence, the Partnership, the General Partner and their Related Persons shall have no liability in consequence of Partnership allocations or distributions made to the Transferee in reliance upon the effectiveness of the transfer and substitution contemplated by this Agreement.

7.2 The Transferor shall indemnify the Transferee, the Partnership, the General Partner and their Related Persons and hold each of them harmless from and against any and all Losses resulting from any inaccuracy in, or breach of, any representation, warranty or agreement of the Transferor set forth in this Agreement.

7.3 The Transferee shall indemnify the Transferor, the Partnership, the General Partner and their Related Persons and hold each of them harmless from and against any and all Losses resulting from any inaccuracy in, or breach of, any representation, warranty or agreement of the Transferee set forth in this Agreement.

8. ***Miscellaneous.***

8.1 This Agreement is in all respects subject to the terms and conditions of the Partnership Agreement and applicable law. In the event any provision of this Agreement is determined to constitute a violation of the terms or conditions of the Partnership Agreement or applicable law, such provision shall be deemed severed from the remainder of this Agreement and replaced with a valid provision as similar in intent as reasonably possible to the provision so severed, and shall not cause the invalidity or unenforceability of the remainder of this Agreement.

8.2 This Agreement contains the entire understanding among the Parties, and supersedes any prior written or oral agreement between them, respecting the subject matter hereof. Without limitation on the preceding sentence, there are no representations, agreements, arrangements, or understandings, oral or written, among the Parties relating to the transfer and substitution contemplated by this Agreement which are not fully expressed in this Agreement.

8.3 Notwithstanding any provision of this Agreement to the contrary, the Transferred Interest shall not include any rights or benefits of the Transferor arising other than under the Partnership Agreement. The rights and benefits of the Transferee in respect of the Partnership and the General Partner shall be determined exclusively by reference to the Partnership Agreement and this Agreement.

8.4 This Agreement may be executed in any number of counterparts and, when so executed, all of such counterparts shall constitute a single instrument binding upon all Parties notwithstanding that all Parties are not signatory to the original or to the same counterpart.

8.5 This Agreement shall be amended only through a written amendment executed by all Parties. No failure or delay by any party in exercising any right, power or privilege under this Agreement shall operate as a waiver thereof; any actual waiver shall be contained in a writing signed by the party against whom enforcement of such waiver is sought.

ACTIVE/94441877.2

8.6     The obligations of the Parties under this Agreement shall survive execution and delivery of this Agreement and the admission of the Transferee to the Partnership.

8.7     The law firm of Goodwin Procter LLP ("Goodwin"), has served as legal counsel solely to the Partnership in connection with the preparation of this Agreement.  The Parties acknowledge that Goodwin represents the Partnership, and may separately represent one or more of the Parties on other matters; that such separate representations may have provided Goodwin with confidential information of one or more Parties that could impact the course of Goodwin's activities and the exercise of its judgment in the preparation of this Agreement; that such separate representations could provide Goodwin with an incentive to place the interests of a Party ahead of the interests of the Partnership; and that the Partnership and the Parties have conflicting interests with respect to the preparation of this Agreement.  Each of the Parties acknowledges that it has had the opportunity to consult with its own separate counsel (other than Goodwin) to the extent that it has determined to be appropriate.  Each of the Parties hereby represents that it has the level of knowledge and sophistication (either alone or with the assistance of its own separate counsel) necessary to provide its informed consent to the provisions of this Section 8.7 without additional guidance from Goodwin.  The Parties (including the General Partner acting on behalf of the Partnership) hereby approve Goodwin's role in the preparation of this Agreement as described in this Section 8.7.

8.8     This Agreement and the transactions contemplated hereby shall be governed by the laws of the State of Delaware, without regard to conflicts of laws principles, and as such laws are applied in connection with agreements entered into and wholly performed upon in Delaware by residents of Delaware.  To the extent permitted by the Act and other applicable law, the provisions of this Agreement shall supersede any contrary provisions of the Act or other applicable law.

8.9     Except as otherwise required under the Partnership Agreement, the Partnership shall be under no obligation to close its books, make allocations, or engage in similar activities as of the Effective Time or otherwise in respect of the transfer of the Transferred Interest.  For the Partnership's United States Federal income tax reporting purposes, the General Partner shall pro rate items relating to the Transferred Interest between the Transferor and the Transferee in accordance with any method selected by the General Partner that is permitted under United States Treasury Regulation Section 1.706-1(c), including without limitation on the basis of the number of days during the Partnership's taxable year that the Transferred Interest was held by each of the Transferor and the Transferee.  For all other income tax reporting purposes, the General Partner shall apply a consistent reporting position unless contrary to applicable law, in which case the General Partner shall comply with such law in a manner reasonably determined by the General Partner.

8.10     Each of the Transferor and the Transferee hereby irrevocably appoints the General Partner as its attorney-in-fact, with power and authority to act in such Party's name and on its behalf to execute, acknowledge, file and swear to the execution, acknowledgment and filing of any documents, and to take such other actions, as may be necessary or convenient to effect the transfer and substitution contemplated by this Agreement.  Each power of attorney granted under this Section 8.10 is coupled with an interest and shall not be revoked by the bankruptcy, death, disability or other event of legal incapacity of the granting Party.

8.11     Except as specifically provided in this Agreement, any controversy or claim arising out of or relating to this Agreement shall be resolved, and any costs associated therewith shall be apportioned among the Parties, in the same manner as if such controversy or claim had arisen under the Partnership Agreement.

8.12     All notices, elections, approvals, and communications arising under this Agreement shall be made or provided in accordance with, and otherwise governed by, Section 14.6 of the Partnership Agreement.

8.13     This Agreement shall be treated as confidential in the same manner as the Partnership Agreement.

DocuSign Envelope ID: 84C5679D-9DF9-408A-A5E5-8E90299D1E95

[Remainder of this page intentionally left blank; signature page follows.]

ACTIVE/94441877.2

IN WITNESS WHEREOF, the Parties have executed this Limited Partner Transfer and Substitution Agreement as of the date first above written.

GENERAL PARTNER:

ROMULUS CAPITAL PARTNERS II, LLC
a Delaware limited liability company

By: _____
Neil Chheda
_____, Manager

TRANSFEROR:

Athena 2, Inc.

By: _____
Name:  Pushpa Shah
Title:  Member

TRANSFEREE:

EquipmentShare Growth Two, a series of Republic Master Fund, LP

By: _____
Boris Revsin
Name:
Title:  MD

-10-