Exhibit 1

*Proprietary and Confidential*

**LIMITED PARTNERSHIP AGREEMENT**
**OF**
***Romulus EquipmentShare Growth L.P.***
(A Delaware Limited Partnership)

Dated as of  October 18, 2016

*Proprietary and Confidential*

THE LIMITED PARTNER INTERESTS REPRESENTED BY THIS LIMITED PARTNERSHIP AGREEMENT ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.  INVESTORS SHOULD BE AWARE THAT THEY MAY BE REQUIRED TO BEAR THE RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

EXCEPT AS OTHERWISE PROVIDED IN THIS LIMITED PARTNERSHIP AGREEMENT, A LIMITED PARTNER MAY NOT SELL, ASSIGN, TRANSFER, PLEDGE OR OTHERWISE DISPOSE OF ALL OR ANY PART OF ITS INTEREST IN THE PARTNERSHIP.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE PERSON OR ENTITY CREATING THE SECURITIES AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED.  THE SECURITIES OFFERED HEREBY HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY.  FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT.  ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

FOR NON-U.S. RESIDENTS ONLY:

NO ACTION HAS BEEN OR WILL BE TAKEN TO COMPLY WITH THE SECURITIES LAWS IN ANY JURISDICTION OUTSIDE THE UNITED STATES OF AMERICA THAT WOULD PERMIT AN OFFERING OF THE INTERESTS, OR POSSESSION OR DISTRIBUTION OF OFFERING MATERIAL IN CONNECTION WITH THE ISSUE OF THE INTERESTS, IN ANY COUNTRY OR JURISDICTION WHERE ACTION FOR THAT PURPOSE IS REQUIRED.  IT IS THE RESPONSIBILITY OF ANY PERSON WISHING TO PURCHASE THE INTERESTS TO SATISFY HIMSELF AS TO FULL OBSERVANCE OF THE LAWS OF ANY RELEVANT TERRITORY OUTSIDE THE UNITED STATES OF AMERICA IN CONNECTION WITH ANY SUCH PURCHASE, INCLUDING OBTAINING ANY REQUIRED GOVERNMENTAL OR OTHER CONSENTS OR OBSERVING ANY OTHER APPLICABLE FORMALITIES.

*Proprietary and Confidential*

## TABLE OF CONTENTS

**Page**

**ARTICLE 1. — DEFINITIONS** ...................................................................................... 1

**ARTICLE 2. — ORGANIZATION; POWERS** ............................................................ 1

**2.1** **FORMATION OF LIMITED PARTNERSHIP; WITHDRAWAL; PARTNERSHIP AGREEMENT** ................................................................. 1

  *2.1.1* *Formation.* ........................................................................................ *1*
  *2.1.2* *Admission.* ....................................................................................... *1*
  *2.1.3* *Agreement* ........................................................................................ *1*

**2.2** **NAME; ADDRESS; REGISTERED AGENT.** ............................................ 2

**2.3** **PURPOSE; POWERS.** ................................................................................ 2

**ARTICLE 3. — PARTNERS** ......................................................................................... 2

**3.1** **NAMES, ADDRESSES AND SUBSCRIPTIONS.** .................................... 2

**3.2** **STATUS OF LIMITED PARTNERS.** ....................................................... 2

  *3.2.1* *Limited Liability.* ............................................................................ *2*
  *3.2.2* *Effect of Death, Dissolution or Bankruptcy.* .................................. *3*
  *3.2.3* *No Control of Partnership.* .............................................................. *3*

**3.3** **ADDITIONAL LIMITED PARTNERS.** .................................................... 3

  *3.3.1* *Additional Subscriptions.* ................................................................ *3*
  *3.3.2* *Accession to Agreement.* .................................................................. *4*
  *3.3.3* *Effectiveness of Admission of Additional Partner or Increase in Subscription.* ..................................................................................... *4*
  *3.3.4* *Expense Sharing.* ............................................................................. *4*

**3.4** **MANAGEMENT AND CONTROL OF PARTNERSHIP.** ....................... 4

  *3.4.1* *Management by General Partner.* .................................................... *4*
  *3.4.2* *Powers of General Partner.* ............................................................ *4*
  *3.4.3* *Transactions with Affiliates.* ........................................................... *5*

**3.5** **TIME COMMITMENTS OF PARTNERS; OTHER ACTIVITIES.** ........... 5

  *3.5.1* *Obligation to Devote Business Time to the Partnership.* ................. *5*
  *3.5.2* *Other Activities of Partners.* ........................................................... *5*

**ARTICLE 4. — INVESTMENTS AND ACTIVITIES** ................................................ 6

**4.1** **INVESTMENT IN TARGET COMPANY.** ............................................... 6

**4.2** **CONFLICTS OF INTEREST.** ................................................................... 6

  *4.2.1* *Conflicts of Interest.* ....................................................................... *6*
  *4.2.2* *Investment Opportunities.* ............................................................... *6*

**ARTICLE 5. —EXPENSES** ........................................................................................... 7

ACTIVE/88165299.2

*Proprietary and Confidential*

| | | |
|---|---|---|
| **5.1** | **PARTNERSHIP EXPENSES.** ................................................................ | **7** |
| | *5.1.1 Partnership Expenses.* ............................................................ | *7* |
| **ARTICLE 6. — CAPITAL OF THE PARTNERSHIP** ................................ | | **7** |
| **6.1** | **OBLIGATION TO CONTRIBUTE.** ......................................................... | **7** |
| | *6.1.1 Initial Capital Contribution.* ............................................... | *7* |
| | *6.1.2 Subsequent Capital Contributions.* ................................... | *8* |
| | *6.1.3 No Interest or Withdrawals.* .............................................. | *8* |
| | *6.1.4 General Partner's Authority to Reduce Subscriptions.* ...... | *8* |
| **6.2** | **FAILURE TO MAKE REQUIRED PAYMENT** ...................................... | **8** |
| | *6.2.1 Interest.* .............................................................................. | *8* |
| | *6.2.2 Default.* ............................................................................... | *8* |
| | *6.2.3 Default Charge.* .................................................................. | *10* |
| | *6.2.4 Distributions and Allocations.* .......................................... | *10* |
| | *6.2.5 Effect of Default on Remaining Interest in Partnership.* .... | *11* |
| **ARTICLE 7. — DISTRIBUTIONS.** ........................................................ | | **12** |
| **7.1** | **AMOUNT, TIMING AND FORM.** .......................................................... | **12** |
| | *7.1.1 General.* .............................................................................. | *12* |
| | *7.1.2 Apportionment of Distributions.* ...................................... | *12* |
| **7.2** | **DISCRETIONARY DISTRIBUTIONS.** ................................................. | **13** |
| | *7.2.1 General.* .............................................................................. | *13* |
| | *7.2.2 Temporary Investment Income.* ......................................... | *14* |
| | *7.2.3 Operational Rules.* .............................................................. | *14* |
| | *7.2.4 Treatment of the General Partner as Limited Partner.* ...... | *14* |
| **7.3** | **TAX DISTRIBUTIONS; OTHER SPECIAL DISTRIBUTIONS.** ............ | **15** |
| | *7.3.1 Tax Distributions — General.* ........................................... | *15* |
| | *7.3.2 Tax Distributions — Reduction.* ........................................ | *15* |
| | *7.3.3 Advances to Pay Estimated Taxes.* .................................... | *15* |
| | *7.3.4 Coordination of Tax Distributions and Other Distributions.* .......... | *16* |
| | *7.3.5 Other Special Distributions.* ............................................. | *16* |
| **7.4** | **PAYMENT OF TAXES.** ......................................................................... | **16** |
| | *7.4.1 General.* .............................................................................. | *16* |
| | *7.4.2 Tax Liability.* ...................................................................... | *17* |
| | *7.4.3 Repayment of Any Amounts Treated as Loans.* ................. | *17* |
| | *7.4.4 Partnership Obligation.* ..................................................... | *17* |
| **7.5** | **CERTAIN DISTRIBUTIONS PROHIBITED** ........................................ | **17** |
| **ARTICLE 8. — CAPITAL ACCOUNTS; ALLOCATIONS** ........................ | | **18** |
| **8.1** | **CAPITAL ACCOUNTS.** ........................................................................ | **18** |
| | *8.1.1 Creation and Maintenance.* ............................................... | *18* |

- ii -

*Proprietary and Confidential*

|        | 8.1.2  | *Accounting for Distributions in Kind.* | *18* |
|        | 8.1.3  | *Timing of Adjustments to Capital Accounts.* | *18* |
|        | 8.1.4  | *Compliance with Treasury Regulations; Cost.* | *19* |
| **8.2** | **ALLOCATIONS OF NET GAIN OR LOSS AND TEMPORARY INVESTMENT INCOME OR LOSS** | | **19** |
|        | 8.2.1  | *Net Gain.* | *19* |
|        | 8.2.2  | *Net Loss.* | *19* |
|        | 8.2.3  | *Temporary Investment Income or Loss.* | *19* |
|        | 8.2.4  | *Allocations Following a Default or Excuse.* | *20* |
|        | 8.2.5  | *Treatment of the General Partner's Interest as Limited Partner Interest.* | *20* |
| **8.3** | **OTHER SPECIALLY ALLOCATED ITEMS.** | | **20** |
| **8.4** | **ADMISSION OF ADDITIONAL PARTNERS.** | | **20** |
| **ARTICLE 9. — DURATION OF THE PARTNERSHIP** | | | **21** |
| **9.1** | **TERM OF PARTNERSHIP.** | | **21** |
| **9.2** | **DISSOLUTION UPON WITHDRAWAL OF GENERAL PARTNER.** | | **21** |
| **9.3** | **DISSOLUTION BY PARTNERS AND OTHERWISE.** | | **21** |
| **9.4** | **REMOVAL OF THE GENERAL PARTNER** | | **22** |
| **ARTICLE 10. — LIQUIDATION OF ASSETS ON DISSOLUTION** | | | **22** |
| **10.1** | **GENERAL.** | | **22** |
| **10.2** | **LIQUIDATING DISTRIBUTIONS.** | | **22** |
| **10.3** | **EXPENSES OF LIQUIDATOR.** | | **22** |
| **10.4** | **DURATION OF LIQUIDATION.** | | **22** |
| **10.5** | **LIABILITY FOR RETURNS.** | | **23** |
|        | 10.5.1 | *General.* | *23* |
|        | 10.5.2 | *Limited Partner Obligations.* | *23* |
|        | 10.5.3 | *General Partner Return Obligation.* | *23* |
|        | 10.5.4 | *Allocations to Support General Partner's Return Obligation.* | *23* |
|        | 10.5.5 | *Distribution of Returned Amounts.* | *24* |
|        | 10.5.6 | *Partners' Liability for Return.* | *24* |
| **ARTICLE 11. — LIMITATIONS ON TRANSFERS AND WITHDRAWALS OF PARTNERSHIP INTERESTS** | | | **24** |
| **11.1** | **TRANSFER OF GENERAL PARTNER'S INTEREST.** | | **24** |
| **11.2** | **TRANSFERS OF LIMITED PARTNER INTERESTS.** | | **25** |
|        | 11.2.1 | *General.* | *25* |
|        | 11.2.2 | *Consent of General Partner.* | *25* |
|        | 11.2.3 | *No Public Trading in Partnership Interests.* | *25* |
|        | 11.2.4 | *No Recognition of Certain Transfers.* | *25* |

ACTIVE/88165299.2

|  |  |  |  |
|---|---|---|---|
| | *11.2.5* | *Required Representations by Parties.* | 25 |
| | *11.2.6* | *Other Prohibited Legal Consequences.* | 26 |
| | *11.2.7* | *Opinion of Counsel.* | 26 |
| | *11.2.8* | *Reimbursement of Transfer Expenses.* | 27 |
| **11.3** | | **ADMISSION OF SUBSTITUTED LIMITED PARTNERS** | **27** |
| | *11.3.1* | *General.* | 27 |
| | *11.3.2* | *Effect of Admission.* | 27 |
| | *11.3.3* | *Accession to Agreement.* | 28 |
| | *11.3.4* | *Non-Compliant Transfer.* | 28 |
| **11.4** | | **MULTIPLE OWNERSHIP.** | **28** |
| **11.5** | | **WITHDRAWAL RIGHTS.** | **28** |
| | *11.5.1* | *General.* | 28 |
| **ARTICLE 12. — EXCULPATION AND INDEMNIFICATION** | | | **29** |
| **12.1** | | **EXCULPATION.** | **29** |
| | *12.1.1* | *General.* | 29 |
| | *12.1.2* | *Activities of Others.* | 29 |
| | *12.1.3* | *Liquidator.* | 29 |
| | *12.1.4* | *Advice of Experts.* | 29 |
| **12.2** | | **INDEMNIFICATION.** | **30** |
| | *12.2.1* | *General.* | 30 |
| | *12.2.2* | *Effect of Judgment.* | 30 |
| | *12.2.3* | *Effect of Settlement.* | 30 |
| | *12.2.4* | *Advance Payment of Expenses.* | 31 |
| | *12.2.5* | *Insurance.* | 31 |
| | *12.2.6* | *Successors and Survival.* | 31 |
| | *12.2.7* | *Rights to Indemnification from Other Sources.* | 31 |
| | *12.2.8* | *Sharing of Expenses with Related Funds.* | 32 |
| | *12.2.9* | *Discretionary Limitation by General Partner.* | 32 |
| | *12.2.10* | *Other Limitations.* | 33 |
| **12.3** | | **LIMITATION BY LAW.** | **33** |
| **12.4** | | **RETURN OF CERTAIN DISTRIBUTIONS.** | **33** |
| **ARTICLE 13. — AMENDMENTS, VOTING AND CONSENTS** | | | **34** |
| **13.1** | | **AMENDMENTS.** | **34** |
| | *13.1.1* | *Consent of Partners.* | 34 |
| | *13.1.2* | *Amendments Affecting Partners' Economic Rights.* | 35 |
| | *13.1.3* | *Notice of Amendments.* | 35 |
| | *13.1.4* | *Certain Amendments.* | 35 |
| | *13.1.5* | *Execution of Amendments.* | 35 |
| **13.2** | | **VOTING AND CONSENTS.** | **35** |

ACTIVE/88165299.2

*Proprietary and Confidential*

| | | |
|---|---|---|
| **13.3** | **SAVINGS CLAUSE** | **36** |
| **ARTICLE 14. — ADMINISTRATIVE PROVISIONS** | | **36** |
| **14.1** | **KEEPING OF ACCOUNTS AND RECORDS; CERTIFICATE OF LIMITED PARTNERSHIP.** | **36** |
| | *14.1.1   Accounts and Records.* | *36* |
| | *14.1.2   Certificate of Limited Partnership.* | *36* |
| **14.2** | **INSPECTION RIGHTS.** | **37** |
| **14.3** | **FINANCIAL REPORTS.** | **37** |
| | *14.3.1   No Financial Statements.* | *37* |
| | *14.3.2   Annual Tax Information.* | *37* |
| | *14.3.3   Web Site.* | *37* |
| **14.4** | **VALUATION.** | **37** |
| **14.5** | **MEETINGS.** | **38** |
| **14.6** | **NOTICES.** | **38** |
| **14.7** | **ACCOUNTING PROVISIONS.** | **38** |
| | *14.7.1   Fiscal Year.* | *38* |
| **14.8** | **TAX PROVISIONS.** | **38** |
| | *14.8.1   Classification as Partnership.* | *38* |
| | *14.8.2   Tax Matters Partner; Partner Tax Information.* | *39* |
| | *14.8.3   Section 1045 Rollovers.* | *39* |
| | *14.8.4   Electing Investment Partnership.* | *39* |
| | *14.8.5   Tax Reporting Consistency.* | *39* |
| **14.9** | **GENERAL PROVISIONS.** | **40** |
| | *14.9.1   Power of Attorney.* | *40* |
| | *14.9.2   Execution of Additional Documents.* | *40* |
| | *14.9.3   Binding on Successors.* | *40* |
| | *14.9.4   Governing Law.* | *41* |
| | *14.9.5   Waiver of Partition.* | *41* |
| | *14.9.6   Securities Law Matters.* | *41* |
| | *14.9.7   Confidentiality.* | *41* |
| | *14.9.8   Contract Construction; Headings; Counterparts.* | *44* |
| **ARTICLE 15. — SPECIAL REGULATORY MATTERS** | | **45** |
| **15.1** | **ERISA COMPLIANCE** | **45** |
| | *15.1.1   ERISA Plan Assets.* | *45* |
| | *15.1.2   Distributions in Kind to ERISA Partners* | *45* |
| **15.2** | **ERISA WITHDRAWAL.** | **46** |
| | *15.2.1   General.* | *46* |
| | *15.2.2   Cure Period.* | *46* |

- v -

*Proprietary and Confidential*

*15.2.3   Withdrawal.* ............................................................................ *46*

*15.2.4   Distributions to Withdrawing ERISA Partner.* ............................ *47*

**15.3   CONFORMING AMENDMENT.** .................................................. **47**

**15.4   ANTI-MONEY LAUNDERING PROVISIONS.** ............................ **48**

**15.5   FEEDER ENTITY PROVISIONS.** ................................................ **51**

*15.5.1   General.* ...................................................................................... *51*

*15.5.2   Effect on Equity Holder's Default.* ............................................ *51*

*15.5.3   Expenses; Subsequent Closings* .................................................. *52*

*15.5.4   Voting and Consents* .................................................................... *52*

*15.5.5   Notice and Other Rights* .............................................................. *52*

**Appendix I**   **Definitions**

**Appendix II**  **Regulatory and Tax Allocations**

ACTIVE/88165299.2

*Proprietary and Confidential*

# ROMULUS EQUIPMENTSHARE GROWTH L.P.
# LIMITED PARTNERSHIP AGREEMENT

LIMITED PARTNERSHIP AGREEMENT of Romulus EquipmentShare Growth L.P. (the "**Partnership**"), dated as of this 26th day of September, 2016, by and among Romulus Capital Partners II, LLC, a limited liability company formed under the laws of the State of Delaware, as the General Partner and those Persons who have entered into Subscription Agreements with the General Partner, dated the date hereof, for the purchase of an interest in the Partnership as a limited partner and such other Persons that may hereafter be admitted to the Partnership as additional or substitute limited partners (each in its capacity as a limited partner of the Partnership, collectively, the "**Limited Partners**").  The General Partner and the Limited Partners are sometimes referred to herein collectively as the "**Partners**."

## ARTICLE 1. — DEFINITIONS

Certain capitalized terms used herein and not otherwise defined have the meanings assigned to them in Appendix I hereto.  Appendix I indicates where in this Agreement certain other capitalized terms used in this Agreement are defined.

## ARTICLE 2. — ORGANIZATION; POWERS

**2.1    FORMATION OF LIMITED PARTNERSHIP; WITHDRAWAL; PARTNERSHIP AGREEMENT.**

**2.1.1    Formation.**

The General Partner and the Limited Partners hereby enter into and form the Partnership as a limited partnership in accordance with the Delaware Revised Limited Partnership Act, as amended from time to time (the "**Delaware Act**").  The Partners acknowledge that the General Partner shall file, no later than the date hereof, a Certificate of Limited Partnership with the Secretary of State of the State of Delaware (as amended from time to time hereafter, the "**Certificate**").

**2.1.2    Admission.**

The Persons who have entered into Subscription Agreements with the General Partner, dated the date hereof, for the purchase of an interest in the Partnership as a limited partner are hereby admitted to the Partnership as Limited Partners upon the execution and delivery, together with the General Partner, of a counterpart signature page to this Agreement as attached to such Person's Subscription Agreement.

**2.1.3    Agreement.**

The Partners enter into this Agreement (as amended from time to time hereafter and, including Appendix I and Appendix II hereto, but excluding Exhibit I hereto, the "**Partnership Agreement**" or this "**Agreement**") and hereby agree to carry on a limited partnership subject to the terms of this Agreement in accordance with the Delaware Act.

*Proprietary and Confidential*

**2.2     NAME; ADDRESS; REGISTERED AGENT.**

The name of the Partnership is "Romulus EquipmentShare Growth L.P."  The Limited Partners acknowledge that the name of the Partnership may be changed by the General Partner by amending the Certificate in accordance with the Delaware Act without the consent of the Limited Partners and that the Limited Partners have no rights to, or interest in, the name of the Partnership, any intellectual property associated therewith or any goodwill derived therefrom.  The principal address of the Partnership shall be c/o Romulus Capital Partners II, LLC, 90 Broadway, Cambridge, MA 02142.  The General Partner may change the principal address of the Partnership at any time and shall notify the Limited Partners of any such change.  The initial address of the Partnership's registered office in Delaware is 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808, and its initial registered agent at such address for service of process is Corporation Service Company.  The General Partner may change the registered agent of the Partnership in the State of Delaware to such other Person as the General Partner may determine in its discretion and as shall be reflected in an amendment to the Certificate filed by the General Partner.

**2.3     PURPOSE; POWERS.**

The primary purpose of the Partnership is to seek to generate significant returns for its Partners, primarily by making an investment in preferred stock of EquipmentShare.com Inc., a Delaware corporation (the "**Target Company**").  Subject to the provisions of this Agreement, the Partnership may engage in any activity that is lawful for, and shall have all of the powers available to, a limited partnership formed under the Delaware Act.

<div align="center">

**ARTICLE 3. — PARTNERS**

</div>

**3.1     NAMES, ADDRESSES AND SUBSCRIPTIONS.**

The name, address, e-mail address, facsimile number, and Subscription of each Partner are set forth in the books and records of the Partnership.  The General Partner shall maintain such books and records in a manner consistent with this Agreement and the Subscription Agreements of the Partners and shall cause such books and records to be revised, without the necessity of obtaining the consent of any other Partner, to reflect (a) the admission of any additional or substituted Partner occurring pursuant to the terms of this Agreement, (b) the withdrawal, or partial withdrawal, of any Partner pursuant to the terms of this Agreement, (c) any change in the identity, address, e-mail address or facsimile number of a Partner, (d) any changes in the Subscriptions of the Partners occurring pursuant to the terms of this Agreement or (e) to reflect the identity, e-mail address, address and facsimile number of any trustee or nominee named pursuant to 11.4.

**3.2     STATUS OF LIMITED PARTNERS.**

**3.2.1     Limited Liability.**

No Limited Partner, in its capacity as such, shall be liable for the debts and obligations of the Partnership; *provided*, *however*, that each Limited Partner shall be required to pay to the Partnership (a) any unpaid capital contributions that such Limited Partner has agreed to make to

<div align="center">- 2 -</div>

the Partnership pursuant to 3.3.1 and Article 6, to the extent provided in Section 17-502(a) and (b) of the Delaware Act; (b) the amount of any distribution that such Limited Partner is required to return to the Partnership pursuant to this Agreement or the Delaware Act; and (c) the unpaid balance of any other payments that such Limited Partner expressly is required to make to the Partnership pursuant to this Agreement or pursuant to such Limited Partner's Subscription Agreement or Assignment Agreement.

### 3.2.2    Effect of Death, Dissolution or Bankruptcy.

The Partnership shall not dissolve solely by virtue of the death, incompetence, bankruptcy, insolvency, liquidation, dissolution or termination of the existence of a Limited Partner, including by virtue of a merger of such Limited Partner into another Person, and, in any such event, the obligations of such Limited Partner under this Agreement, to the maximum extent permitted by law, shall inure to the benefit of, and shall be binding upon, such Limited Partner's successor(s), estate or legal representative.  Each such Person shall be treated as provided in the second sentence of 11.3.2 unless and until such Person is admitted as a substituted Limited Partner pursuant to 11.3.  Any Transfer of the interest so acquired by such successor, estate or legal representative shall be subject to the requirements of Article 11.

### 3.2.3    No Control of Partnership.

Except as otherwise provided herein, no Limited Partner shall have the right or power to: (a) withdraw its contribution to the capital of the Partnership or reduce its commitment to contribute to the capital of the Partnership; (b) to the maximum extent permitted by law cause the dissolution and winding up of the Partnership; or (c) demand or receive property in return for its capital contributions.  No Limited Partner, in its capacity as such, shall take any part in the control of the affairs of the Partnership, undertake any transactions on behalf of the Partnership, or have any power to sign for or otherwise to bind the Partnership.

## 3.3    ADDITIONAL LIMITED PARTNERS.

### 3.3.1    Additional Subscriptions.

Subject to the provisions of this Agreement, through December 30, 2016, the General Partner is authorized, but not obligated, to admit to the Partnership one or more additional Limited Partners (each, an "**Additional Partner**") and to accept additional Subscriptions from existing Partners, who shall be deemed to be Additional Partners for the purposes of this 3.3 to the extent of such additional Subscriptions.  Additional Subscriptions may be accepted and Additional Partners may be admitted to the Partnership pursuant to this 3.3 only if:

> (a)    Each such Additional Partner agrees to contribute, on or after the date of its admission or the acceptance of its additional Subscription, the same percentage of its Subscription or its additional Subscription, as the case may be, as has been contributed by the non-defaulting and non-excused Limited Partners prior to such date ; and

(b)      No distribution has been made by the Partnership to the Partners pursuant to Article 7 (other than pursuant to 7.3.5) prior to the date of such Additional Partner's admission or the acceptance of its additional Subscription.

### 3.3.2    Accession to Agreement.

Each Person who is to be admitted as an Additional Partner pursuant to this Agreement shall accede to this Agreement by executing, together with the General Partner, (i) a Subscription Agreement or other written document pursuant to which such Person agrees to become a Limited Partner and be bound by this Agreement and (ii) a counterpart signature page to this Agreement as attached to such Person's Subscription Agreement, but such admission shall not require the consent or approval of any other Partner.  The General Partner shall make any necessary filings with the appropriate governmental authorities and take such actions as are necessary under applicable law to effectuate such admission.

### 3.3.3    Effectiveness of Admission of Additional Partner or Increase in Subscription.

The admission of an Additional Partner to the Partnership shall be effective upon the date set forth in the counterpart signature page to this Agreement executed by the General Partner and such Additional Partner.  The increase in the Subscription of a Partner shall be effective upon the acceptance, in writing, by the General Partner of the additional Subscription of such Partner.

### 3.3.4    Expense Sharing.

The General Partner shall adjust allocations and distributions under this Agreement to cause, as promptly as is reasonably practicable (as determined by the General Partner in its reasonable discretion), the ratio of each Additional Partner's Subscription to the aggregate Partnership Expenses borne by such Additional Partner to be equal to the ratio of each previously admitted Partner's Subscription to the aggregate Partnership Expenses borne by such previously admitted Partners.

## 3.4    MANAGEMENT AND CONTROL OF PARTNERSHIP.

### 3.4.1    Management by General Partner.

The management, policies and control of the Partnership shall be vested exclusively in the General Partner; provided however that the General Partner may delegate its rights and powers to the Management Company as it may determine.

### 3.4.2    Powers of General Partner.

Except as otherwise explicitly provided herein, the General Partner shall have the power on behalf and in the name of the Partnership to implement the objectives of the Partnership and to exercise any rights and powers the Partnership may possess, including, without limitation, the power to cause the Partnership to make any elections available to the Partnership under applicable tax or other laws, subject to 14.8.1.  No Person, in dealing with the General Partner, shall be required to determine the General Partner's authority to make any commitment or engage in any undertaking on behalf of the Partnership, or to determine any fact or circumstance

- 4 -

*Proprietary and Confidential*

bearing upon the existence of the authority of the General Partner.  Notwithstanding any other provision of this Agreement, without the consent of any Limited Partner or other Person being required, the Partnership is hereby authorized to execute, deliver and perform, and the General Partner on behalf of the Partnership and itself, as applicable, is hereby authorized to execute and deliver, (a) a Subscription Agreement with each Limited Partner, and (b) any amendment and any agreement, document or other instrument contemplated thereby or related thereto.  The General Partner is hereby authorized to enter into the documents described in the preceding sentence on behalf of the Partnership, but such authorization shall not be deemed a restriction on the power of the General Partner to enter into other documents on behalf of the Partnership.

### 3.4.3      Transactions with Affiliates.

Except to the extent specifically prohibited by this Agreement, the General Partner shall be permitted, without any liability to the Partnership or any Partners, to cause the Partnership to enter into any transaction with the General Partner, the Principals or any Affiliates.

### 3.5      TIME COMMITMENTS OF PARTNERS; OTHER ACTIVITIES.

### 3.5.1      Obligation to Devote Business Time to the Partnership.

At all times during the term of the Partnership, the General Partner shall, and shall cause each of the Principals to, devote such business time to the Partnership as may be reasonably necessary to manage its affairs and activities.

### 3.5.2      Other Activities of Partners.

Notwithstanding any duty otherwise existing at law or in equity, and subject to 3.5.1 and the other provisions of this Agreement, any Partner and its respective partners, members, stockholders, officers, directors, managers, trustees, employees, agents and Affiliates may invest, participate, or engage in (for their own accounts or for the accounts of others), or may possess an interest in, other financial ventures and investment and professional activities of every kind, nature and description, independently or with others, whether now existing or hereafter acquired or initiated, including but not limited to:  management of other investment partnerships; investment in, financing, acquisition or disposition of securities; investment and management counseling; providing brokerage and investment banking services; or serving as officers, directors, managers, consultants, advisers or agents of other companies, partners of any partnership, members of any limited liability company or trustees of any trust (and may receive fees, commissions, remuneration or reimbursement of expenses in connection with these activities), whether or not such activities may conflict with any interest of the Partnership or any of the Partners.  Neither the Partnership nor any Partner shall have any rights, solely by virtue of this Agreement, in or to any activities permitted by this 3.5.2 or to any fees, income, profits or goodwill derived from such activities and the doctrine of corporate opportunity, or any analogous doctrine, shall not apply to any such Person.

ACTIVE/88165299.2

*Proprietary and Confidential*

## ARTICLE 4.— INVESTMENTS AND ACTIVITIES

**4.1     INVESTMENT IN TARGET COMPANY.**

Without the approval of a majority in interest of the Limited Partners, the Partnership shall not invest directly or indirectly in the securities of any entity other than the Target Company or any successor entity thereto.

**4.2     CONFLICTS OF INTEREST.**

**4.2.1     Conflicts of Interest.**

(a)     Notwithstanding any provision of this Agreement to the contrary, the General Partner shall be permitted, without any liability to the Partnership or the Partners, to cause the Partnership to invest in the Target Company without regard to whether the General Partner, any Principal, the Management Company, any Other Fund, any Affiliate of the foregoing or any other Related Entity has a prior financial interest, or concurrently obtains a financial interest, in the Target Company.

(b)     Without limitation upon the foregoing clause (a), the Partners expressly acknowledge and agree that (i) one or more Other Funds managed by the General Partner have invested, or are expected to invest, in securities of the Target Company; (ii) such investment practices involve an inherent conflict of interest and agree that the General Partner shall have no liability attributable to or based upon such conflict of interest in the absence of intentional harm to the Partnership by the General Partner or a member thereof (it being understood that causing an Other Fund to take advantage of an investment opportunity or to exercise any legal or contractual rights available to it shall not be deemed intentional harm to the Partnership); and (iii) without limitation on the foregoing, the General Partner shall have the authority to cause the Partnership to transfer to an Other Fund (without receiving any consideration therefor) the opportunity to take advantage of pre-emptive and similar investment rights held by the Partnership.

**4.2.2     Investment Opportunities.**

Notwithstanding any provision of this Agreement to the contrary: (i) the General Partner shall have no obligation to offer any investment opportunity to the Partnership; (ii) the General Partner, in its sole and absolute discretion, may elect to make available investment opportunities which come to its attention, in whole or in part, to one or more of the Partnership, the Partners, any Partner, the Other Funds, or any other Person or Persons; and (iii) under no circumstances shall the General Partner be deemed to have breached any duty to the Partnership or the Limited Partners solely by virtue of: (x) offering investment opportunities in accordance with the immediately preceding clause (ii) (e.g., to the exclusion of the Partnership); or (y) causing the Partnership to make investments that one or more Other Funds have determined not to make.  In particular, the General Partner is expected to cause the Partnership to invest in the Target Company only to the extent that Other Funds have satisfied (or will simultaneously satisfy) their

ACTIVE/88165299.2

*Proprietary and Confidential*

investment "appetite" and no Person shall be liable to the Partnership or any Partner for permitting such preferential investment by such Other Funds.

## ARTICLE 5.—EXPENSES

### 5.1    PARTNERSHIP EXPENSES.

#### 5.1.1    Partnership Expenses.

The Partnership shall bear and be responsible for all expenses of the Partnership ("**Partnership Expenses**").  Partnership Expenses shall include, without limitation: (a) Organizational Expenses and Monitoring Expenses of the Partnership; (b) any sales or other taxes, fees or government charges which may be assessed against the Partnership; (c) commissions or brokerage fees or similar charges incurred in connection with the purchase or sale of securities (including any merger fees payable to third parties and whether or not any such purchase or sale is consummated); (d) the costs and expenses (including travel-related expenses) of annual or special meetings of the Partnership or otherwise holding meetings or conferences with Limited Partners, whether individually or in a group; (e) interest expense for borrowed money; (f) expenses attributable to normal and extraordinary investment banking, commercial banking, accounting, auditing, appraisal, tax advisory, legal, external consulting, custodial and registration services provided to the Partnership, including in each case services with respect to the proposed purchase or sale of securities by the Partnership that are not reimbursed by the issuer of such securities or others (whether or not any such purchase or sale is consummated); (g) travel and other expenses related to the investment activities of the Partnership; (h) reasonable premiums for liability insurance to protect the Partnership, the General Partner, the Management Company, and any of their respective partners, members, stockholders, officers, directors, employees, agents or Affiliates in connection with the activities of the Partnership; (i) the costs of dissolving the Partnership and liquidating its assets; (j) all expenses relating to litigation and threatened litigation involving the Partnership, (k) indemnification expenses and (l) all other expenses properly chargeable to the activities of the Partnership. The Partnership Expenses set forth in clauses (a)-(i), and (l) shall not exceed $500,000.  The General Partner shall bear and be responsible for any such excess amount.

## ARTICLE 6. — CAPITAL OF THE PARTNERSHIP

### 6.1    OBLIGATION TO CONTRIBUTE.

#### 6.1.1    Initial Capital Contribution.

100 percent of each Partner's Subscription shall be due on the date of such Partner's admission to the Partnership.

ACTIVE/88165299.2

*Proprietary and Confidential*

**6.1.2      Subsequent Capital Contributions.**

If a Limited Partner is required to contribute capital to the Partnership pursuant to a provision of this Agreement other than Section 6.1.1 (e.g., in connection with a default, an advance treated as a loan under Section 7.4.3, transfer expenses under Section 11.2.8, or provisions such as Section 12.4  requiring the return of certain distributions), the amount of capital required to be contributed by each Partner shall be determined by the General Partner and set forth in a capital call issued to the Limited Partners, which  shall indicate the amount due, the due date and the account to which the capital contribution should be wired..  All capital contributions from the Limited Partners shall be made to the Partnership by wire transfer or other transfer of federal or other immediately available U.S. funds on or before the relevant due date to the account designated for such purpose.  Each Partner shall be obligated to make payment in full of each required capital contribution on or before the date due, and no Partner shall make (nor shall the General Partner or the Partnership be obligated to accept) less than the full amount of any such required capital contribution.

**6.1.3      No Interest or Withdrawals.**

No interest shall accrue on any Partner's capital contribution.  No Partner shall have the right to withdraw its capital contributions or to be repaid its capital contributions except as specifically provided in this Agreement or as consented to by the General Partner.

**6.1.4      General Partner's Authority to Reduce Subscriptions.**

The General Partner may reduce the Subscriptions of all Partners on a pro rata basis.  The General Partner shall give each Partner written notice of the reduction, which notice shall include the amount by which such Partner's Subscription was reduced.

**6.2      FAILURE TO MAKE REQUIRED PAYMENT.**

**6.2.1      Interest.**

Except as otherwise provided in this Agreement, upon any failure by a Limited Partner to pay a capital contribution in full when due, interest will accrue at the Default Rate on the outstanding unpaid balance of such capital contribution, from and including the date such capital contribution was due until the earlier of the date of payment of such capital contribution by such Partner (or a transferee) or the date on which the General Partner imposes a default charge pursuant to 6.2.2(a).  The "**Default Rate**" with respect to any period shall be the lesser of (a) a variable rate equal to the Prime Rate in effect, from time to time, during such period plus 8% or (b) the highest interest rate for such period permitted by applicable law.  The General Partner may waive the requirement to pay interest, in whole or in part.

**6.2.2      Default.**

Except as otherwise provided in this Agreement, if any Limited Partner fails to make a capital contribution when due, and has also failed to make such payment on or before the date that is five (5) Business Days after the General Partner has given written notice to such Limited Partner of such Limited Partner's failure to make such payment, then such Limited Partner (a

*Proprietary and Confidential*

"**Defaulting Partner**") shall be in default.  If a Limited Partner becomes a Defaulting Partner, the General Partner may, in its discretion, and subject to applicable law, pursue one or more of the following alternatives:

    (a)      Impose a Default Charge upon the Defaulting Partner pursuant to 6.2.3;

    (b)      Offer the Defaulting Partner's entire interest in the Partnership to the other Partners for purchase, in proportion to the other Partners' Subscriptions (with Partners accepting offers being permitted to take up offers declined by other Partners in proportion to their Subscriptions), at a price for that interest equal to the lesser of the then fair market value of the interest or the pre-default balance in the Defaulting Partner's Capital Account, subject to such other terms as the General Partner in its discretion shall determine, which offer shall be binding upon the Defaulting Partner if the purchasing Partners agree to assume the Subscription of the Defaulting Partner, including any portion then due and unpaid, and the General Partner may implement and reflect such Transfer of the Defaulting Partner's interest pursuant to this 6.2.2(b) in any writing that the General Partner deems necessary or advisable and such writing may be executed (i) on behalf of the Defaulting Partner by the General Partner without any further action or execution by any other Person (including, without limitation, the Defaulting Partner or Partner(s) purchasing such interest), or (ii) by the General Partner on behalf of itself and on behalf of the applicable Defaulting Partner and Partner(s) pursuant to the power of attorney granted to the General Partner under 14.9.1, and each Partner by its execution hereof hereby confirms its agreement to the foregoing, and agrees to be bound by any such writing and further, if requested by the General Partner, such applicable Defaulting Partner and/or Partner(s) purchasing the applicable Defaulting Partner's interest shall execute any and all documents as the General Partner shall have reasonably requested or that are otherwise required to effectuate the Transfer as contemplated above;

    (c)      Assist the Defaulting Partner in selling its interest in the Partnership, with the full assumption by the buyer of the Defaulting Partner's Subscription, including any portion then due and unpaid;

    (d)      Accept a late contribution from the Defaulting Partner, with interest (if any), in satisfaction of its then-outstanding obligation to contribute hereunder, if the General Partner determines in its sole discretion that such a late contribution will not jeopardize the activities and operations of the Partnership;

    (e)      Pursue and enforce all of the Partnership's other rights and remedies against the Defaulting Partner under this Agreement, the relevant Subscription Agreement or Assignment Agreement and applicable law, including but not limited to the commencement of a lawsuit to collect the unpaid capital contribution, interest and costs, and reimbursement (with interest at the Default Rate) of any other damages suffered by the Partnership; or

ACTIVE/88165299.2

(f)     With respect to any Defaulting Partner whose Subscription is less than 1% of the aggregate Limited Partner Subscriptions, the General Partner may purchase such Defaulting Partner's interest in the Partnership either on the terms set forth in 6.2.2(b) or on such other terms agreed to by the General Partner and the Defaulting Partner.

If a Defaulting Partner's interest in the Partnership is sold pursuant to (b), (c) or (f) above, or if the General Partner exercises its discretion to accept a late contribution pursuant to (d) above, the General Partner shall not impose a Default Charge pursuant to (a) above. Otherwise, to the maximum extent permitted by law, the remedies set forth above shall be cumulative, and the use by the General Partner of one or more of them against a Defaulting Partner shall not preclude the use of any other such remedy.

### 6.2.3     Default Charge.

The Partners agree that the damages suffered by the Partnership as the result of a default by a Defaulting Partner will be substantial and that such damages cannot be estimated with reasonable accuracy. To the maximum extent permitted by law, as a penalty for such default (which each Partner hereby agrees are reasonable), and subject to 6.2.2, the General Partner may cause both the Contribution and Capital Account of a Defaulting Partner to be reduced (but not below zero) by an amount equal to 100% of such Defaulting Partner's Subscription (the "**Default Charge**"). If (except for the limitation set forth in the preceding sentence) the Default Charge would exceed either the Contribution of or the existing balance in the Capital Account of the Defaulting Partner at the time of default, then such excess shall carry over and be applied as a reduction at a subsequent time. The amount of any Default Charge levied upon a Defaulting Partner at any time shall immediately become unrestricted funds of the Partnership and shall be allocated:

(a)     As to the Contribution amount, to and among the respective Contributions of the non-defaulting Partners in proportion to their respective Contributions; and

(b)     As to the Capital Account amount, to and among the respective Capital Accounts of the non-defaulting Partners in proportion to the positive balances in their respective Capital Accounts.

Except as provided in 6.2.5, the application of the aforesaid penalty provisions shall not relieve any Defaulting Partner of its obligations to make all payments of its capital contributions when due.

### 6.2.4     Distributions and Allocations.

(a)     The General Partner, in its sole discretion, and subject to any Default Charge imposed pursuant to 6.2.3, may cause the Partnership to withhold any distributions that otherwise would be made to a Defaulting Partner until such time as the Partnership makes its final liquidating distribution, or until such earlier time as the General Partner may determine. Any distributions so withheld, or the proceeds thereof, may be used by the Partnership for any purpose. If the General Partner has withheld distributions from a Partner pursuant to this 6.2.4 and subsequently determines to pay the withheld distributions to such Partner, it may

- 10 -

elect to (1) pay cash to such Partner in lieu of any distributions which were made to non-defaulting Partners in kind and withheld from such Partner, but the Partnership shall not, in such event, be liable to such Partner for any subsequent increase in the value of any securities which would have been distributed to such Partner had such Partner not defaulted or (2) deliver to such Partner the securities or other assets (or substantially identical securities or assets) such Partner would have received had the distribution to such Partner not been withheld, but the Partnership shall not, in such event, be liable for any diminution in the value of such securities or other assets subsequent to the date such securities would have been distributed.  Any losses incurred by the Partnership upon the disposition of the securities or other assets that would otherwise have been distributed to the Defaulting Partner in kind shall be for the account of the Defaulting Partner.

(b)   Allocations shall continue to be made to a Defaulting Partner pursuant to the other provisions of this Agreement as if such Partner had made a timely contribution over the period from the date of default until such time, if any, as the General Partner imposes a Default Charge; *provided*, *however*, that (1) in the discretion of the General Partner, no allocations of Net Gain or items in the nature of gross income or gain shall be made to the Defaulting Partner during such period, and (2) if the Defaulting Partner (or any transferee(s) then holding the Defaulting Partner's interest) subsequently contributes the amount in arrears during such period, together with any accrued interest, then in the discretion of the General Partner subsequent allocations may be made in such a manner that the net result of such subsequent allocations and the allocations made pursuant to this 6.2.4(b) is the same as if the Defaulting Partner (together with such transferee(s), if any) had made all contributions with respect to the Defaulting Partner's interest on a timely basis.

**6.2.5    Effect of Default on Remaining Interest in Partnership.**

(a)   The General Partner, in its sole discretion, may determine that no additional capital contribution shall be accepted from a Defaulting Partner, in which case the General Partner shall so notify the Defaulting Partner and, following the date that such notice is given to the Defaulting Partner, the General Partner shall not call for additional capital contributions from such Defaulting Partner.

(b)   If the General Partner has given the notice described in the preceding clause (a) (or if the Defaulting Partner's Subscription has been satisfied in full or otherwise excused), and both its Contribution and its Capital Account balance have been reduced to zero (by application of the Default Charge or otherwise), then the Defaulting Partner's interest in the Partnership shall be extinguished without compensation and the Defaulting Partner shall no longer be a Limited Partner of the Partnership, provided that the Defaulting Partner shall continue to be obligated to return distributions to the Partnership as required pursuant to this Agreement or the Delaware Act as if it continued to be a Limited Partner, and the Partnership shall have no further obligation to the Defaulting Partner.

*Proprietary and Confidential*

(c)     Notwithstanding any reduction in the Defaulting Partner's Contribution pursuant to 6.2.3 or any determination that such Defaulting Partner shall not make additional capital contributions, if the Defaulting Partner continues as a Limited Partner, subsequent allocations of Net Gain, Net Loss or items in the nature of gross income, gain or loss made to such Defaulting Partner shall be adjusted (in addition to any adjustment resulting from the imposition of a Default Charge) to the extent necessary so that the aggregate allocations made to the Defaulting Partner, over the life of the Partnership, shall not exceed the allocations that would have been made to a non-defaulting Limited Partner with a Subscription equal to the lesser of (1) the Defaulting Partner's Subscription reduced by the amount of any Default Charge that has been imposed or (2) the amount previously contributed to the Partnership by the Defaulting Partner; *provided, however*, that (i) any allocations of Net Loss (or items of gross loss and expense) that are intended to offset allocations of Net Gain (or items of gross income and gain) made prior to the default shall be made to the Defaulting Partner as if it at all times had a Subscription equal to its Subscription prior to the default, and (ii) if, prior to its default, the Defaulting Partner had been allocated Net Loss (and items of gross loss and expense) in excess of Net Gain (and items of gross income and gain), then the subsequent allocations otherwise required by this 6.2.5 shall be adjusted so that the Defaulting Partner shall not be relieved of that portion of the losses allocated to it for the period prior to the default that exceeds its proportionate share of the losses of the Partnership for such period, determined based on its post-default share of allocations calculated in the manner required by the other provisions of this 6.2.5(c).

(d)     Any interest in the Partnership held by a Defaulting Partner shall be a Non-Voting Interest.

## ARTICLE 7.— DISTRIBUTIONS

## 7.1     AMOUNT, TIMING AND FORM.

### 7.1.1     General.

Except as otherwise provided in this Agreement, the General Partner shall determine the amount, timing and form (whether in cash or in kind) of all distributions made by the Partnership. Distributions of cash proceeds received by the Partnership from the sale or other dispositions of securities or other property held or received by the Partnership shall be made as soon as reasonably practicable after receipt thereof subject to the General Partner's right to withhold distributions as needed to satisfy reasonably anticipated obligations of the Partnership.

### 7.1.2     Apportionment of Distributions.

Each lot of securities to be distributed in kind shall be distributed to the Partners in proportion to their respective shares of the proposed distribution as provided in Article 7 or Article 10, as the case may be, except to the extent that a disproportionate distribution of securities is necessary in order to avoid distributing fractional shares.  For purposes of the preceding sentence, each lot of

ACTIVE/88165299.2

stock or other securities having a separately identifiable tax basis or holding period shall be treated as a separate lot of securities.

## 7.2    DISCRETIONARY DISTRIBUTIONS.

### 7.2.1    General.

Except as otherwise provided in this Agreement, each distribution prior to the dissolution of the Partnership shall be made as follows:

(a)      Such distributions shall be made 75% to all Partners (General and Limited) in proportion to their respective Contributions and 25% to the General Partner, so long as after giving effect to the proposed distribution:  (i)(A) the Capital Account balance of the General Partner will not be negative and (B) the fair market value of the portfolio of investments held by the Partnership (as determined in accordance with 14.4) will be greater than or equal to 120% of the cost basis of such investments, or (ii) a majority in interest of the Limited Partners have consented to the distribution.

(b)      Notwithstanding Section 7.2.1(a), (i) the General Partner may, at any time, make distributions of cash or securities 100% to all:  (x) Partners in proportion to their respective Contributions, so long as after giving effect to the distribution, the Capital Account balance of the General Partner will not be negative; or (y) Limited Partners in in proportion to their respective Contributions; and/or (ii) the General Partner reserves the right to subject the interest in the Partnership of one or more Limited Partners, but not all Limited Partners, to a different Carried Interest in its sole discretion.

(c)      If, immediately prior to a distribution:  (i) the value of the cumulative distributions of cash or securities made to the General Partner with respect to its Carried Interest is less than 25% of the cumulative net profits allocated to the Capital Accounts of the Partners, (ii) the value of the aggregate distributions of cash or securities made to the Limited Partners equals or exceeds the aggregate Contributions of the Limited Partners to the Partnership as of such time, and (iii) the condition set forth in either clause (i)(A) or clause (ii) of 7.2.1(a) is met as of such time, then, notwithstanding the distribution ratios set forth in 7.2.1(a), the General Partner shall be entitled to cause the Partnership to make distributions of cash or securities to the General Partner until the cumulative value of distributions made to the General Partner, excluding amounts received by the General Partner with respect to its interest in the Partnership attributable to its Subscription and Contribution, is equal to 25% of the cumulative net profits allocated to the Capital Accounts of all Partners.  The value of cumulative distributions made to the General Partner with respect to any Limited Partner's interest held by the General Partner shall be excluded for purposes of the preceding sentence.

ACTIVE/88165299.2

**7.2.2      Temporary Investment Income.**

The General Partner, in its discretion, shall distribute or retain cash attributable to Temporary Investment Income.  If the General Partner determines to distribute cash attributable to Temporary Investment Income, it shall be distributed to the Partners in proportion to their respective Contributions.

**7.2.3      Operational Rules.**

For purposes of 7.2.1, 7.2.2 and this 7.2.3:

(a)      If distributions to which a Defaulting Partner otherwise would have been entitled have been withheld pursuant to 6.2.4, the amounts so withheld shall be treated as having been distributed to such Partner;

(b)      Tax Distributions made to a Partner shall be taken into account as if such distributions had been made to such Partner pursuant to 7.2.1 or 7.2.2, as the case may be;

(c)      Amounts treated as distributed to a Partner pursuant to 7.4 shall be taken into account as if such amounts had been distributed to such Partner pursuant to 7.2.1 or 7.2.2, as the case may be;

(d)      Distributions made to any Partner's predecessors in interest shall be treated as having been made to such Partner;

(e)      If there are Defaulting Partners or Partners that have been excused from making additional capital contributions, distributions shall be modified to the extent required by Article 6; and references in this Article 7 to "all Partners" and to "each Partner" shall be modified accordingly by the General Partner in its good faith.

**7.2.4      Treatment of the General Partner as Limited Partner.**

For purposes of this Article 7 and any related provisions of this Agreement, the General Partner shall be treated as a Limited Partner with respect to its interest in the Partnership attributable to its Subscription and Contribution and the distributions (including Tax Distributions) made to the General Partner in respect of its interest as a Limited Partner shall be determined without regard to the General Partner's 25% "carried interest" in the Partnership's cumulative net profits or any allocations or distributions (including Tax Distributions) made in respect thereof.  Similarly, any distributions (including Tax Distributions) made to the General Partner in respect of its 25% "carried interest" in the Partnership's cumulative net profits shall be determined without regard to any allocations or distributions (including Tax Distributions) made to the General Partner in respect of its interest as a Limited Partner.

- 14 -

**7.3     TAX DISTRIBUTIONS; OTHER SPECIAL DISTRIBUTIONS.**

**7.3.1     Tax Distributions — General.**

Except as provided in 7.3.2 and subject to the Delaware Act, the Partnership shall distribute to each Partner (including any tax-exempt Partner) in cash, with respect to each fiscal year, within 90 days thereafter, an amount (a "**Tax Distribution**") equal to the aggregate federal, state and local income tax liability such Partner would have incurred as a result of such Partner's ownership of an interest in the Partnership, determined:

(a)     As if such Partner were a natural person resident in the Commonwealth of Massachusetts; and

(b)     As if such Partner were subject to tax at the highest marginal rates provided under applicable federal, state and local income tax laws, taking into account the character of income or gain and any allowable federal income tax deduction for state and local taxes, as if such Partner were not entitled to deduct any expenses that are deductible by an individual only under Section 212 of the Code, and using such other reasonable assumptions as the General Partner may determine.

The Partnership may treat any distribution made pursuant to 7.2 or 7.3.5 during the first 90 days of a fiscal year as a Tax Distribution with respect to the prior fiscal year.

**7.3.2     Tax Distributions — Reduction.**

The aggregate amount of Tax Distributions with respect to any fiscal year may be reduced, on a pro rata basis, or not made if and to the extent determined by the General Partner in its sole discretion.

**7.3.3     Advances to Pay Estimated Taxes.**

The Partnership may make distributions to all Partners (including any tax-exempt Partners) during any Partnership fiscal year to enable the Partners to satisfy their liability to make estimated tax payments with respect to such fiscal year or the preceding fiscal year based on calculations of the Partners' estimated tax liability made in accordance with 7.3.1. Any such distributions shall be deemed to be Tax Distributions except to the extent such distributions are required to be returned to the Partnership pursuant to this 7.3.3. If the aggregate amount of distributions made to the General Partner for estimated taxes with respect to any fiscal year exceeds the tax liability of the General Partner with respect to such fiscal year (calculated as of the end of such fiscal year pursuant to 7.3.1), the General Partner shall treat such excess as an advance and shall return such excess with interest at a rate of 8% per annum accruing from the date of such advance to the Partnership promptly after it has been determined that an amount in excess of the Tax Distribution to which the General Partner would otherwise be entitled has been made. The Capital Account of the General Partner shall be increased by any amount, other than interest, so returned to the Partnership, but the Contribution of the General Partner shall not be increased by any such return.

ACTIVE/88165299.2

**7.3.4      Coordination of Tax Distributions and Other Distributions.**

Distributions made to any Partner in cash pursuant to 7.2 or 7.3.5 during any fiscal year (other than any amounts treated as a Tax Distribution with respect to a prior fiscal year) shall reduce dollar-for-dollar the amount of Tax Distributions to which such Partner shall be entitled pursuant to 7.3.1 with respect to such fiscal year.

**7.3.5      Other Special Distributions.**

Distributions of available cash corresponding to amounts of Partnership net income and gains that have been specially allocated to the Partners pursuant to 8.3 shall be made, at such time or times as the General Partner in its discretion shall determine, to the Partners to whom such net income and gains have been allocated.  No distribution made to a Partner pursuant to this 7.3.5 shall be taken into account in determining the amount previously distributed to (or to be distributed to) such Partner pursuant to the other provisions of this Article 7.

**7.4      PAYMENT OF TAXES.**

**7.4.1      General.**

If the Partnership incurs an obligation to pay directly any amount in respect of taxes with respect to amounts allocated or distributed to one or more Partners, including but not limited to withholding taxes imposed on any Partner's or former Partner's share of the Partnership's gross or net income and gains (or items thereof), income taxes, and any interest, penalties or additions to tax ("**Tax Liability**"), or if the amount of a payment or distribution of cash or other property to the Partnership is reduced as a result of withholding by other parties in satisfaction of any such Tax Liability:

(a)      All payments by the Partnership in satisfaction of such Tax Liability and all reductions in the amount of a payment or distribution that the Partnership otherwise would have received shall be treated, pursuant to this 7.4, as distributed to those Partners or former Partners to which the related Tax Liability is attributable;

(b)      Notwithstanding any other provision of this Agreement, subsequent distributions to the Partners shall be adjusted by the General Partner in an equitable manner so that, to the extent feasible, the burden of taxes withheld at the source or paid by the Partnership is borne by those Partners to which such obligations are attributable; and

(c)      The General Partner in its sole discretion may cause any amount treated pursuant to 7.4.1(a) as distributed to any Partner or former Partner at any time that exceeds the amount, if any, of distributions to which such Person is then entitled under this Agreement to be treated as a loan to such Person, and the General Partner shall give prompt written notice to such Person of the amount of such loan.

**7.4.2    Tax Liability.**

The General Partner, after consulting with the Partnership's accountants or other advisers, shall determine the amount, if any, of any Tax Liability attributable to any Partner.  For this purpose, the General Partner shall be entitled to treat any Partner as ineligible for an exemption from or reduction in rate of such Tax Liability under a tax treaty or otherwise except to the extent that such Partner provides the General Partner with such written evidence as the General Partner or the relevant tax authorities may require to establish such Partner's entitlement to such exemption or reduction.

**7.4.3    Repayment of Any Amounts Treated as Loans.**

Each Partner covenants, for itself, its successors, assigns, heirs and personal representatives, that such Person shall repay any loan described in 7.4.1(c) not later than 30 days after the General Partner gives written notice demanding such repayment (whether before or after the withdrawal of such Partner from the Partnership or the dissolution of the Partnership).  If any such repayment is not made within such 30- day period:

(a)    Such Person shall pay interest to the Partnership at the Default Rate for the entire period commencing on the date on which the Partnership paid such amount and ending on the date on which such Person repays such amount to the Partnership together with all accrued but previously unpaid interest; and

(b)    The Partnership may (1) collect such unpaid amounts (including interest) from any distributions that otherwise would be made by the Partnership to such Person or (2) subtract an amount equal to such unpaid amounts (including interest) from the Capital Account of such Person, in each case treating the amount so collected or subtracted as having been distributed to such Person.

**7.4.4    Partnership Obligation.**

For purposes of this 7.4, any obligation to pay any amount in respect of any Tax Liability incurred by the General Partner or any Principal with respect to income of or distributions made to any other Partner or former Partner shall constitute a Partnership obligation.

**7.5    CERTAIN DISTRIBUTIONS PROHIBITED.**

Anything in this Agreement to the contrary notwithstanding:

(a)    No distribution shall be required to be made to any Partner if, and to the extent that, such distribution would not be permitted under the Delaware Act or any other applicable law; and

(b)    No distribution other than a Tax Distribution shall be made to any Partner to the extent that such Partner has — or would have, as a result of such distribution— a Capital Account deficit balance in excess of such Partner's Restoration Amount; provided, however, that for this purpose Capital Account balances shall be

determined without regard to any allocations made pursuant to Part 1 of Appendix II other than 1.1 thereof.

## ARTICLE 8. — CAPITAL ACCOUNTS; ALLOCATIONS

**8.1     CAPITAL ACCOUNTS.**

**8.1.1     Creation and Maintenance.**

There shall be established on the books of the Partnership a capital account for each Partner (such Partner's "**Capital Account**") that shall be:

(a)     *Increased* by (1) any capital contributions made to the Partnership by such Partner pursuant to this Agreement and (2) any amounts in the nature of income or gain added to the Capital Account of such Partner pursuant to this Article 8 or Appendix II;

(b)     *Decreased* by (1) any distributions made to such Partner and (2) any amounts in the nature of loss or expense subtracted from the Capital Account of such Partner pursuant to this Article 8 or Appendix II; and

(c)     Otherwise adjusted in accordance with the provisions of this Agreement including, but not limited to, 6.2.3 (relating to the imposition of a Default Charge).

**8.1.2     Accounting for Distributions in Kind.**

For purposes of maintaining Capital Accounts, if Partnership property is distributed in kind:

(a)     The Partnership shall treat such property as if it had been sold for its fair market value on the date of distribution as determined in accordance with 14.4;

(b)     Any difference between the fair market value as so determined (net of any liabilities secured by such property or to which such property is subject) and the cost of such property shall be allocated, as of the time immediately preceding such distribution, to the Capital Accounts of the Partners as Net Gain or Net Loss in accordance with this Article 8; and

(c)     The Capital Account of any Partner receiving a distribution in kind shall be reduced by an amount equal to the fair market value of such property on the date of distribution (net of any liabilities secured by such property or to which such property is subject).

**8.1.3     Timing of Adjustments to Capital Accounts.**

Except as otherwise provided in this Agreement, the Partnership's books shall be closed and the Partners' Capital Accounts shall be adjusted in accordance with this Article 8 and Appendix II as of the close of business on the following dates:  (a) the last day of each fiscal year; (b) the day

before the Partnership's final liquidating distribution; and (c) any other date determined by the General Partner to be appropriate for a closing of the Partnership's books.

**8.1.4     Compliance with Treasury Regulations; Cost.**

The provisions of this 8.1, including the provisions relating to the maintenance of Capital Accounts, are intended to comply with Section 704(b) of the Code and Treasury Regulations Section 1.704-1(b), and shall be interpreted and applied in a manner consistent with such regulations.  In determining Capital Accounts and in making allocations and distributions pursuant to this Agreement (unless the context otherwise requires), the cost of any asset of the Partnership shall be deemed to be the adjusted tax basis thereof, with such further adjustments as may be required to comply with Treasury Regulations Section 1.704-1(b)(2)(iv).

**8.2     ALLOCATIONS OF NET GAIN OR LOSS AND TEMPORARY INVESTMENT INCOME OR LOSS.**

**8.2.1     Net Gain.**

After giving effect to the other provisions of this Article 8, <u>Appendix II</u> and 3.3.1(a), Net Gain, if any, shall be allocated to the Capital Accounts of the Partners as follows:

(a)     First, to all Partners, in proportion to the amount of Net Loss (if any) previously allocated to each Partner pursuant to 8.2.2(b) and not offset by prior allocations of Net Gain made pursuant to this 8.2.1(a), an amount of Net Gain equal to the amount of such Net Loss;

(b)     Thereafter, 75% to all Partners in proportion to their respective Contributions and 25% to the General Partner.

**8.2.2     Net Loss.**

After giving effect to the other provisions of this Article 8, <u>Appendix II</u> and 3.3.1(a), Net Loss, if any, shall be allocated to the Capital Accounts of the Partners as follows:

(a)     First, to all Partners, in proportion to the amount of Net Gain (if any) previously allocated to each Partner pursuant to 8.2.1(b) and not offset by prior allocations of Net Loss made pursuant to this 8.2.2(a), an amount of Net Loss equal to the amount of such Net Gain; and

(b)     Thereafter, to all Partners in proportion to their respective Contributions.

**8.2.3     Temporary Investment Income or Loss.**

Subject to the other provisions of this Article 8 and <u>Appendix II</u>, Temporary Investment Income or Loss shall be allocated to all Partners in proportion to their respective Contributions.

**8.2.4    Allocations Following a Default or Excuse.**

Following the failure of a Limited Partner to make a contribution when due or an excused non-payment of a capital contribution by a Limited Partner, allocations otherwise prescribed by this 8.2 shall be modified as set forth in 6.2.4 or 6.2.5(c), as the case may be.

**8.2.5    Treatment of the General Partner's Interest as Limited Partner Interest.**

For purposes of this Article 8 and any related provisions of this Agreement, the General Partner shall be treated as a Limited Partner with respect to its interest in the Partnership attributable to its Subscription and Contribution and the allocations made to the General Partner in respect of its interest as a Limited Partner shall be determined without regard to the General Partner's 25% "carried interest" in the Partnership's cumulative net profits or any allocations or distributions made in respect thereof.  Similarly, any allocations made to the General Partner in respect of its 25% "carried interest" in the Partnership's cumulative net profits shall be determined without regard to any allocations or distributions made to the General Partner in respect of its interest as a Limited Partner.

**8.3    OTHER SPECIALLY ALLOCATED ITEMS.**

After giving effect to the special allocations set forth in <u>Appendix II</u>, the following items of the Partnership shall be specially allocated in the manner set forth below:

(a)    The Delayed Payment Interest, if any, of the Partnership shall be allocated to all Partners other than the Partner liable to pay such interest in proportion to their respective Contributions.

(b)    The unpaid Transfer Expenses, if any, of the Partnership shall be allocated to the transferor or the transferee of the Partnership interest involved to the extent required by 11.2.8.

**8.4    ADMISSION OF ADDITIONAL PARTNERS.**

If any Person is admitted to the Partnership (or the Subscription of any existing Partner is increased) after the Initial Closing Date, the General Partner shall adjust subsequent allocations of Partnership income, gain, loss and expense otherwise provided for in this Article 8 and <u>Appendix II</u> as necessary so that, after such adjustments have been made (but subject to the special allocations provided in 3.3.1) each Partner (other than a Defaulting Partner) shall have been allocated an amount of income and gain (net of loss or expense) such Partner would have been allocated if (a) it had been admitted to the Partnership on the Initial Closing Date with a Subscription equal to its Subscription immediately following such admission or increase and (b) it had made all capital contributions in respect of such Subscription when originally due; *provided*, *however*, that the allocations of deductible loss or expense otherwise required by this 8.4 shall be limited to those permitted by Section 706 of the Code.  To the extent feasible, adjustments pursuant to the preceding sentence shall preserve the tax character of the items so allocated.

ACTIVE/88165299.2

## ARTICLE 9. — DURATION OF THE PARTNERSHIP

**9.1    TERM OF PARTNERSHIP.**

The term of the Partnership shall continue until the tenth anniversary of the Initial Closing Date at which time the Partnership will dissolve and commence its winding up, unless its term is extended as provided in this 9.1, or unless the Partnership is sooner dissolved as provided in 9.2 or 9.3 or by operation of law.  Unless the Partnership is sooner dissolved, prior to the expiration of its term, the General Partner may extend the term of the Partnership and postpone the date of its dissolution for up to two additional one-year periods.  The General Partner shall notify the Limited Partners promptly of any such extension.

**9.2    DISSOLUTION UPON WITHDRAWAL OF GENERAL PARTNER.**

(a)    The Partnership shall be dissolved upon the occurrence of an event of withdrawal (as defined in the Delaware Act) of the General Partner; provided, the Partnership shall not be dissolved and required to be wound up in connection with an event of withdrawal of the General Partner if (1) at the time of the occurrence of such event there is at least one remaining general partner of the Partnership who is hereby authorized to and shall carry on the business of the Partnership, or (2) within 90 days after the occurrence of such event a majority in interest of the Limited Partners agree in writing or vote to continue the business of the Partnership and to the appointment, effective as of the date of such event, if required, of one or more additional general partners of the Partnership.

(b)    If the General Partner suffers an event that, with the passage of the period specified in the Delaware Act, becomes an event of withdrawal under Section 17-402(a)(4) or (5) of the Delaware Act, the General Partner shall notify each Limited Partner of the occurrence of such event within 30 days after the occurrence of such event (or within the maximum time then permitted under the Delaware Act).

**9.3    DISSOLUTION BY PARTNERS AND OTHERWISE.**

(a)    The General Partner, with the consent of a majority in interest of the Limited Partners, may dissolve the Partnership at any time on not less than 90 days' prior written notice to the Limited Partners.

(b)    The General Partner, without the consent of the Limited Partners, may dissolve the Partnership at any time following the fourth anniversary of the Initial Closing Date.

(c)    The Partnership shall dissolve when there are no limited partners of the Partnership unless the business of the Partnership is continued in accordance with the Delaware Act.

(d)    The Partnership shall dissolve upon the entry of a decree of judicial dissolution under Section 17-802 of the Delaware Act.

- 21 -

*Proprietary and Confidential*

**9.4     REMOVAL OF THE GENERAL PARTNER.**

The General Partner may not be removed from its position as such.

**ARTICLE 10.— LIQUIDATION OF ASSETS ON DISSOLUTION**

**10.1     GENERAL.**

Following dissolution, the Partnership's assets shall be wound up in an orderly manner.  The General Partner shall be the liquidator to wind up the affairs of the Partnership pursuant to this Agreement; *provided*, *however*, that if there shall be no remaining General Partner at that time, a majority in interest of the Limited Partners may designate one or more other Persons to act as the liquidator (or liquidators) instead of the General Partner.  Any such liquidator, other than the General Partner, shall be a "liquidating trustee" within the meaning of Section 17-101(10) of the Delaware Act.

**10.2     LIQUIDATING DISTRIBUTIONS.**

The liquidator shall, to the extent permitted by law, cause the Partnership to pay or provide for the satisfaction of the Partnership's liabilities and obligations to creditors in accordance with the Delaware Act.  In performing its duties, the liquidator is authorized to gradually settle and close the Partnership affairs and to sell, exchange or otherwise dispose of the assets of the Partnership in such reasonable manner as the liquidator shall determine to be in the best interest of the Partners.  All items of income, gain, loss and expense shall be allocated among the Partners in accordance with Article 8 and Appendix II, and, after satisfaction of Partnership liabilities in accordance with the Delaware Act, the remaining assets of the Partnership shall then be distributed to the Partners in cash (to the extent feasible) or in kind, in the discretion of the liquidator, in proportion to the positive balances in their respective Capital Accounts, after such Capital Accounts have been adjusted to reflect any Net Gain or Net Loss attributable to a distribution in kind.  During the liquidation of the Partnership, the liquidator shall furnish to the Partners the financial statements and other information specified in 14.3.

**10.3     EXPENSES OF LIQUIDATOR.**

The expenses incurred by the liquidator in connection with winding up the Partnership, all other losses or liabilities of the Partnership incurred in accordance with the terms of this Agreement, and reasonable compensation for the services of the liquidator shall be borne by the Partnership. If the General Partner serves as the liquidator, it shall not be entitled to additional compensation for providing services in such capacity as long as it continues to be entitled to reimbursement of expenses in accordance with Article 5.

**10.4     DURATION OF LIQUIDATION.**

A reasonable time shall be allowed for the winding up of the affairs of the Partnership in order to minimize any losses that might otherwise result.  The liquidator shall use commercially reasonable efforts to carry out the liquidation in conformity with the timing requirements of Treasury Regulation Section 1.704-1(b)(2)(ii)(g).

ACTIVE/88165299.2

*Proprietary and Confidential*

## 10.5    LIABILITY FOR RETURNS.

### 10.5.1    General.

The liquidator, the General Partner and their respective partners, members, stockholders, officers, directors, managers, employees, agents and Affiliates shall not be personally liable to any Partner for the return of the capital contributions of any Partner to the maximum extent permitted by law.

### 10.5.2    Limited Partner Obligations.

No Limited Partner shall be obligated to restore to the Partnership any amount with respect to a negative Capital Account; *provided*, *however*, that this provision shall not affect the obligations of Partners to make their agreed-upon capital contributions and any other payments to the Partnership that are required under this Agreement or applicable law.

### 10.5.3    General Partner Return Obligation.

After the Partnership has made its final distribution of assets pursuant to 10.2, if the General Partner has received aggregate Carried Interest distributions in excess of 25% of Distributed Profit, the General Partner shall return to the Partnership in cash or in Freely Tradeable Securities valued at the time of such return, on or before the 90th day after such final distribution of assets by the Partnership, an amount equal to such excess.  Notwithstanding the preceding sentence, in no event shall the General Partner be required to return to the Partnership pursuant to this 10.5.3 an amount greater than the aggregate amount of Carried Interest distributions previously received by the General Partner, *reduced by* all Tax Distributions to which the General Partner would have been entitled with respect to its Carried Interest for each fiscal period since the Partnership's inception if all such Tax Distributions had been made in full in accordance with 7.3.1, without reduction for distributions made pursuant to other provisions or reductions pursuant to 7.3.2; for this purpose the Tax Distributions to which the General Partner would have been entitled shall include the additional tax liability the General Partner would have incurred (calculated in accordance with the principles of 7.3.1) if all property distributed in kind by the Partnership to the General Partner with respect to its Carried Interest since the inception of the Partnership had been sold for its fair market value (as determined pursuant to 14.4) immediately following its distribution to the General Partner.  For purposes of this 10.5.3, the "Carried Interest distributions" shall be equal to the excess of (x) all distributions to the General Partner from the Partnership since inception (other than distributions pursuant to 7.3.5 and excluding any such distributions previously returned to the Partnership) over (y) the aggregate distributions to which the General Partner would have been entitled solely with respect to its capital contributions to the Partnership if the General Partner had invested as a Limited Partner and another Person had served as General Partner without making a capital contribution.

### 10.5.4    Allocations to Support General Partner's Return Obligation.

It is intended that, immediately following the Partnership's final distribution of assets pursuant to 10.2, the General Partner shall have a deficit balance in its Capital Account equal to the amount, if any, that it is obligated to return to the Partnership pursuant to 10.5.3.  If the General Partner determines at any time during the life of the Partnership (including during its liquidation

*Proprietary and Confidential*

following its dissolution) that the General Partner's obligation to make the return provided for in 10.5.3 would not be matched by an equivalent deficit balance in its Capital Account if the Partnership were to be liquidated at such time, then the General Partner shall use its authority pursuant to Part 3 of Appendix II (and subject to the limitations therein) to make allocations other than in accordance with Article 8 and the balance of Appendix II to the extent necessary to ensure that an equivalent deficit balance would result if the Partnership were to be liquidated at such time; *provided*, *however*, that the General Partner shall not be obligated to return to the Partnership in respect of any deficit in its Capital Account an amount in excess of the amount it is required to return pursuant to 10.5.3 except as required by the Delaware Act.

### 10.5.5   Distribution of Returned Amounts.

Amounts returned by the General Partner to the Partnership pursuant to 10.5.3 shall be used to satisfy creditors of the Partnership and any excess amounts remaining thereafter shall be distributed to the Partners in proportion to the positive balances in their respective Capital Accounts.  To the maximum extent permitted by law, in no event shall 10.5.3 be enforceable for the benefit of any Person other than the Limited Partners.

### 10.5.6   Partners' Liability for Return.

The General Partner shall cause each of the participants (and former participants) in the Carried Interest to agree in writing to be severally liable for the General Partner's obligation to return distributions pursuant to 10.5.3, but solely to the extent of their respective proportionate shares of the amount of such return obligation.

## ARTICLE 11. — LIMITATIONS ON TRANSFERS AND WITHDRAWALS OF PARTNERSHIP INTERESTS

## 11.1   TRANSFER OF GENERAL PARTNER'S INTEREST.

The General Partner may assign, pledge, mortgage, hypothecate, give, sell or otherwise dispose of or encumber (each such act, a "**Transfer**") all or any part of its interest as General Partner to one or more Persons and any such Transfer shall not require the consent of the Limited Partners. If the General Partner transfers all or a portion of its interest pursuant to this 11.1, the transferee shall be admitted to the Partnership only upon the written consent of the General Partner and upon such transferee's execution of a counterpart to this Agreement.  If the General Partner transfers all of its interest in the Partnership pursuant to this 11.1, the transferee shall be deemed admitted to the Partnership as general partner immediately prior to the transfer, and the transferee general partner is hereby authorized to, and shall continue the business of the Partnership without dissolution.  In connection with any borrowing by the Partnership, the General Partner may collaterally assign the right to make drawdowns of capital contributions to a lender to the Partnership (or an Affiliate thereof), and no such collateral assignment shall be treated as a Transfer for purposes of this Agreement or require the consent of the Limited Partners.

ACTIVE/88165299.2

*Proprietary and Confidential*

## 11.2    TRANSFERS OF LIMITED PARTNER INTERESTS.

### 11.2.1    General.

No Transfer of a Limited Partner's interest in the Partnership, in whole or in part, shall be made other than pursuant to this 11.2.  Any attempted Transfer of all or any part of a Limited Partner's interest in the Partnership without compliance with this Agreement shall be void to the maximum extent permitted by law.  Each Transfer shall be subject to all of the terms, conditions, restrictions and obligations set forth in this Agreement and shall be evidenced by a written agreement executed by the transferor, the transferee(s) and the General Partner, in form and substance satisfactory to the General Partner.

### 11.2.2    Consent of General Partner.

The prior written consent of the General Partner, which may be granted or withheld in its absolute discretion, shall be required for any Transfer of all or part of any Limited Partner's interest in the Partnership, including a Transfer of solely an economic interest in the Partnership. In determining whether to grant its consent to a Transfer, the General Partner shall take into account whether such Transfer would result in the "termination" of the Partnership pursuant to Section 708 of the Code and, if so, whether such termination would result in material adverse income tax consequences or material additional expense to the Partnership or any Partner.

### 11.2.3    No Public Trading in Partnership Interests.

The General Partner shall not cause or permit any offering of interests in the Partnership to be registered under the Securities Act or to become "traded on an established securities market," and shall withhold its consent to any Transfer that, to the General Partner's knowledge after reasonable inquiry, otherwise would be accomplished by a trade on a "secondary market (or the substantial equivalent thereof)," in each case within the meaning of Sections 7704 or 469(k) of the Code and the applicable Treasury Regulations.

### 11.2.4    No Recognition of Certain Transfers.

No Transfer of any "partnership interest" (as defined in Treasury Regulation Section 1.7704-1(a)(2)) in the Partnership or portion thereof or derivative interest therein shall be permitted or "recognized" (within the meaning of Treasury Regulation Section 1.7704-1(d)) by the Partnership or the General Partner unless either (a) the General Partner determines that either such Transfer or the Partnership (immediately after such Transfer) will qualify for a safe harbor set forth in the Treasury Regulations under Section 7704 or (b) the General Partner otherwise determines, after consulting with the Partnership's tax advisors, that such Transfer will not cause the Partnership to be subject to U.S. federal income tax as a publicly traded partnership under Section 7704(b) of the Code.

### 11.2.5    Required Representations by Parties.

    (a)    The transferor and transferee(s) shall provide to the General Partner, in connection with any proposed Transfer written representations to the effect that:

ACTIVE/88165299.2

*Proprietary and Confidential*

(1)     The proposed Transfer will not be effected on or through (A) a United States national, regional or local securities exchange, (B) a foreign securities exchange or (C) an interdealer quotation system that regularly disseminates firm buy or sell quotations by identified brokers or dealers (including, without limitation, the NASDAQ Stock Market ("**Nasdaq**")); and

(2)     Such Person is not, and its proposed Transfer or acquisition (as the case may be) will not be made by, through or on behalf of (A) a Person, such as a broker or a dealer, making a market in interests in the Partnership, or (B) a Person who makes available to the public bid or offer quotes with respect to interests in the Partnership.

(b)     The transferor and transferee(s) shall provide such additional written representations as the General Partner reasonably may request.

(c)     The General Partner and counsel to the Partnership shall be permitted to rely upon any representations made by the transferor and transferee(s), whether pursuant to 11.2.5(a) or 11.2.5(b) or otherwise, and on written representations from other Partners made prior to or contemporaneously with such proposed Transfer.  The General Partner, in its sole discretion, may waive its right to obtain any representations otherwise required by 11.2.5(a).

## 11.2.6     Other Prohibited Legal Consequences.

No Transfer shall be permitted, and the General Partner shall withhold its consent with respect thereto, if such Transfer or the admission of the transferee to the Partnership as a substituted Limited Partner, would:

(a)     Result in the Partnership's assets becoming "plan assets" of any ERISA Partner within the meaning of ERISA;

(b)     Result in a violation by the Partnership of the registration requirements of the Securities Act;

(c)     Require the Partnership to register as an investment company under the Investment Company Act; or

(d)     Result in the Partnership being subject to United States federal income tax at the entity level under Section 7704 of the Code.

## 11.2.7     Opinion of Counsel.

Any Transfer otherwise permitted hereunder shall be made only upon receipt by the Partnership of a written opinion of counsel for the Partnership, or of other counsel reasonably satisfactory to the General Partner, in form and substance satisfactory to the General Partner, as to legal matters as the General Partner reasonably may request.  The General Partner may waive, in whole or in part, the requirement of an opinion pursuant to this 11.2.7.

ACTIVE/88165299.2

*Proprietary and Confidential*

**11.2.8    Reimbursement of Transfer Expenses.**

Any Partner who requests or otherwise seeks to effect a Transfer of all or a portion of its interest in the Partnership hereby agrees to reimburse the Partnership, at the request of the General Partner, for any expenses reasonably incurred by the Partnership in connection with such Transfer, including the costs of seeking and obtaining the legal opinion required by 11.2.7 and any other legal, accounting and miscellaneous expenses ("**Transfer Expenses**"), whether or not such Transfer is consummated.  At its election, and in any event if the transferor has not reimbursed the Partnership for any Transfer Expenses incurred by the Partnership in preparing for or consummating a proposed or completed Transfer within 30 days after the General Partner has delivered to such Partner written demand for payment, the General Partner may seek reimbursement from the transferee of such interest (or portion thereof).  If the transferee does not reimburse the Partnership for such Transfer Expenses within a reasonable time (or, in the case of a Transfer not consummated, the prospective transferor does not reimburse the Partnership within a reasonable time), the General Partner may charge the Capital Account related to such interest with such Transfer Expenses.  For avoidance of doubt, Transfer Expenses shall include the additional accounting, tax preparation and other administrative expenses reasonably incurred (or to be incurred) by the Partnership in the case of a Transfer that results in tax basis adjustments under Section 743 of the Code or related provisions.  In the case of a Transfer that is expected to result in future expenses of the type described in the preceding sentence, the General Partner may estimate the amount of such expenses in good faith, and such estimate shall be final.

**11.3    ADMISSION OF SUBSTITUTED LIMITED PARTNERS.**

**11.3.1    General.**

Any transferee of a Limited Partner's limited partner interest in the Partnership transferred in accordance with the provisions of this Article 11 shall be admitted as a substituted Limited Partner upon its execution of a counterpart to this Agreement and upon obtaining the General Partner's written consent, which consent may be withheld for any reason or for no reason. Without the written consent of the General Partner to such substitution and the written opinion of counsel required by 11.2.7 (or waiver thereof by the General Partner) no transferee of a Limited Partner's limited partner interest in the Partnership shall be admitted as a substituted Limited Partner.

**11.3.2    Effect of Admission.**

The transferee of a Limited Partner's limited partner interest in the Partnership transferred pursuant to this Article 11 that is admitted to the Partnership as a substituted Limited Partner shall succeed to the rights and liabilities of the transferor Limited Partner (to the extent of the interest transferred) and, after the effective date of such admission, the Subscription, Contribution and Capital Account of the transferor shall become the Subscription, Contribution and Capital Account, respectively, of the transferee, to the extent of the interest transferred.  If a transferee is not admitted to the Partnership as a substituted Limited Partner, (a) such transferee shall have no right to participate with the Limited Partners in any votes taken or consents granted or withheld by the Limited Partners hereunder, and (b) the transferor shall remain liable to the

Partnership for all contributions and other amounts payable with respect to the transferred interest to the same extent as if no Transfer had occurred.

### 11.3.3    Accession to Agreement.

Each Person who is to be admitted as a substituted Limited Partner in accordance with the terms of this Agreement shall accede to this Agreement and agree to be bound by all of the terms hereof as a Limited Partner by executing, together with the General Partner, a counterpart signature page to this Agreement providing for such admission, but shall not require the consent or approval of any other Partner.  The General Partner shall make any necessary filings with the appropriate governmental authorities and take such actions as are necessary under applicable law to effectuate such admission.

### 11.3.4    Non-Compliant Transfer.

If a Transfer has been proposed or attempted but the requirements of this Article 11 have not been satisfied, the General Partner shall not admit the purported transferee as a substituted Limited Partner but, to the contrary, shall use its reasonable best efforts to ensure that the Partnership (a) continues to treat the transferor as the sole owner of the interest in the Partnership purportedly transferred, (b) makes no distributions to the purported transferee and (c) does not furnish to the purported transferee any tax or financial information regarding the Partnership. The General Partner shall also use its reasonable best efforts to ensure that the Partnership does not otherwise treat the purported transferee as an owner of any interest in the Partnership (either legal or equitable), unless required by law to do so.  To the maximum extent permitted by law, the Partnership shall be entitled to seek injunctive relief, at the expense of the purported transferor, to prevent any such purported Transfer.

## 11.4    MULTIPLE OWNERSHIP.

If any Transfer results in multiple ownership of any Limited Partner's interest in the Partnership, the General Partner may require one or more trustees or nominees to be designated as representing a portion of or the entire interest transferred for purposes of (a) receiving all notices which may be given, and all payments which may be made, under this Agreement and (b) exercising all rights which the transferor as a Limited Partner has pursuant to the provisions of this Agreement.

## 11.5    WITHDRAWAL RIGHTS.

### 11.5.1    General.

Except as otherwise provided in this Agreement or with the consent of the General Partner, no Limited Partner shall have the right to withdraw from the Partnership, to withdraw its capital and profits from the Partnership, or to demand and receive any Partnership property in exchange for its interest in the Partnership.

## ARTICLE 12.— EXCULPATION AND INDEMNIFICATION

**12.1    EXCULPATION.**

### 12.1.1    General.

To the maximum extent permitted by law, no Covered Person shall be liable to the Partnership or any Partner for any loss suffered by the Partnership or any Partner which arises out of any investment or any other action or omission of such Covered Person if (a) such Covered Person acted in good faith and reasonably believed that such course of conduct was in, or not opposed to, the best interest of the Partnership, (b) such conduct did not constitute gross negligence, willful malfeasance or a breach of the duty of loyalty (as modified by the terms of this Agreement) and (c) such conduct did not constitute a material breach of this Agreement which, if curable, is not cured within 30 days of notice thereof.  For purposes of this Article 12, "**Covered Person**" shall mean the General Partner (including without limitation the General Partner acting as Tax Matters Partner or as liquidator), the partners of the General Partner, the Management Company, and each partner, member, stockholder, officer, director, manager, trustee, employee, agent or Affiliate of any of the foregoing, each to the extent such Person was serving in such capacity at the time the loss or cause of action arose.

### 12.1.2    Activities of Others.

To the maximum extent permitted by law, no Covered Person shall be liable to the Partnership or any Partner for the negligence, whether by action or omission, dishonesty or bad faith of any broker or other agent of the Partnership selected with reasonable care.

### 12.1.3    Liquidator.

To the maximum extent permitted by law, no Person other than the General Partner (whose standard of care is set forth in 12.1.1) that serves as liquidator pursuant to Article 10 shall be liable to the Partnership or any Partner for any loss suffered by the Partnership or any Partner which arises out of any action or omission of such Person, *provided that* such Person acted in good faith and reasonably believed that such course of conduct was in, or was not opposed to, the best interest of the Partnership.

### 12.1.4    Advice of Experts.

To the maximum extent permitted by law, no Covered Person, no member of any board or committee formed to assist or advise the General Partner and no Person serving as liquidator shall be liable to the Partnership or any Partner with respect to any action or omission taken or suffered by any of them in good faith if such action or omission is taken or suffered in reliance upon and in accordance with the opinion or advice of legal counsel (as to matters of law), or of accountants (as to matters of accounting), or of investment bankers, accounting firms, or other appraisers (as to matters of valuation), *provided that* any such professional or firm is selected with reasonable care.

## 12.2    INDEMNIFICATION.

### 12.2.1    General.

To the maximum extent permitted by law, the Covered Persons, each liquidator, each member of any board or committee formed to assist or advise the General Partner, each Associated Partner, and each partner, member, stockholder, director, officer, manager, trustee, employee, agent and Affiliate of any of the foregoing (each, an "**Indemnitee**") shall be indemnified, subject to the other provisions of this Agreement, by the Partnership (only out of Partnership assets, including the proceeds of liability insurance) against any claim, demand, controversy, dispute, cost, loss, damage, expense (including attorneys' fees), judgment and/or liability (collectively, "**Damages**") incurred by or imposed upon the Indemnitee in connection with any action, suit or proceeding (including any proceeding before any administrative or legislative body or agency), to which the Indemnitee may be made a party or otherwise involved or with which the Indemnitee shall be threatened, by reason of the Indemnitee's being at the time the cause of action arose or thereafter, the General Partner (including without limitation the General Partner acting as Tax Matters Partner or liquidator), a partner of the General Partner, the Management Company, a liquidator, a member of any board or committee formed to assist or advise the General Partner, a partner, member, stockholder, director, officer, manager, trustee, employee, agent or Affiliate of any of the foregoing, or a partner, member, stockholder, director, officer, manager, trustee, employee, consultant or agent of any other organization in which the Partnership owns or has owned an interest or of which the Partnership is or was a creditor, which other organization the Indemnitee serves or has served as a partner, member, stockholder, director, officer, manager, trustee, employee, consultant or agent at the request of the Partnership (whether or not the Indemnitee continues to serve in such capacity at the time such action, suit or proceeding is brought or threatened), or by reason of actions or omissions taken or suffered in any such capacity.

### 12.2.2    Effect of Judgment.

An Indemnitee shall not be indemnified with respect to matters as to which the Indemnitee shall have been finally adjudicated in any such action, suit or proceeding (a) not to have acted in good faith and in the reasonable belief that the Indemnitee's action was in, or not opposed to, the best interests of the Partnership, (b) to have acted with gross negligence or willful malfeasance, (c) to have breached a material provision of this Agreement which, if curable, is not cured within 30 days' notice thereof or (d) with respect to any criminal action or proceeding, to have had cause to believe beyond a reasonable doubt that the Indemnitee's conduct was criminal.

### 12.2.3    Effect of Settlement.

In the event of settlement of any action, suit or proceeding brought or threatened, such indemnification shall apply to all matters covered by the settlement except for matters as to which the Partnership is advised by counsel (who may be counsel regularly retained to represent the Partnership) that the Person seeking indemnification, in the opinion of counsel:  (1) did not act in good faith and in the reasonable belief that such Person's action was in, or not opposed to, the best interest of the Partnership, (2) acted with gross negligence or willful malfeasance, (3) breached a material provision of this Agreement which, if curable, is not cured within 30 days' notice thereof, (4) with respect to any criminal action or proceeding, that the Person seeking

indemnification had undertaken such course of conduct with cause to believe beyond a reasonable doubt that such Person's conduct was criminal or (5) such indemnification is not permitted by law.

### 12.2.4   Advance Payment of Expenses.

The Partnership may pay the expenses incurred by an Indemnitee in connection with any such action, suit or proceeding, or in connection with claims arising in connection with any potential or threatened action, suit or proceeding, in advance of the final disposition of such action, suit or proceeding, upon receipt of an enforceable undertaking by such Indemnitee to repay such payment if the Indemnitee shall be determined to be not entitled to indemnification for such expenses pursuant to this Article 12; *provided*, *however*, that such action, suit or proceeding is not an actual or threatened claim, action, suit or proceeding against the Indemnitee by the Partnership, the General Partner or a majority in interest of the Limited Partners or by the Indemnitee against the Partnership and/or the General Partner.

### 12.2.5   Insurance.

At its election, the General Partner may cause the Partnership to purchase and maintain insurance, at the expense of the Partnership and to the extent available, for the protection of any Indemnitee or potential Indemnitee against any liability incurred in any capacity which results in such Person being an Indemnitee (provided that such Person is serving in such capacity at the request of the Partnership or the General Partner), whether or not the Partnership has the power to indemnify such Person against such liability.  The General Partner may purchase and maintain insurance on behalf of and at the expense of the Partnership for the protection of any officer, director, manager, employee or other agent of any other organization in which the Partnership owns an interest or of which the Partnership is a creditor against similar liabilities, whether or not the Partnership has the power to indemnify any Person against such liabilities.

### 12.2.6   Successors and Survival.

The foregoing right of indemnification shall inure to the benefit of the executors, administrators, personal representatives, successors or assigns of each such Indemnitee and shall survive termination of the Partnership and the Agreement.

### 12.2.7   Rights to Indemnification from Other Sources.

The rights to indemnification and advancement of expenses conferred in this 12.2 shall not be exclusive and shall be in addition to any rights to which any Indemnitee may otherwise be entitled or hereafter acquire under any law, statute, rule, regulation, charter document, by-law, contract or agreement.  The indemnification obligation of the Partnership to an Indemnitee with respect to any Damages shall be reduced by any indemnification payments actually received by such Indemnitee from the Target Company with respect to the same Damages.  Solely for purposes of clarification, and without expanding the scope of indemnification pursuant to this 12.2, the Partners intend that, to the maximum extent permitted by law, as between (a) the Portfolio Company, (b) the Partnership and (c) the General Partner or the Management Company (or any Affiliate thereof), this 12.2 shall be interpreted to reflect an ordering of liability for potentially overlapping or duplicative indemnification payments, with the Target Company

- 31 -

having primary liability, the Partnership having only secondary liability, and (if applicable) the General Partner and/or the Management Company (or any Affiliate thereof) having only tertiary liability.  The possibility that an Indemnitee may receive indemnification payments from the Target Company shall not restrict the Partnership from making payments under this 12.2 to an Indemnitee that is otherwise eligible for such payments, but such payments by the Partnership are not intended to relieve the Target Company from any liability that it would otherwise have to make indemnification payments to such Indemnitee and, if an Indemnitee that has received indemnification payments from the Partnership actually receives duplicative indemnification payments from the Target Company for the same Damages, such Indemnitee shall repay the Partnership to the extent of such duplicative payments.  If, notwithstanding the intention of this 12.2, the Target Company's obligation to make indemnification payments to an Indemnitee is relieved or reduced under applicable law as a result of payments made by the Partnership pursuant to this 12.2, the Partnership shall have, to the maximum extent permitted by law, a right of subrogation against (or contribution from) the Target Company for amounts paid by the Partnership to an Indemnitee that relieved or reduced the obligation of the Target Company to such Indemnitee.  Indemnification payments (if any) made to an Indemnitee by the General Partner or the Management Company (or any Affiliate thereof) in respect of Damages for which (and to the extent) such Indemnitee is otherwise eligible for payments from the Partnership under this 12.2 shall not relieve the Partnership from its obligation to such Indemnitee and/or the General Partner or the Management Company (or any Affiliate thereof), as applicable, for such payments.  As used in this 12.2, "indemnification" payments made or to be made by the Target Company shall be deemed to include (i) payments made or to be made by any successor to the indemnification obligations of the Target Company and (ii) equivalent payments made or to be made by or on behalf of the Target Company (or such successor) pursuant to an insurance policy or similar arrangement.  Subject to the foregoing, each Indemnitee shall use commercially reasonable efforts to reduce the amount of indemnified Damages by seeking contribution from other sources, including, without limitation, the Portfolio Company and insurance policies maintained by the Partnership and related entities.

### 12.2.8    Sharing of Expenses with Related Funds.

With regard to any claim for indemnification pursuant to this 12.2 which relates to a common activity of the Partnership and any Other Fund, it is intended that the Partnership shall be required to pay only its proportionate share of the total amounts actually paid with respect to such claim by any or all of such funds.  For this purpose, (a) the Partnership's proportionate share of any such claim attributable to a Portfolio Investment shall be equal to its proportionate share of the total amounts invested by the Partnership and such other funds in such Portfolio Investment, and (b) its proportionate share of any other claim shall be determined based on the aggregate commitments to the capital of the Partnership relative to the aggregate commitments to the capital of such other funds.  If any claim for indemnification relates only to or is caused solely by the activities or existence of only one of the Partnership or such other funds or entities, any liability to make payments in satisfaction of such claim shall be borne fully by such party.

### 12.2.9    Discretionary Limitation by General Partner.

Notwithstanding 12.2.1, the General Partner in its sole discretion may limit or eliminate indemnification payments that otherwise would be made by the Partnership to any Indemnitee

pursuant to this Agreement *other than* a member of any board or committee formed to assist or advise the General Partner, a Limited Partner that designated such member, a liquidator or any partner, member, stockholder, director, officer, manager, trustee, employee, agent or Affiliate thereof.

**12.2.10   Other Limitations.**

(a)      Notwithstanding the foregoing, the Partnership shall not indemnify any Indemnitee that served as an officer or director of the Target Company for liabilities that related to actions or inactions which occurred in such capacity during the period of time beginning six months after the time the Partnership has completely disposed of its investment in the Target Company.

(b)      Notwithstanding anything to the contrary herein, "internal disputes" shall be excluded from the types of claims indemnified hereunder.  For purposes of the preceding sentence, an "internal dispute" is defined exclusively as any proceeding in which the Management Company or the General Partner or one or more officers, directors, managers, partners, members or employees of the General Partner or the Management Company are suing the Management Company or the General Partner or one or more other officers, directors, managers, partners, members or employees of the General Partner or the Management Company and no other party is involved in such lawsuit.

**12.3    LIMITATION BY LAW.**

If any Covered Person or Indemnitee or the Partnership itself is subject to any federal or state law, rule or regulation which restricts the extent to which any Person may be exonerated or indemnified by the Partnership, the exoneration provisions set forth in 12.1 and the indemnification provisions set forth in 12.2 shall be deemed to be amended, automatically and without further action by the Partners, to the minimum extent necessary to conform to such restrictions.

**12.4    RETURN OF CERTAIN DISTRIBUTIONS.**

If the Partnership incurs a liability or obligation under this Article 12 or in connection with the sale, exchange or disposition of a Portfolio Investment, then the General Partner may require that each Partner upon no less than 10 days prior written notice from the General Partner, return its *pro rata* share of distributions received from the Partnership (according to the amount by which such obligation or liability would have reduced the aggregate distributions received by each Partner, after giving effect to any distributions returned by the General Partner pursuant to 10.5.3 and any distribution of such returned amounts to the Partners) of the amount necessary to satisfy such liability or obligation; *provided* that other than with respect to the General Partner's return of Carried Interest distributions, (x) no Partner shall be required to return distributions pursuant to this 12.4 greater than the lesser of (1) the aggregate amount of distributions made to such partner (and such Partner's predecessors in interest) pursuant to Articles 7 and 10 and (2) 25% of such Partner's Subscription and (y) no Partner shall be required to return distributions pursuant to this 12.4 after the third anniversary of the date such amount was distributed to such Partner,

except to fund any such liability or obligation (A) that the General Partner or the Partnership is in the process of litigating, arbitrating or otherwise settling as of such third anniversary date and (B) with respect to which the General Partner has delivered to the Partners within 30 days after such third anniversary date written notice of such litigation, arbitration or settlement process.  A Partner's obligation to return distributions to the Partnership under this 12.4 shall survive the termination, dissolution and winding up of the Partnership (and the General Partner may require any payments made after the Partnership's final liquidating distribution to be made to the General Partner or directly to an Indemnitee), and the Partnership or General Partner may pursue and enforce all rights and remedies it may have against each Partner under this 12.4, including instituting a lawsuit to collect such contribution with interest from the due date at the Default Rate.  If a contribution is required to be made pursuant to this 12.4 after the date of the final liquidating distribution of the Partnership, the payment obligation of the General Partner (if any) pursuant to 10.5.3 shall be recomputed to take into account the post-liquidation payments required by this 12.4 if and to the extent the obligation to make such payments had not previously been taken into account when initially determining any payment obligation of the General Partner pursuant to 10.5.3.  The return obligations of the Partners pursuant to this 12.4 shall be in addition to their capital contribution obligations with respect to their Subscriptions.  Amounts returned by a Partner pursuant to this 12.4 shall be treated for purposes of Article 7 as a reduction in the amount of distributions received by such Partner, and amounts returned by such Partner pursuant to this 12.4 shall not increase such Partner's Contribution; *provided* that failure to make a required payment pursuant to this 12.4 by any Partner may, in the General Partner's discretion, be treated for purposes of 6.2 and the provisions and remedies therein as a failure by such Partner to make a required capital contribution pursuant to a drawdown.  Amounts to be returned pursuant to this 12.4 shall be payable in cash or securities previously distributed valued on the date returned in accordance with 14.4.  The provisions of this 12.4 shall not be construed or interpreted as inuring to the benefit of any creditor of (i) the Partnership (other than Indemnitees), (ii) a Limited Partner, (iii) the General Partner or (iv) any Indemnitee.

### ARTICLE 13. — AMENDMENTS, VOTING AND CONSENTS

**13.1   AMENDMENTS.**

**13.1.1   Consent of Partners.**

Except as otherwise provided in this Agreement, the terms and provisions of this Agreement (including, without limitation, 14.9.7) may be waived, modified, amended, or deleted during or after the term of the Partnership, only with the prior written consent of the General Partner and a majority in interest of the Limited Partners; *provided*, *however*, that any provision of this Agreement requiring the written vote or consent of a greater percentage in interest of the Limited Partners (other than a provision of the Delaware Act that becomes a part of this Agreement by operation of law) may be waived, modified, amended or deleted only with the vote or written consent of the General Partner and such greater percentage in interest of the Limited Partners as is required by such provision.

**13.1.2    Amendments Affecting Partners' Economic Rights.**

No amendment to this Agreement shall increase the Subscription of any Partner or, except as provided in 15.4 and 6.2, dilute the relative interest of any Limited Partner with respect to the other Limited Partners in the profits or capital of the Partnership or in allocations or distributions attributable to the ownership of such interest without the prior written consent of such Limited Partner, except such dilution as may result from additional Subscriptions from the Partners or the admission of additional Limited Partners pursuant to this Agreement.  This 13.1.2 shall not be amended without the unanimous consent of all Partners.

**13.1.3    Notice of Amendments.**

The General Partner shall furnish copies of any amendments to this Agreement to all Partners. Changes made to the books and records of the Partnership made pursuant to 3.1 or otherwise shall not be deemed to be amendments to this Agreement and shall not be required to be circulated to all Partners.

**13.1.4    Certain Amendments.**

Notwithstanding the other provisions of this Article 13, the General Partner, without the consent of any other Partner, may amend any provisions of this Agreement (a) to add to the duties or obligations of the General Partner or surrender any right granted to the General Partner herein, (b) to reflect agreements negotiated in connection with the admission of any Additional Partner or (c) to cure any ambiguity or correct or supplement any provision herein which may be inconsistent with any other provision herein or to correct any printing, stenographic or clerical errors or omissions in order that this Agreement shall accurately reflect the agreement among the Partners; provided, however, that no amendment shall be made pursuant to this 13.1.4 unless the General Partner reasonably shall have determined that such amendment will not (1) have a material adverse effect on any Limited Partner or (2) diminish or waive in any material respect the duties and obligations of the General Partner to the Partnership or the Limited Partners.

**13.1.5    Execution of Amendments.**

Upon obtaining such approvals required by this Agreement and without further action or execution by any other Person, including any Limited Partner, (i) any amendment to this Agreement may be implemented and reflected in a writing executed solely by the General Partner, and (ii) the Limited Partners shall be deemed a party to and bound by such amendment of this Agreement.

**13.2    VOTING AND CONSENTS.**

Whenever action is required by this Agreement to be taken by a specified percentage in interest of the Limited Partners, such action shall be deemed to be valid if taken upon the written vote or written consent of those Limited Partners whose Subscriptions represent the specified percentage of the aggregate Subscriptions of all Limited Partners at the time.  Similarly, whenever action is required by this Agreement to be taken by a specified percentage in interest of a specified class or group of Limited Partners, such action shall be deemed to be valid if taken upon the vote or written consent of those Limited Partners of such class or group whose Subscriptions represent

- 35 -

the specified percentage of the aggregate Subscriptions of all Limited Partners of such class or group at the time.  Except as expressly provided herein, no class of, or enumerated category of, Limited Partners shall be entitled to vote or consent separately as a class with respect to any matter.  For these purposes, a majority-in-interest shall mean a percentage in interest in excess of 50%, and Non-Voting Interests, if any, shall not be taken into account.  Any Limited Partner interest held by the General Partner or an Affiliate thereof shall be a Non-Voting Interest.

## 13.3    SAVINGS CLAUSE.

If the Partnership is exempt from registration under the Investment Company Act by virtue of Section 3(c)(1) of such act and, following the admission to the Partnership of a Limited Partner that is an "investment company" within the meaning of the Investment Company Act or an entity that would be an "investment company" but for the exceptions provided for in Sections 3(c)(1) or 3(c)(7) of the Investment Company Act, such Limited Partner's Subscription becomes greater than 9.99% of the aggregate of the Subscriptions of the Limited Partners excluding Limited Partners whose interests are, in whole or in part, Non-Voting Interests (or such other percentage as is set forth in Section 3(c)(1) for purposes of "looking through" an entity) by virtue of a reduction in the aggregate of the Subscriptions of the other Limited Partners, the portion of the interest in the Partnership held by such Limited Partner in excess of such percentage shall constitute a Non-Voting Interest to the extent of such excess above 9.99% (or such permissible percentage).

## ARTICLE 14. — ADMINISTRATIVE PROVISIONS

## 14.1   KEEPING OF ACCOUNTS AND RECORDS; CERTIFICATE OF LIMITED PARTNERSHIP.

### 14.1.1    Accounts and Records.

At all times the General Partner shall cause to be kept proper and complete books of account, in which shall be entered fully and accurately the transactions of the Partnership.  Such books of account shall be kept on the accrual method of accounting.  The General Partner shall also maintain:  (a) an executed copy of this Agreement (and any amendments hereto); (b) the Certificate (and any amendments thereto); (c) executed copies of any powers of attorney pursuant to which any document described in clause (a) or (b) has been executed by the Partnership; (d) a current list of the name, address, e-mail address, facsimile number, Subscription and taxpayer identification number, if any, of each Partner; (e) copies of all tax returns filed by the Partnership for each of the prior three years; and (f) all financial statements of the Partnership for each of the prior three years.  These books and records shall at all times be maintained at the principal office of the Management Company.

### 14.1.2    Certificate of Limited Partnership.

The General Partner shall file for record with the appropriate public authorities and, if required, publish the Certificate and any amendments thereto.

*Proprietary and Confidential*

## 14.2   INSPECTION RIGHTS.

At any time before the Partnership's complete liquidation, each Limited Partner, or a designee thereof, at its own expense may (a) fully examine and audit the Partnership's books, records, accounts and assets, and (b) examine, or request that the General Partner furnish, such additional information as is reasonably necessary to enable the requesting Partner to review the state of the investment activities of the Partnership, provided that the General Partner can obtain such additional information without unreasonable effort or expense.  Any such examination or audit shall be made (1) only upon ten (10) Business Days' prior written notice to the General Partner, (2) during normal business hours, and (3) without undue disruption.  Notwithstanding the foregoing, the General Partner shall have the benefit of the confidential information provisions of Section 17-305(b) of the Delaware Act and the obligation to make Partnership Information available or to furnish Partnership Information shall be subject to 14.9.7.

## 14.3   FINANCIAL REPORTS.

### 14.3.1   No Financial Statements.

The Partnership shall have no obligation to provide any Partner with annual, quarterly or other period financial statements.

### 14.3.2   Annual Tax Information.

The General Partner shall use reasonable best efforts to transmit to each Partner, within 90 days after the close of each fiscal year, such Partner's Schedule K-1 (Internal Revenue Service Form 1065) or an equivalent report indicating such Partner's share of all items of income or gain, expense, loss or other deduction and tax credit of the Partnership for such year, as well as the status of its Capital Account as of the end of such year, and such additional information as such Partner reasonably may request to enable it to complete its tax returns or to fulfill any other reporting requirements, provided that the General Partner can obtain such additional information without unreasonable effort or expense.

### 14.3.3   Web Site.

Notwithstanding 14.6, the General Partner shall, to the maximum extent permitted by law, be deemed to have satisfied its obligations to transmit financial information and reports pursuant to this 14.3 if the General Partner posts such financial statements and/or reports on a web site and gives notice to the Limited Partners, pursuant to 14.6, of the availability of such financial information and/or reports, the URL address of the web site and a password for access to such web site, if necessary.

## 14.4   VALUATION.

For financial statement purposes, all valuations shall be determined by the General Partner in good faith based on such information it deems appropriate and in accordance with GAAP or such other accounting convention as may be determined by the General Partner in its reasonable discretion, in any case, consistently applied, and subject to the provisions of this Agreement.

ACTIVE/88165299.2

## 14.5   MEETINGS.

The General Partner may, but shall have no obligation to, cause the Partnership to hold an annual meeting offering Limited Partners the opportunity to review and discuss the Partnership's investment activity and portfolio.  At the General Partner's discretion, individual meetings may be held in lieu of, or in addition to, an annual meeting.

## 14.6   NOTICES.

Except where otherwise specifically provided in this Agreement, all notices, requests, consents, approvals and statements shall be in writing and, if properly addressed to the recipient, shall be deemed given (a) on the date of actual receipt if delivered personally to the recipient; (b) three (3) Business Days after mailing if mailed by first class mail (or if sent to or from outside the United States, by airmail), postage prepaid; (c) if a Business Day and sent prior to 1:00 p.m. Boston time, the date of transmission (or, if not a Business Day or sent after 1:00 p.m. Boston time, the Business Day following transmission) if sent by electronic facsimile transmission or e-mail; or (d) one (1) Business Day after being sent by a reputable overnight courier service, overnight delivery requested.  Notices shall be deemed to be properly addressed, if to the Partnership or the General Partner at:  90 Broadway, Cambridge, MA 02142, or if to any Limited Partner (or trustee or nominee pursuant to 11.4), if addressed to its address as set forth in such Limited Partner's Subscription Agreement or Assignment Agreement, or to such other address or addresses as the addressee previously may have specified by written notice given in the manner specified in this 14.6 to the Partnership, in the case of the Limited Partners, or to the Limited Partners, in the case of the Partnership or the General Partner.

## 14.7   ACCOUNTING PROVISIONS.

### 14.7.1   Fiscal Year.

The fiscal year of the Partnership shall be the calendar year or, if the Partnership is required to use a different year as its taxable year for federal income tax purposes, such other year.

## 14.8   TAX PROVISIONS.

### 14.8.1   Classification as Partnership.

The General Partner (a) shall not cause or permit the Partnership to elect (1) to be excluded from the provisions of Subchapter K of Chapter 1 of the Code or (2) to be treated as a corporation for federal income tax purposes or (3) to be treated as an "electing large partnership" as defined in Section 775 of the Code; (b) shall cause the Partnership to make any election reasonably determined to be necessary or appropriate in order to ensure the treatment of the Partnership as a partnership for federal income tax purposes; (c) shall cause the Partnership to file any required tax returns in a manner consistent with its treatment as a partnership for federal income tax purposes; and (d) shall not take any action that would be inconsistent with the treatment of the Partnership as a partnership for such purposes.

**14.8.2    Tax Matters Partner; Partner Tax Information.**

The "tax matters partner," as defined in Section 6231 of the Code, of the Partnership (the "**Tax Matters Partner**") shall be the General Partner.  All expenses incurred by the Tax Matters Partner (including professional fees for such accountants, attorneys and agents as the Tax Matters Partner in its discretion determines are necessary to or useful in the performance of its duties in that capacity) shall be borne by the Partnership.  Each Partner shall provide to the Partnership upon request such information or forms which the General Partner may reasonably request with respect to the Partnership's compliance with applicable tax laws.

**14.8.3    Section 1045 Rollovers.**

Each Limited Partner agrees that (a) with respect to its limited partner interest, it will not require the Partnership to elect, and the Partnership shall not be required to elect, the application of Section 1045 of the Code (dealing with rollovers of gains realized on the disposition of "qualified small business stock" as defined in Section 1202 of the Code) or any similar provisions of any state income tax law; (b) without the prior written consent of the General Partner, such Limited Partner will not make any election referred to in the preceding clause (a) if such election would impose on the Partnership or the General Partner any obligation (including, but not limited to, any obligation to furnish information, maintain records or file returns or other documents); and (c) the Partnership shall not be required to comply with any tax reporting or accounting requirements (including, but not limited to, those relating to the adjustment of the tax basis of any asset of the Partnership or the interest in the Partnership of any Partner) that may be imposed under Section 1045 of the Code, and shall not be required to provide any information necessary to enable such Limited Partner to comply with or elect the application of Section 1045 of the Code, in each case with respect to rollovers of qualified small business stock by the Partnership or by or on behalf of any Partner.

**14.8.4    Electing Investment Partnership.**

The General Partner, in its sole discretion, may make an election under Section 754 of the Code or an election to have the Partnership treated as an "electing investment partnership" for purposes of Section 743 of the Code.  If the General Partner elects to have the Partnership treated as an "electing investment partnership," the other Partners shall cooperate with the General Partner to maintain that status and shall not take any action that would be inconsistent with such election.  Upon request, the Partners shall provide the General Partner with any information necessary to allow the Partnership to comply with (a) its obligations to make tax basis adjustments under Sections 734 or 743 of the Code or (b) its obligations as an "electing investment partnership."

**14.8.5    Tax Reporting Consistency.**

For United States federal, state and local income tax purposes, each Limited Partner shall report the tax items attributable to its participation in the Partnership on its income tax returns in a manner consistent with the tax treatment of such items as reported to it by the Partnership

*Proprietary and Confidential*

## 14.9   GENERAL PROVISIONS.

### 14.9.1   Power of Attorney.

To the maximum extent permitted by law, each of the undersigned by execution of this Agreement (including by execution of a counterpart signature page hereto directly or via an attorney-in-fact) constitutes and appoints the General Partner as its true and lawful representative and attorney-in-fact, in its name, place and stead, to make, execute, sign, acknowledge and deliver or file (a) the Certificate and any other instruments, documents and certificates which may from time to time be required by any law to effectuate, implement and continue the valid and subsisting existence of the Partnership, (b) all instruments, documents and certificates that may be required to effectuate the dissolution and termination of the Partnership in accordance with the provisions hereof and the Delaware Act, (c) all other amendments of this Agreement or the Certificate contemplated by this Agreement including, without limitation, amendments reflecting the addition or substitution of any Partner, or any action of the Partners duly taken pursuant to this Agreement whether or not such Partner voted in favor of or otherwise approved such action, (d) any instrument, certificate or document necessary to transfer the Limited Partner interest of a Defaulting Partner pursuant to 6.2, and (e) any other instrument, certificate or document required from time to time to admit a Partner, to effect its substitution as a Partner, to effect the substitution of the Partner's assignee as a Partner, or to reflect any action of the Partners provided for in this Agreement.  To the maximum extent permitted by law, the foregoing grant of authority (1) is a special power of attorney coupled with an interest in favor of the General Partner and as such shall be irrevocable and shall survive and not be affected by the death, disability or incapacity of a Partner that is a natural person or the merger, dissolution or other termination of the existence of a Partner that is a corporation, association, partnership, limited liability company or trust, and (2) shall survive the assignment by the Partner of the whole or any portion of its interest, except that where the assignee of the whole thereof has furnished a power of attorney, this power of attorney shall survive such assignment for the sole purpose of enabling the General Partner to execute, acknowledge and file any instrument necessary to effect any permitted substitution of the assignee for the assignor as a Partner and shall thereafter terminate.  This power of attorney may be exercised by such attorney-in-fact for all Limited Partners (or any of them) by a single signature of the General Partner acting as attorney-in-fact with or without listing all of the Limited Partners executing an instrument.

### 14.9.2   Execution of Additional Documents.

Each Partner hereby agrees to execute all certificates, counterparts, amendments, instruments or documents that may be required by laws of the various jurisdictions in which the Partnership conducts its activities, to conform with the laws of such jurisdictions governing limited partnerships.

### 14.9.3   Binding on Successors.

This Agreement shall be binding upon and shall inure to the benefit of the respective heirs, successors, permitted assigns and legal representatives of the parties hereto.

ACTIVE/88165299.2

### 14.9.4   Governing Law.

This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without regard to conflict of law principles.

### 14.9.5   Waiver of Partition.

Each Partner hereby irrevocably waives any and all rights that it may have to maintain an action for partition of any of the Partnership's property.

### 14.9.6   Securities Law Matters.

Each Partner understands that in addition to the restrictions on transfer contained in this Agreement, it must bear the economic risks of its investment for an indefinite period because the interests in the Partnership have not been registered under the Securities Act or under any applicable securities laws of any state or other jurisdiction and, therefore, may not be sold or otherwise transferred unless they are registered under the Securities Act and any such other applicable securities laws or an exemption from such registration is available.

### 14.9.7   Confidentiality.

(a)   A Limited Partner's rights to access or receive any information about the Partnership, its Portfolio Companies and their respective affairs, including, without limitation, (1) information to which a Limited Partner is provided access pursuant to 14.2, (2) information provided pursuant to 14.3, and (3) the offering documents for the Partnership, this Agreement, any Subscription Agreement or Assignment Agreement and any other related agreements and any other books and records of the Partnership (collectively, the "**Partnership Information**"), are conditioned on such Limited Partner's willingness and ability to assure that the Partnership Information will be used solely by such Limited Partner for purposes reasonably related to such Limited Partner's interest as a Limited Partner, and that such Partnership Information will not become publicly available as a result of such Limited Partner's rights to access or receive such Partnership Information, and each Limited Partner agrees not to use Partnership Information other than for purposes of evaluating, monitoring or protecting its investment in the Partnership.

(b)   Each Limited Partner acknowledges and agrees that the Partnership Information constitutes a valuable trade secret of the Partnership and agrees to maintain any Partnership Information provided to it in the strictest confidence and not to disclose the Partnership Information to any Person including, without limitation, a prospective transferee of such Partner's interest in the Partnership, without, to the extent permitted by applicable law, the written prior consent of the General Partner.  Notwithstanding the foregoing, the General Partner consents to the disclosure by a Limited Partner to its accountants, attorneys and similar advisors bound by a duty of confidentiality and any Limited Partner that the General Partner determines is a fund-of-funds or similar entity to such Limited Partner's own equity holders of summary information concerning the Partnership's financial performance and status to the extent necessary to satisfy such Partner's

- 41 -

own reporting obligations; *provided*, *however*, that (i) such equity holders are, at the time of such disclosure, pursuant to a written agreement, subject to substantially equivalent restrictions with respect to the use and disclosure of the Partnership Information as are set forth in this Agreement, (ii) such Limited Partner remains liable hereunder for any further disclosure of such information, and (iii) such consent shall not be construed to permit disclosure of any information about the Partnership's Portfolio Companies (including, without limitation, the fair market value of the Partnership's interest in such Portfolio Companies).  With respect to any Limited Partner, the obligation to maintain the Partnership Information in confidence shall not apply to any Partnership Information (1) that becomes publicly available (other than by reason of a disclosure by a Limited Partner), (2) the disclosure of which by such Limited Partner has been consented to by the General Partner in writing, or (3) the disclosure of which by such Limited Partner is required by a court of competent jurisdiction or other governmental authority or otherwise as required by law. Before any Limited Partner discloses Partnership Information pursuant to clause (3), such Limited Partner, to the maximum extent permitted by law, shall promptly, and in any event prior to making any such disclosure, notify the General Partner of the court order, subpoena, interrogatories, government order or other reason that requires disclosure of the Partnership Information so that the General Partner may seek a protective order or other remedy to protect the confidentiality of the Partnership Information.  Such Limited Partner, to the maximum extent permitted by law, shall also consult with the General Partner on the advisability of taking steps to eliminate or narrow the requirement to disclose the Partnership Information and shall otherwise cooperate with the efforts of the General Partner to obtain a protective order or other remedy to protect the Partnership Information.  If a protective order or other remedy cannot be obtained, to the maximum extent permitted by law, such Limited Partner shall disclose only that Partnership Information that its counsel advises in writing (which writing shall also be addressed and delivered to the Partnership, to the maximum extent permitted by law) that it is legally required to disclose.

(c)     Each Limited Partner, to the maximum extent permitted by law, shall promptly inform the General Partner if it becomes aware of any reason, whether under law, regulation, policy or otherwise, that it (or any of its equity holders) will, or might become compelled to, use the Partnership Information other than as contemplated by 14.9.7(a) or disclose Partnership Information in violation of the confidentiality restrictions in 14.9.7(b) (disregarding clause (3) thereof).

(d)     Notwithstanding any other provision of this Agreement, with the exception of the Schedule K-1 or equivalent report to be provided to each Partner pursuant to 14.3.2, the General Partner shall have the right not to provide any Limited Partner, for such period of time as the General Partner in good faith determines to be advisable, with any Partnership Information that such Limited Partner would otherwise be entitled to receive or to have access to pursuant to this Agreement or the Delaware Act if:  (1) the Partnership or the General Partner is required by law or by agreement with a third party to keep such Partnership Information

confidential; (2) the General Partner in good faith believes that the disclosure of such Partnership Information to such Limited Partner is not in the best interest of the Partnership or could damage the Partnership or the conduct of the affairs of the Partnership or its Portfolio Companies (which may include a determination by the General Partner that such Limited Partner (or any of its equity holders) is disclosing or may disclose such Partnership Information (or may be compelled to disclose such Partnership Information) or has not indicated a willingness to protect Partnership Information from being disclosed (or compelled to be disclosed) and that the potential of such disclosure by such Limited Partner (or any of its equity holders) is not in the best interest of the Partnership or could damage the Partnership, its Portfolio Companies or the conduct of the affairs of the Partnership or its Portfolio Companies) or (3) such Limited Partner has notified the General Partner of its election not to have access to, or to receive such Partnership Information.

(e)     The Limited Partners acknowledge and agree that:  (1) the Partnership, the General Partner and the Principals may acquire confidential information related to third parties (e.g., Portfolio Companies) that pursuant to fiduciary, contractual, legal or similar obligations may not be disclosed to the Limited Partners without violating such obligations; and (2) to the maximum extent permitted by law, neither the Partnership, the General Partner nor the Principals shall be in breach of any duty under this Agreement or the Delaware Act in consequence of acquiring, holding or failing to disclose Partnership Information to a Limited Partner so long as such obligations were undertaken in good faith.

(f)     In addition to any other remedies available at law, the Partners agree that the Partnership shall, to the maximum extent permitted by law, be entitled to equitable relief, including, without limitation, the right to an injunction or restraining order, as a remedy for any failure by a Limited Partner to comply with its obligations with respect to the use and disclosure of Partnership Information, as set forth in 14.9.7(a) and 14.9.7(b).  Furthermore, each Limited Partner agrees to indemnify the Partnership and each Covered Person against any claim, demand, controversy, dispute, cost, loss, damage, expense (including attorneys' fees), judgment and/or liability incurred by or imposed upon the Partnership or any such Covered Person in connection with any action, suit or proceeding (including any proceeding before any administrative or legislative body or agency), to which the Partnership or any such Covered Person may be made a party or otherwise involved or with which the Partnership or any such Covered Person shall be threatened, by reason of the Limited Partner's obligations (or breach thereof) set forth in 14.9.7(a) and/or 14.9.7(b).

(g)     Each Limited Partner agrees to cooperate with such procedures and restrictions as may be developed by the General Partner from time to time in connection with the disclosure of non-public information concerning the General Partner and the Partnership, including without limitation information concerning the Partnership's Portfolio Companies, as reasonably determined by the General Partner to be necessary and advisable to maintain and promote compliance with legal and other

- 43 -

regulatory matters applicable to the General Partner, the Partnership, the Limited Partners and the Partnership's Portfolio Companies, including securities laws and regulations.

(h)    To the maximum extent permitted by law, each Limited Partner acknowledges and agrees that the General Partner may consider the different circumstances of Limited Partners with respect to the restrictions and obligations imposed on Limited Partners in this 14.9.7 and the provision of information under this Agreement, and the General Partner in its sole and absolute discretion may agree to waive or modify any of such restrictions and/or obligations with respect to a Limited Partner with the consent of such Limited Partner but without the consent of any other Person.  Each Limited Partner further acknowledges and agrees that any such agreement by the General Partner with a Limited Partner to waive or modify any of the restrictions and/or obligations imposed by this 14.9.7 (or to withhold Partnership Information) shall (to the maximum extent permitted by law) not constitute a breach of any duty by the General Partner stated or implied in law or in equity to the Partnership or any Limited Partner, regardless of whether different agreements are reached with different Limited Partners.

(i)    To the maximum extent permitted by law, the provisions of this 14.9.7 shall survive the withdrawal of any Partner or the Transfer of any Partner's interest in the Partnership and shall be enforceable against such Partner after such withdrawal or Transfer.

(j)    Notwithstanding anything in this Agreement to the contrary, to avoid the application of Treasury Regulation Section 1.6011-4(b)(3), each Partner (and any employee, representative, or other agent of such Partner) may disclose to any and all Persons, without limitation of any kind, the U.S. federal tax treatment and tax structure of the Partnership or any transactions of the Partnership, it being understood and agreed, for this purpose (i) the name of, or any other identifying information regarding, (A) the Partnership or any existing or future investor (or any Affiliate thereof) in the Partnership, or (B) any investment or transaction entered into by the Partnership, or (ii) any performance information relating to the Partnership's investments, does not constitute such tax treatment or tax structure information.

## 14.9.8    Contract Construction; Headings; Counterparts.

Whenever the context of this Agreement permits, the masculine gender shall include the feminine and neuter genders, and reference to singular or plural shall be interchangeable with the other.  The invalidity or unenforceability of any one or more provisions of this Agreement shall not affect the other provisions, and the parties intend that this Agreement shall be construed and reformed in all respects as if any such invalid or unenforceable provision(s) were omitted or, at the direction of a court, modified in order to give effect to the intent and purposes of this Agreement.  References in this Agreement to particular sections of the Code or the Delaware Act or any other statute shall be deemed to refer to such sections or provisions as they may be amended after the date of this Agreement.  Captions in this Agreement are for convenience only

- 44 -

and do not define or limit any term of this Agreement.  It is the intention of the parties that every covenant, term, and provision of this Agreement shall be construed simply according to its fair meaning and not strictly for or against any party (notwithstanding any rule of law requiring an Agreement to be strictly construed against the drafting party), it being understood that the parties to this Agreement are sophisticated and have had adequate opportunity and means to retain counsel to represent their interests and to otherwise negotiate the provisions of this Agreement. Notwithstanding any other provisions of this Agreement (including 13.1) or any Subscription Agreement or Assignment Agreement, it is hereby acknowledged and agreed that the General Partner, on its own behalf or on behalf of the Partnership, and without the approval of any Limited Partner or other Person, may enter into a side letter or similar agreement to or with one or more Limited Partners that has the effect of establishing rights under, or altering or supplementing the terms hereof or of any Subscription Agreement with respect to such Limited Partner.  The parties agree that any terms contained in a side letter or similar agreement with one or more Limited Partners shall govern with respect to such Limited Partners notwithstanding the provisions of this Agreement or any Subscription Agreement.  This Agreement or any amendment hereto may be signed in any number of counterparts, each of which shall be an original, but all of which taken together shall constitute one agreement or amendment, as the case may be.

## ARTICLE 15.— SPECIAL REGULATORY MATTERS

**15.1    ERISA COMPLIANCE.**

**15.1.1    ERISA Plan Assets.**

The General Partner shall use its reasonable best efforts to manage the business and affairs of the Partnership so that "benefit plan investors" (as defined in Section 3(42) of ERISA) do not hold 25% or more of the value (in the aggregate) of any class of equity interest in the Partnership (as calculated and determined in accordance with Section 3(42) of ERISA).

**15.1.2    Distributions in Kind to ERISA Partners.**

If a distribution proposed to be made in kind under any provision of this Agreement, including a liquidating distribution, would result in the receipt by an ERISA Partner of securities or other property which such ERISA Partner could not hold without such holding constituting a non-exempt prohibited transaction under ERISA or the Code, then such ERISA Partner shall so notify the General Partner or liquidator, as applicable, and the General Partner or liquidator shall use reasonable efforts, consistent with its obligations to the other Partners, to cause the property which would otherwise have been distributed to such ERISA Partner to be disposed of by the Partnership and the net proceeds of such disposition to be remitted to such ERISA Partner or, in the General Partner's or liquidator's discretion, to make other arrangements reasonably acceptable to such ERISA Partner; *provided*, *however*, that (a) the provisions of this Agreement dealing with distributions, allocations and Partners' Capital Accounts shall be adjusted appropriately by the General Partner in good faith to approximate, as nearly as possible, the consequences that would have resulted if such property had been distributed to such ERISA Partner, and (b) any expenses incurred by the Partnership in disposing of such assets shall be deducted from and reduce the amount of proceeds that are remitted to such ERISA Partner.

## 15.2    ERISA WITHDRAWAL.

### 15.2.1    General.

Notwithstanding any provision in this Agreement to the contrary, any Limited Partner which is an ERISA Partner may elect, upon written notice of such election to the General Partner, to withdraw from the Partnership, or upon written demand by the General Partner shall withdraw from the Partnership, at the time and in the manner hereinafter provided, if either such ERISA Partner or the General Partner shall obtain and deliver to the other an opinion of counsel reasonably acceptable (as to form, substance and choice of counsel) to both such ERISA Partner and the General Partner to the effect that there is a material likelihood that:

(a)    As a result of a change in applicable law occurring after the date of the admission to the Partnership of such ERISA Partner, such ERISA Partner, any employee benefit plan subject to ERISA any of the assets of which are held by such ERISA Partner, the trustee or other fiduciary of such ERISA Partner or of such plan, or the Partnership would be in material violation of ERISA if such ERISA Partner were to continue as a Limited Partner of the Partnership; or

(b)    All or any portion of the assets of the Partnership would constitute "plan assets" of such ERISA Partner or such plan for the purposes of ERISA or the Code.

Notwithstanding the foregoing, no withdrawal shall be granted at the request of an ERISA Partner solely on the grounds that the ERISA Partner's investment in the Partnership is not prudent, that such investment does not satisfy the diversification requirements applicable to the relevant plan, that it is inconsistent with the plan's terms, investment policy or need for liquidity, or that it violates other similar requirements set forth in Sections 404 or 405 of ERISA (or other law similar in purpose and intent).  The costs of seeking and obtaining an opinion of counsel for purposes of this 15.2.1 shall be borne by the ERISA Partner.

### 15.2.2    Cure Period.

The General Partner shall have a period of 90 days following receipt of such counsel's opinion (or delivery of notice by the General Partner to such ERISA Partner demanding its withdrawal, if applicable) to attempt to eliminate the necessity for such withdrawal to the reasonable satisfaction of such ERISA Partner and the General Partner, whether by correction of the condition giving rise to the necessity of such ERISA Partner's withdrawal, by amendment of this Agreement, by effectuation of a Transfer of such ERISA Partner's interest in the Partnership to another Person; *provided* such Transfer meets the requirements of 11.2.

### 15.2.3    Withdrawal.

If such cause for withdrawal is not cured within such 90-day period, then such ERISA Partner shall withdraw from the Partnership as of the last day of the fiscal quarter of the Partnership during which such 90-day period expires or as of such earlier date as may be agreed to by the General Partner, in its sole discretion (such date being herein referred to as the "**ERISA Withdrawal Date**").  Effective upon the ERISA Withdrawal Date, such ERISA Partner shall cease to be a Partner of the Partnership for all purposes and, except for its right to receive

- 46 -

*Proprietary and Confidential*

payment for its Partnership interest as hereinafter provided, shall no longer be entitled to the rights of a Partner under this Agreement.

**15.2.4    Distributions to Withdrawing ERISA Partner.**

(a)    As promptly as practicable following the ERISA Withdrawal Date but subject to the Delaware Act, there shall be distributed to such ERISA Partner, in full payment and satisfaction of its interest in the Partnership, an amount equal to the amount which such ERISA Partner would have been entitled to receive pursuant to Article 10 if the Partnership had been liquidated on and as of the ERISA Withdrawal Date and each of the Partnership's assets had been sold on such date for its fair market value determined pursuant to 15.2.4(b).  No approval of the Partners shall be required prior to the making of such distribution.

(b)    For purposes of determining the amount of the distribution to be made to such ERISA Partner, and the value of each of the Partnership's assets, the General Partner's determination of the value in accordance with 14.4 shall be deemed to be conclusive unless either the withdrawing ERISA Partner or the General Partner notifies the other in writing, not more than 20 Business Days after the General Partner transmits the relevant financial statements, of such Person's objection to such valuation, indicating briefly the reason(s) therefor.  If, within 20 Business Days after such an objection has been made, a substitute value has not been agreed upon by the General Partner and such withdrawing ERISA Partner, the General Partner shall submit the dispute to an independent appraiser selected by the General Partner and approved by the withdrawing ERISA Partner.  If there shall be more than one Limited Partner that is a withdrawing ERISA Partner, the independent appraiser referred to in the preceding sentence shall be approved by a majority in interest of such withdrawing ERISA Partners.

(c)    Any distribution to the withdrawing ERISA Partner(s) shall be made in cash, cash equivalents, securities of Portfolio Companies, or a recourse note of the Partnership bearing interest at a fixed rate equal to the applicable federal rate of interest then in effect, with a maturity no later than the final liquidation of the Partnership; *provided*, *however*, that a withdrawing ERISA Partner shall not be required to accept a distribution in the form of a note if it shall obtain and deliver to the General Partner an opinion of counsel reasonably acceptable (as to form, substance and choice of counsel) to the General Partner to the effect that receipt of such note by such ERISA Partner would constitute a non-exempt prohibited transaction under ERISA or the Code.  If securities of Portfolio Companies are being distributed, such securities shall be distributed in a manner consistent with 7.1.2 to the extent practicable, unless otherwise required by law or contract.

**15.3    CONFORMING AMENDMENT.**

Upon the complete or partial withdrawal of any ERISA Partner from the Partnership, the Partners (including the withdrawing ERISA Partner) may enter into an amendment to this Agreement reflecting such withdrawal and amending such provisions of this Agreement as may

- 47 -

*Proprietary and Confidential*

be appropriate, including the allocation and distribution provisions, in order to preserve, to the maximum extent feasible, the intent, operation and effect of such provisions.

**15.4   ANTI-MONEY LAUNDERING PROVISIONS.**

The Limited Partners acknowledge that the Partnership and the General Partner are subject to certain anti-money laundering laws and related pronouncements and are otherwise prohibited from engaging in transactions with, or providing services to, certain foreign countries, territories, entities and individuals, including without limitation, specially designated nationals, specially designated narcotics traffickers and other parties subject to United States government sanctions and embargo programs.  In furtherance of the foregoing:

    (a)    Each Limited Partner hereby agrees to use its reasonable best efforts to ensure that:

        (i)    None of the monies that such Limited Partner will contribute to the Partnership shall be derived from, or related to, any activity that is deemed criminal under United States or other law; and

        (ii)    No contribution or payment by such Limited Partner to the Partnership, to the extent that such contribution or payment is within such Limited Partner's control, and no distribution to such Limited Partner (assuming such distribution is made in accordance with instructions provided to the General Partner by such Limited Partner) shall cause the Partnership, the Management Company, the General Partner or any Principal to be in violation of the United States Bank Secrecy Act, the United States Money Laundering Control Act of 1986 or the United States International Money Laundering Abatement and Financial Anti-Terrorism Act of 2001, in each case, such statute as amended and any successor statute thereto and including all regulations promulgated thereunder (collectively, the "**Anti-Money Laundering Laws**").

    (b)    Each Limited Partner:

        (i)    shall promptly notify the General Partner if, to the knowledge of such Limited Partner, such Limited Partner has made a contribution or payment to the Partnership of money derived from, or related to, any activity that is deemed criminal under United States law or the laws of any jurisdiction in which such conduct took place or that would likely cause the Partnership, the Management Company, the General Partner or any Principal to be in violation of any Anti-Money Laundering Laws;

        (ii)    shall provide the General Partner, promptly upon receipt of the General Partner's written request therefor, with any additional information regarding such Limited Partner or its beneficial owner(s) that the General Partner reasonably deems necessary or advisable, in order to determine or ensure compliance with all applicable laws, regulations and administrative

pronouncements concerning money laundering, criminal activities and government sanctions;

(iii) shall notify the General Partner if (1) such Limited Partner, (2) any Person controlling or controlled by such Limited Partner, (3) such Limited Partner is a privately held entity and, to the best of such Limited Partner's knowledge, any Person having a beneficial interest in such Limited Partner, or (4) to the best of such Limited Partner's knowledge, any Person for which such Limited Partner is acting as an agent or nominee is or becomes a prohibited country, territory, or Person listed on the Specially Designated Nationals and Blocked Persons List (the "**SDN List**") maintained by the Office of Foreign Assets Control of the United States Department of Treasury; and

(iv) acknowledges that if at any time it is discovered that such Limited Partner has made a contribution or payment to the Partnership of money derived from, or related to, any activity that is deemed criminal under United States law or that causes the Partnership, the General Partner, the Management Company or any Principal to be in violation of the Anti-Money Laundering Laws, any distribution to such Limited Partner made in accordance with such Limited Partner's instructions is "blocked" under Anti-Money Laundering Laws, such Limited Partner or any Person described in clauses (iii)(2) - (4) above is or becomes listed on the SDN List, or if otherwise required by applicable law or regulation related to money laundering, criminal activities or government sanctions, the General Partner may undertake appropriate actions to ensure compliance with any applicable law, regulation or pronouncement related to the foregoing.

(c) Actions that may be taken by the General Partner in the circumstances described in 15.4(b)(iv) include, but are not limited to, the following:

(i) The General Partner, upon delivery of notice to that effect to the affected Limited Partner, may "freeze" such Limited Partner's interest in the Partnership and, in that event: (1) shall not permit the Partnership to accept any additional capital contributions from such Limited Partner (in which case the Subscription of such Limited Partner shall be reduced to the amount of capital contributions that had previously been made to the Partnership by such Limited Partner); (2) shall not permit the Partnership to allocate any items of Partnership income or gain to such Limited Partner's Capital Account with respect to any fiscal period commencing on or after the date of delivery of such notice and for so long as the interest is frozen (although the General Partner may cause the Partnership to continue to allocate Partnership Expenses and losses to such Limited Partner's Capital Account to the same extent as if, with respect to such Limited Partner and through the date of the Partnership's final liquidating distribution, such Limited Partner was not prohibited from making capital

- 49 -

contributions to the Partnership and such Limited Partner had timely made all required capital contributions with respect to its Subscription); and/or (3) shall not permit the Partnership to make any distributions to such Limited Partner in respect of its frozen interest after the delivery of such notice and for so long as the interest is frozen, other than liquidating distributions pursuant to 10.2 in an amount equal to the positive balance in its Capital Account, after payment to each other Partner of its final liquidating distribution in accordance with 10.2 and subject in all events to compliance with applicable law.

(ii)     In the alternative, the General Partner, subject to compliance with applicable law, may cause the Partnership to redeem such Limited Partner's frozen interest using Partnership funds at a price equal to the least of (1) the amount such Limited Partner has contributed to the Partnership, (2) the balance in such Limited Partner's Capital Account as of the date of delivery of the notice described in 15.4(c)(i) or (3) the amount such Limited Partner would be entitled to receive under 10.2 if the Partnership were liquidated as of the date of delivery of such notice and all of the Partnership's assets were sold for their respective fair market values; provided, however, that the General Partner shall cause the Partnership to redeem such Limited Partner's interest at such price as may be required by law, regulation or government order.

(d)     Each Limited Partner acknowledges and agrees that the Partnership or General Partner may release confidential information regarding such Limited Partner and, if applicable, any of its beneficial owners, to government authorities if the General Partner, in its sole discretion, reasonably determines that releasing such information is in the best interest of the Partnership in light of the Anti-Money Laundering Laws or other applicable laws concerning money laundering, criminal activities or government sanctions.  Each Limited Partner acknowledges and agrees that the General Partner, without the consent of any Limited Partner or other Person and notwithstanding any other provision of this Agreement, including without limitation 13.1, may amend any provision of this Agreement in order to effectuate the intent of this 15.4, provided that, to the maximum extent possible, any such amendment shall be effected in such a manner that the intent, spirit, operation and effect of the allocation, distribution and other provisions of this Agreement are preserved after taking into account the actions taken by the Partnership and the General Partner pursuant to this 15.4.

(e)     Notwithstanding any other provision of this Agreement (including 13.1) or of any Subscription Agreement, the General Partner, on its own behalf or on behalf of the Partnership, may, in its sole discretion and without the approval of any Limited Partner or any other Person, agree in writing with any Limited Partner to alternate representations and covenants reasonably designed to ensure compliance with applicable anti-money laundering and other criminal laws, regulations and administrative pronouncements and government sanctions, and thereby expressly waive compliance with all or any part of this 15.4.  The Partners agree that any

ACTIVE/88165299.2

terms contained in such writing to or with a Limited Partner shall govern with respect to such Limited Partner notwithstanding the provisions of this Agreement or of any Subscription Agreement.

## 15.5    FEEDER ENTITY PROVISIONS.

### 15.5.1    General.

The General Partner may organize and operate one or more investment vehicles (the "**Feeder Entities**") to be admitted as Limited Partners for the purpose of permitting certain investors to invest, through such Feeder Entities, in the Partnership.  Each Feeder Entity shall be designated as such by the General Partner in the books and records of the Partnership.  To the greatest extent possible, each holder of an equity interest in a Feeder Entity (an "**Equity Holder**") shall have the same rights and obligations with respect to the Partnership as such Equity Holder would have had if its interest in the Partnership was held as a Limited Partner of the Partnership rather than as an Equity Holder, and the provisions of this Agreement shall be interpreted and enforced in a manner to give effect thereto.  15.5.2 through 15.5.5 are included herein by way of example only and without limitation.  Subject to the other provisions of this Agreement, the General Partner may accept an additional Subscription from a Feeder Entity.

### 15.5.2    Effect on Equity Holder's Default.

The provisions of 6.3 shall apply to each Feeder Entity, with respect to each of its Equity Holders, as if such Equity Holder held an interest directly in the Partnership rather than through such Feeder Entity.  In particular, upon the default of any Equity Holder in making required contributions to a Feeder Entity (or any failure to return distributions to a Feeder Entity in order to enable the Feeder Entity to meet its obligations pursuant to 12.4) and a corresponding failure of such Feeder Entity to make its required capital contributions (or return of distributions) to the Partnership, 6.3 shall be interpreted and applied as necessary to ensure, to the extent feasible, that only the defaulting Equity Holder, and no other Equity Holder of such Feeder Entity, is adversely affected as a result of the defaulting Equity Holder's default.  For this purpose, rather than notifying such Feeder Entity that it will become a Defaulting Partner, the General Partner may notify such Feeder Entity that if payment is not made by such Partner, (a) a Default Charge will be applied to a portion of the Contribution of such Feeder Entity corresponding to the respective capital commitment to such Feeder Entity of the Equity Holder who has failed to contribute capital to such Feeder Entity and (b) to the extent that General Partner has so elected, the vote or consent of such Feeder Entity shall be based upon the Subscription of such Feeder Entity less a corresponding amount equal to the commitment to contribute capital to such Feeder Entity by such Equity Holder.  For purposes of the reallocation of the Default Charge pursuant to 6.2.3, any Default Charge imposed on a Feeder Entity may be allocated to such Feeder Entity to reflect amounts which otherwise would have been allocated to the non-defaulting Equity Holders of such Feeder Entity.  Without limiting the generality of the foregoing, in lieu of imposing a Default Charge on a Feeder Entity, the General Partner may, on the terms set forth in 6.2.2(c), cause such Feeder Entity to sell a proportionate share of its interest in the Partnership that is attributable to the defaulting Entity Holder or, in the alternative, cause such Feeder Entity to cause such Equity Holder to sell its interest in such Feeder Entity.  If an Equity Holder fails to contribute capital to a Feeder Entity when required, such Feeder Entity shall not be separately

obligated to contribute such amount to the Partnership (unless and until such Equity Holder makes its contribution) and notwithstanding 6.1.1 may make a partial contribution; *provided*, *however*, that such Feeder Entity takes reasonable steps to pursue the contribution to such Feeder Entity of the Equity Holder that has failed to make its required contribution.  The Partners agree that the liability of the general partner of any Feeder Entity in respect of the contribution and payment obligations of such Feeder Entity to the Partnership shall be limited to its proportionate share of such amounts based on its capital commitment to such Feeder Entity relative to the aggregate capital commitments to such Feeder Entity.

### 15.5.3   Expenses; Subsequent Closings

Expenses of or relating to a Feeder Entity shall be paid by, and treated as expenses of, the Partnership.  In the event of adjustment of expenses or allocations as contemplated by 8.4, or returns of distributions pursuant to 12.4, such adjustments shall be made taking into account the dates on which each Equity Holder was admitted to its Feeder Entity.

### 15.5.4   Voting and Consents

In counting votes of the Limited Partners (or groups of Limited Partners) for any purpose under this Agreement, the vote of a Feeder Entity shall be divided into separate votes for, against and not voting with respect to any matter based on the numbers of affirmative and negative responses received (or lack of responses) of the Equity Holders of such Feeder Entity, appropriately adjusted where the vote or consent is by a group of Limited Partners and some, but not all, of such Equity Holders are members of such group.  For purposes of this 15.5.4, each Equity Holder's vote shall be deemed to constitute the vote of a Limited Partner whose Subscription equals the Subscription of such Feeder Entity multiplied by a percentage, the numerator of which is such Equity Holder's capital commitment made indirectly through such Feeder Entity and the denominator of which is the aggregate capital commitments made indirectly through such Feeder Entity with respect to its Subscription (taking into account 15.5.2 and including, without limitation, treating an Equity Holder as a non-voting Defaulting Partner in the manner contemplated by 6.2.5(d)) in the event that an Equity Holder defaults with respect to a capital contribution.  For purposes of 13.2, a Feeder Entity may execute written consents with respect to only a portion of its interest in the Partnership in the manner contemplated by this 15.5.4.

### 15.5.5   Notice and Other Rights

Any notices or reports required to be given to the Limited Partners shall be sent concurrently to the Equity Holders; and the Equity Holders shall be afforded the same inspection rights provided to Limited Partners under 14.2, subject to the limitations set forth therein and Delaware law.

[REMAINDER OF THIS PAGE LEFT BLANK INTENTIONALLY.]

ACTIVE/88165299.2

*Proprietary and Confidential*

IN WITNESS WHEREOF, the undersigned have executed this Limited Partnership Agreement of Romulus EquipmentShare Growth L.P. as of the day, month and year first above written.

GENERAL PARTNER:

ROMULUS CAPITAL PARTNERS II, LLC

By: _____
     Neil Chheda, Manager

[Signature Page to Limited Partnership Agreement]

*Proprietary and Confidential*

**Romulus EquipmentShare Growth L.P.**

**[Limited Partner Signature Page Attached to Subscription Agreements]**

[Limited Partner Signature Page to Limited Partnership Agreement]

*Proprietary and Confidential*

APPENDIX I

## ROMULUS EQUIPMENTSHARE GROWTH L.P.

### DEFINITIONS

For purposes of this Agreement, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both singular and plural forms of the terms so defined).  Additional defined terms are set forth in the provisions of this Agreement to which they relate.

| | |
|---|---|
| **Additional Partner** | As set forth in 3.3.1. |
| **Advisers Act** | The U.S. Investment Advisers Act of 1940, as amended. |
| **Affiliate** | With respect to the Person to which it refers, a Person that directly or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, such subject Person.  For this purpose, each Principal shall be deemed to be an Affiliate of the General Partner, but the Target Company, portfolio companies and alternative investment vehicles of an Other Fund shall not be considered Affiliates of the General Partner, any Principal, any partner of the General Partner or member of the Management Company. |
| **Agreement** | As set forth in 2.1.3. |
| **Anti-Money Laundering Laws** | As set forth in 15.4. |
| **Assignment Agreement** | The Agreement between any Limited Partner and transferee thereof effecting the assignment of such Limited Partner's interest in the Partnership, in whole or in part, to such transferee. |
| **Business Day** | Each Monday, Tuesday, Wednesday, Thursday and Friday which is not a day on which banking institutions in the City of Boston, Massachusetts, are required by law to remain closed. |
| **Capital Account** | As set forth in 8.1.1. |
| **Carried Interest** | The General Partner's share of the profits and losses and distributions of the Partnership other than the share that is attributable to its Contribution (including any deemed contributions made pursuant to Article 6) and its share of any special allocations and corresponding distributions made pursuant to 8.3 and 7.3.5. |
| **Certificate** | As set forth in 2.1.1. |

I-1

| | |
|---|---|
| **Code** | The United States Internal Revenue Code of 1986, as amended from time to time, or any successor statute thereto. |
| **Contribution** | With respect to any Partner at any time, the aggregate amount of capital contributions made to the Partnership by such Partner, adjusted in accordance with the other provisions of this Agreement including, without limitation, 6.2 (relating to the return of contributions subject to subsequent drawdown) and 6.3.3 (relating to the imposition of a Default Charge), but excluding the contribution of an interest-equivalent amount pursuant to 3.3.1(b) and 6.3.1 and amounts contributed pursuant to 10.5.3 and 12.4. |
| **Covered Person** | As set forth in 12.1.1. |
| **Damages** | As set forth in 12.2.1. |
| **Default Charge** | As set forth in 6.2.3. |
| **Default Rate** | As set forth in 6.2.1. |
| **Defaulting Partner** | As set forth in 6.2.2. |
| **Delaware Act** | As set forth in 2.1.1. |
| **Delayed Payment Interest** | Partnership income attributable to (a) interest paid by any Partner pursuant to 6.2.1; (b) interest on costs of collecting unpaid capital contributions paid by any Partner; and (c) interest paid by any Partner pursuant to 7.4.2 (relating to Tax Liability). |
| **Distributed Profit** | As of any determination date, the excess (if any) of (x) the aggregate distributions made by the Partnership to the Partners as of such date, over (y) the aggregate Contributions of the Partners as of such date. |
| **Equity Holder** | As set forth in 15.5.1. |
| **ERISA** | The United States Employee Retirement Income Security Act of 1974 and (unless the context otherwise requires) the rules and regulations promulgated thereunder, as amended from time to time, or any successor statute thereto. |
| **ERISA Partner** | Any Limited Partner that (a) is (1) an "employee benefit plan" within the meaning of Section 3(3) of ERISA and subject to Part 4 of Subtitle B of Title I of ERISA, (2) a "plan," as defined in Section 4975(e)(1) of the Code, to which the provisions of Section 4975 of the Code are applicable, or (3) any other entity or account, any of the assets of which constitute "plan assets," within the meaning of ERISA, of a plan described in (1) or (2) above and (b) has notified the General Partner of such status in writing in its Subscription Agreement or |

I-2

|  | Assignment Agreement. |
|---|---|
| **ERISA Withdrawal Date** | As set forth in 15.2.3. |
| **Feeder Entities** | As set forth in 15.5.1. |
| **GAAP** | U.S. generally accepted accounting principles, consistently applied. |
| **General Partner** | Initially, Romulus Capital Partners II, LLC and any substituted general partner of the Partnership, each in its capacity as general partner of the Partnership. |
| **Indemnitee** | As set forth in 12.2.1. |
| **Initial Closing Date** | The date on which the General Partner holds the initial closing of the Partnership. |
| **Investment Company Act** | The United States Investment Company Act of 1940, as amended from time to time, or any successor statute thereto. |
| **Limited Partners** | As set forth in the Preamble.  For purposes of the Delaware Act, the Limited Partners shall constitute a single group or class of limited partners. |
| **Management Company** | Romulus Capital Management, LLC, or any affiliate or successors thereof. |
| **Nasdaq** | As set forth in 11.2.5. |
| **Net Gain or Loss** | The profit or loss of the Partnership determined, in accordance with U.S. federal income tax accounting principles, by:  (a) taking into account all items of income, gain, loss or expense, including any deemed gain or loss attributable to a distribution in kind, and including any items that are exempt from U.S. federal income tax (income items) or non-deductible (expense items); (b) excluding items that are taken into account in determining Temporary Investment Income or Loss; and (c) excluding items that are specially allocated pursuant to 8.3 or Appendix II (other than 1.1 of Appendix II). |
| **Net Portfolio Gain** | With respect to any fiscal year, the excess, if any, of (a) the sum of all gains realized by the Partnership during such fiscal year over (b) the sum of all losses realized by the Partnership during such fiscal year, in each case to the extent attributable to the disposition (or distribution) of Portfolio Investments by the Partnership during such fiscal year. The amount of such gains and losses shall be determined in accordance with U.S. federal income tax accounting principles rather |

ACTIVE/88165299.2

*Proprietary and Confidential*

than generally accepted accounting principles.

| | |
|---|---|
| **Non-Voting Interest** | A limited partner interest in the Partnership that does not entitle the holder to vote, consent or withhold consent with respect to any Partnership matter, including votes or consents of the Limited Partners.  Subscriptions attributable to Non-Voting Interests shall be disregarded, for purposes of 13.2, in determining both the aggregate Subscriptions of all Limited Partners and the aggregate Subscriptions of those Limited Partners voting in favor of or against a particular proposal.  Except as otherwise explicitly provided in this Agreement, any interest held by any Person as a Non-Voting Interest shall be identical to all other limited partner interests in all respects other than with regard to votes and consents. |
| **Organizational Expenses** | All expenses that are attributable to the organization of the Partnership and the sale of interests in the Partnership. |
| **Other Fund** | Any other fund managed by the General Partner, one or more Principals, or any Affiliate of the foregoing. |
| **Partners** | As set forth in the Preamble. |
| **Partnership** | As set forth in the Preamble. |
| **Partnership Agreement** | As set forth in 2.1.3. |
| **Partnership Expenses** | As set forth in 5.1.1. |
| **Partnership Information** | As set forth in 14.9.7. |
| **Person** | Any individual, general partnership, limited partnership, limited liability partnership, limited liability company, corporation, joint venture, trust, business or statutory trust, cooperative or association and the heirs, executors, administrators, legal representative, successors and assigns of such Person where the context so permits. |
| **Portfolio Investment** | An investment in the Target Company. |
| **Prime Rate** | As of any date, the prime rate of interest in effect on such date as reported in *The Wall Street Journal*. |
| **Principal** | Any individual serving from time to time as a member of the General Partner, while such individual continues to serve in such capacity.  The initial Principals will be Neil Chheda and Krishna Gupta. |
| **Public Securities** | Any United States national or regional securities exchange, including |

| | |
|---|---|
| **Market** | but not limited to the New York Stock Exchange, the American Stock Exchange, and regional United States exchanges, any internationally recognized non-United States securities exchange and any recognized United States or non-United States automated quotation system, listing service or other form of securities exchange or trading forum, and the phrase "*traded on a Public Securities Market*" means publicly traded on or through any such exchange, system, listing service or forum. |
| **Monitoring Expenses** | Insofar as they relate to the investment activities of the Partnership: compensation and expenses of employees or consultants of the General Partner or the Management Company (as applicable); and fees and expenses for administrative, clerical and related support services provided by third parties, the General Partner, or the Management Company, office space and facilities, utilities and telephone. |
| **Regulatory Allocations** | As set forth in Part 1.5 of <u>Appendix II</u>. |
| **Related Entity** | Shall mean:  (1) the Target Company, (2) the General Partner, (3) the Management Company and any other entity engaged in performing services for the Partnership or, at the Partnership's request, for the Target Company;  and (4) any Other Fund and such fund's portfolio companies and alternative investment vehicles. |
| **Restoration Amount** | With respect to any Partner and at any time, such Partner's unpaid Subscription at such time and, solely with respect to the General Partner and at such time, an additional amount equal to the amount that the General Partner would be required to return to the Partnership at that time (or within 90 days thereafter) pursuant to 10.5.3 if each asset of the Partnership were sold at such time for an amount equal to its cost, all of the Partnership's liabilities to Persons other than Partners were satisfied (to the extent possible) with Partnership funds, all items of Partnership income, gain, loss or expense were allocated to the Partners in accordance with Article 8 and the other provisions of this Agreement relating to allocations, and any remaining cash was distributed to the Partners pursuant to Article 7. |
| **SDN List** | As set forth in 15.4. |
| **Securities Act** | The United States Securities Act of 1933, as amended from time to time, or any successor statute thereto. |
| **Subscription** | With respect to any Partner, the total amount that such Partner (and any predecessor in interest of a Partner that acquired an interest in the Partnership in a Transfer) has agreed to contribute to the Partnership as set forth in the Partnership's books and records maintained in a manner consistent with the Subscription Agreements of the Partners. The phrase "aggregate Subscriptions of all Partners" shall mean the |

I-5

| | |
|---|---|
| | total of all Subscriptions of all Partners as of the time of determination. |
| **Subscription Agreement** | With respect to each Limited Partner, the agreement among such limited partner, the Partnership and the General Partner effecting the purchase and sale of such Limited Partner's interest in the Partnership. |
| **Target Company** | As set forth in 2.3. |
| **Tax Distribution** | As set forth in 7.3.1. |
| **Tax Liability** | As set forth in 7.4.1. |
| **Tax Matters Partner** | As set forth in 14.8.2. |
| **Temporary Investment Income or Loss** | The profit or loss of the Partnership determined, in accordance with U.S. federal income tax accounting principles, by: (a) taking into account only items of income, gain, loss or expense that are attributable to Temporary Investments, including any such items that are exempt from federal income tax (income items) or non-deductible (expense items); and (b) excluding items that are specially allocated pursuant to 8.3 or Appendix II. |
| **Temporary Investments** | Short-term investments of cash pending distribution or use by the Partnership to pay expenses or make Portfolio Investments. |
| **Transfer** | As set forth in 11.1. |
| **Transfer Expenses** | As set forth in 11.2.8. |
| **Treasury Regulations** | The regulations promulgated by the United States Department of the Treasury under the Code, as amended. |
| **United States; U.S.** | The United States of America. |
| **United States Person** | A "United States person" as defined in Section 7701(a)(30) of the Code. |

*Proprietary and Confidential*

APPENDIX II

## REGULATORY AND TAX ALLOCATIONS

The provisions of this <u>Appendix II</u> are included in order to enable the Partnership to comply with the requirements of Treasury Regulations Section 1.704-1(b)(2)(iv) and shall be applied and interpreted accordingly.

### 1.1    Limitation on Loss Allocations.

If and to the extent that any allocation of Net Loss, Temporary Investment Loss or other items of loss or expense to any Partner would cause such Partner's Capital Account to have a deficit balance that exceeds such Partner's Restoration Amount, or would further increase an existing deficit balance that exceeds such Partner's Restoration Amount, then such Net Loss, Temporary Investment Loss or other items of loss or expense shall be allocated first to the Capital Accounts of the other Partners in proportion to the positive balances in their respective Capital Accounts until all such Capital Accounts are reduced to zero, then to the Capital Accounts of Partners whose Restoration Amounts exceed the deficit balances, if any, in their Capital Accounts, in proportion to such excesses, until each such Partner's Capital Account has a deficit balance equal to its Restoration Amount, and then to the Capital Account of the General Partner.  If any special allocations of loss or expense are made pursuant to the preceding sentence, items of gross income and gain in subsequent periods shall be specially allocated to offset such allocations of loss or expense as promptly as possible.  For avoidance of doubt, this 1.1 shall apply prior to the application of any other provision of this <u>Appendix II</u>.

### 1.2    Qualified Income Offset.

If any Partner unexpectedly receives an adjustment, allocation or distribution described in Treasury Regulations Section 1.704-1(b)(2)(ii)(*d*)(*4*), (*5*) or (*6*), and such adjustment, allocation or distribution causes such Partner to have a deficit balance in such Partner's Capital Account that exceeds such Partner's Restoration Amount or further increases the amount of an existing deficit balance that exceeds such Partner's Restoration Amount, there shall be allocated to such Partner items of income and gain (consisting of a pro rata portion of each item of Partnership income, including gross income and gain for such fiscal period) in an amount and manner sufficient to eliminate such excess deficit Capital Account balance, to the extent required by Treasury Regulations Section 1.704- 1(b)(2)(ii)(*d*), as quickly as possible.  The preceding sentence shall apply only after all of the other allocations provided for in this Agreement have been made, including the other allocations provided for in this Appendix II.  This 1.2 is intended to constitute a "qualified income offset" provision as described in Treasury Regulations Section 1.704- 1(b)(2)(ii)(*d*), and shall be interpreted and applied in all respects in accordance with that Section.

### 1.3    Gross Income Allocation.

If any Partner has a deficit balance in its Capital Account that exceeds its Restoration Amount as of the end of any accounting period, there shall be allocated to such Partner items of Partnership income and gain (including gross income and gross gain) in the amount of such excess as quickly as possible.  An allocation pursuant to this 1.3 shall be made only if and to the extent that the

excess deficit balance in such Partner's Capital Account would exist after all allocations provided for in Article 8 and this <u>Appendix II</u> (other than 1.2 and this 1.3) have been made.

**1.4     Adjustments Under 734 and 743.**

To the extent that an adjustment to the adjusted tax basis of any Partnership asset pursuant to Section 734(b) or Section 743(b) of the Code is required, pursuant to Treasury Regulations Section 1.704-1(b)(2)(iv)(*m*), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be specially allocated among the Partners in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such section of the Treasury Regulations.

**1.5     Offsetting Allocations.**

The allocations set forth in 1.2, 1.3 and 1.4 of this <u>Appendix II</u> (the "Regulatory Allocations") are intended to enable the Partnership to comply with certain requirements of Treasury Regulations Section 1.704-1(b).  Notwithstanding any other provisions of Article 8 or this <u>Appendix II</u> (other than the Regulatory Allocations), the Regulatory Allocations shall be taken into account in allocating subsequent items of income, gain, loss and expense among the Partners so that, to the extent possible, the net amount of such allocations of subsequent items of income, gain, loss and expense and the Regulatory Allocations to each Partner shall be equal to the net amount that would have been allocated to each such Partner pursuant to the provisions of Article 8 and this <u>Appendix II</u> if the Regulatory Allocations had not occurred.

**2.     Adjustments to Reflect Changes in Interests.**

With respect to any fiscal period during which any Partner's interest in the Partnership changes, allocations under this Agreement shall be adjusted appropriately to take into account the varying interests of the Partners during such period in accordance with the requirements of Section 706(d) of the Code and the Regulations thereunder.

**3.     Special Allocations to Reflect Economic Interests.**

The General Partner is authorized to modify the allocations otherwise provided for under Article 8 and this <u>Appendix II</u>, including by specially allocating items of gross income, gain, loss, or expense among the Partners, if advised by the Partnership's tax advisors that such modifications or such special allocations will cause the Capital Accounts of the Partners to reflect more closely the Partners' relative economic interests in the Partnership as set forth in Article 7 and Article 10; *provided*, *however*, that no such modification shall reduce the aggregate amount otherwise distributable to any Limited Partner pursuant to this Agreement.

**4.     Tax Allocations.**

For federal, state and local income tax purposes, Partnership income, gain, loss, deduction or credit (or any item thereof) for each fiscal year shall be allocated to and among the Partners in order to reflect the allocations made pursuant to the provisions of Article 8 and the provisions of this <u>Appendix II</u> for such fiscal year (other than allocations of items which are not deductible or are excluded from taxable income), taking into account any variation between the adjusted tax basis and book value of Partnership property in accordance with the principles of Section 704(c) of the Code.  Notwithstanding the foregoing, the General Partner shall have the power to make

such allocations for federal, state, and local tax purposes as may be necessary to maintain substantial economic effect, or to ensure that such allocations are in accordance with the Partners' interests in the Partnership, in each case within the meaning of Section 704(b) of the Code and the Regulations thereunder.  All matters concerning allocations for federal, state or local income tax purposes, including accounting procedures, not expressly provided for by the terms of this Agreement shall be equitably determined in good faith by the General Partner.  If, however, the Partnership is required to recognize income or gain for income tax purposes under Section 684 of the Code (or a similar provision of state or local law) in respect of an in-kind distribution to a Limited Partner, then, solely for such income tax purposes, to the maximum extent permitted by applicable law (as determined by the General Partner in its reasonable discretion), the income or gain shall be allocated entirely to such Limited Partner.