UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

REPUBLIC MAXIMAL LLC, et          )
al.,                              )
                                  )
     Plaintiffs,                  )
                                  )
                                  )
                                  )   C.A. No. 22-cv-10429-MLW
     v.                           )
ROMULUS CAPITAL PARTNERS II,      )
LLC, et al.,                      )
                                  )
                                  )

     Defendants.

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                      June 25, 2024

## I.   INTRODUCTION

This is a civil securities fraud case brought by plaintiffs Republic Maximal LLC ("Republic"), Republic Master Fund, LP ("Republic Master Fund"), EquipmentShare Growth One, LP, EquipmentShare Growth Two, LP, EquipmentShare Growth Three, LP, EquipmentShare Romulus Close Two, LP, EquipmentShare Secondary One, LP, EquipmentShare Secondary Two, LP, EquipmentShare Secondary Three, LP, EquipmentShare Secondary 2020, LP, EquipmentShare Secondary II, LP, EquipmentShare Secondary III, LP, EquipmentShare Qualified 2020, LP, EquipmentShare Qualified 2020 II, LP, EquipmentShare Qualified 2020 III, LP, and EquipmentShare Qualified 2020 IV, LP, (collectively, with Republic and Republic

Master Fund, "Plaintiffs") against defendants Romulus Capital Partners II, LLC, Neil Chheda (collectively, the "Romulus Defendants"), Athena 2, Inc., SNC 1 LLC, and Apollo1 Inc. (collectively, the "Transferors").

Among other things, Plaintiffs have alleged that the Romulus Defendants violated Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), codified at 15 U.S.C. §78j(b), and SEC Rule 10b-5, codified at 17 C.F.R. §240.10b-5, by fraudulently misrepresenting that the Transferors were original investors in Romulus EquipmentShare Growth LP (the "Series A Fund") (the "Section 10(b) claim"). The Romulus Defendants filed a motion to dismiss Plaintiffs' federal and state law claims against them, which the court allowed in part and denied in part.

In moving to dismiss Plaintiffs' Section 10(b) claim, the Romulus Defendants argued that contractual non-reliance clauses barred Plaintiffs, as a matter of law, from plausibly alleging reliance on the Romulus Defendants' alleged extracontractual misrepresentations. The court held that this argument was foreclosed by Rogen v. Ilikon Corporation, 361 F.2d 260 (1st Cir. 1966), where the First Circuit held that under Section 29(a) of the Exchange Act, codified at 15 U.S.C. §78cc(a), a Section 10(b) defendant cannot invoke a non-reliance clause to establish a plaintiff's non-reliance as a matter of law. As a result, the court held that Plaintiffs had plausibly alleged reliance and denied the

Romulus Defendants' motion to dismiss Plaintiffs' Section 10(b) claim.

The Romulus Defendants now ask the court to certify its decision denying their request to dismiss Plaintiffs' Section 10(b) claim to permit them to seek an interlocutory appeal pursuant to 28 U.S.C. §1292(b) (the "Motion for Interlocutory Appeal"; Dkt. No. 69). Plaintiffs oppose this motion (the "Opposition"; Dkt. No. 72). Plaintiffs have also filed an unopposed motion to amend the Complaint (Dkt. No. 81) to add, among other things, allegations that Plaintiffs contend are relevant to their Section 10(b) claim and the Romulus Defendants' Motion for Interlocutory Appeal.

For the reasons explained below, the court is allowing both motions. The court is allowing Plaintiffs' unopposed motion to amend because it was timely filed, plaintiffs have identified valid reasons to amend, and because Federal Rule of Civil Procedure 15(a)(2) provides that courts should "freely give leave" to amend "when justice so requires." The motion to amend does not affect the merits of the Romulus Defendants' Motion for Interlocutory Appeal, which is also being allowed because, among other things, the First Circuit has not yet clearly or consistently explained the extent to which Section 29(a) limits the effect of non-reliance clauses asserted by defendants seeking to dismiss Section 10(b) suits.

3

II.   BACKGROUND

Plaintiffs filed the Complaint on March 22, 2022, alleging two federal claims brought under the Exchange Act and eleven state law claims. See Complaint (Dkt. No. 1). Most of Plaintiffs' claims relate to their decision to purchase limited partnership interests ("LP Interests") in the Series A Fund from the Transferors. See id. ¶¶199-289. Romulus is the general manager of the Series A Fund. See Complaint ¶10; Romulus Answer ¶10 (Dkt. No. 71). The Romulus Defendants brokered Plaintiffs' acquisition of the Transferors' LP Interests. See, e.g., Complaint ¶27; Romulus Answer ¶27.

Plaintiffs allege that in the conversations and emails preceding each LP Interest transaction, the Romulus Defendants misrepresented that the Transferors were original investors in the Series A Fund. See Complaint ¶¶2, 241-258. Plaintiffs contend that the Transferors were not original investors, but instead acquired their LP Interests in the Series A Fund through intervening transactions. See id. ¶¶135-156. Plaintiffs allege that by misrepresenting that the Transferors were original investors, the Romulus Defendants misled Plaintiffs into believing that they were purchasing a vastly larger percentage of the Series A Fund's partnership interests (93.59%) than they actually acquired (12.00%). See id. ¶¶2, 147. As a result, Plaintiffs allege that their LP Interests in the Series A Fund are worth at least $60

million less than the Romulus Defendants led them to believe. See id. ¶2.

Plaintiffs, the Transferors, and the Romulus Defendants executed Transfer Agreements in connection with each LP Interest transaction. See Dalsen Declaration, Exs. 1-14 (Dkt. No. 23) (providing Transfer Agreements for each LP Interest transaction). The Transfer Agreements state the price that the Transferors paid for their LP Interests, but not the size of each LP Interest relative to the Series A Fund's total LP Interests. See Ex. 1, Dalsen Decl. (hereinafter, the "Transfer Agreement").[1] Each Transfer Agreement also contains an integration clause, see Transfer Agreement §8.2, and several non-reliance clauses, pursuant to which the parties disclaimed reliance on extracontractual statements regarding the value of the LP Interests at issue, see id. §§5, 6 (the integration clause and non-reliance clauses are jointly referred to as the "non-reliance clauses").

On May 24, 2022, the Romulus Defendants and the Transferors filed motions to dismiss. See Romulus MTD (Dkt. No. 26); Transferor

---

[1] The parties agree that the terms of each Transfer Agreement are materially identical, with only the parties, sale price, and LP Interest at issue varying between agreements. See Transferor MTD Mem. at 9 (Dkt. No. 22); Romulus MTD Mem. at 9 (Dkt. No. 27); Complaint ¶¶130-134; see also Plaintiff Opp. to Transferor MTD at 7-8. Therefore, Exhibit 1 of the Dalsen Declaration is used as a representative sample that is referenced in this Memorandum and Order as the "Transfer Agreement."

MTD (Dkt. No. 21). There is not diversity of citizenship among the parties. See Complaint ¶¶5-17. Therefore, Plaintiffs relied solely on 28 U.S.C. §1331 federal question jurisdiction in bringing their claims in this court. See id. ¶18; see also Jan. 18, 2024 Order (Dkt. No. 41). The court may only exercise supplemental jurisdiction over Plaintiffs' state law claims if they "form part of the same case or controversy" as their federal claims. See 28 U.S.C. §1367. The court consequently determined that if it were to dismiss Plaintiffs' federal claims, it would be required to dismiss Plaintiffs' state law claims for lack of supplemental jurisdiction. See Jan. 18, 2024 Order at 2-3 (citing Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017)). As a result, the court bifurcated the hearing on defendants' motions to dismiss. See id. at 3-4.

The court held a hearing on the Romulus Defendants' motion to dismiss the federal claims on February 1, 2024. Clerk's Note (Dkt. No. 47). The Romulus Defendants argued that the non-reliance clauses barred Plaintiffs, as a matter of law, from plausibly alleging that they relied on the Romulus Defendants' alleged misrepresentations, as required to state a Section 10(b) claim. See Romulus MTD Mem. at 15-18 (Dkt. No. 27); Feb. 1, 2024 Hr'g Tr. 46-62 (Dkt. No. 52); Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc., 22 F.4th 1, 7 (1st Cir. 2021) (stating elements of Section 10(b) claim). This argument is consistent with the law

of the Second Circuit. See ATSI Communications, Inc. v. The Shaar Fund, Ltd., 493 F.3d 87, 105 (2d Cir. 2007) (holding that "[w]here the plaintiff is a sophisticated investor and an integrated agreement between the parties does not include the misrepresentation at issue, the plaintiff cannot establish reasonable reliance on that misrepresentation"); see also Emergent Cap. Inv. Mgmt. v. Stonepath Group, Inc., 343 F.3d 189, 196 (2d Cir. 2003) (same).

The Romulus Defendants cited two First Circuit cases that, they argued, demonstrated that the First Circuit follows the Second Circuit's approach to enforcing non-reliance clauses in Section 10(b) cases. In Kennedy v. Josephthal & Co, Inc., the First Circuit affirmed a grant of summary judgment for defendants after finding that plaintiffs had failed to demonstrate justifiable reliance on extracontractual statements that were directly contradicted by the terms of the contract at issue. 814 F.2d 798, 801, 804-05 (1st Cir. 1987). Two years later, in Jackvony v. RIHT Financial Corporation, the First Circuit affirmed a directed verdict for defendants and held that an integrated contract's non-reliance clause barred the plaintiff from establishing reliance on alleged extracontractual promises. 873 F.2d 411, 416 (1st Cir. 1989).

Plaintiffs argued that Kennedy and Jackvony were inapposite in view of an earlier First Circuit decision analyzing non-reliance clauses in a Section 10(b) suit, Rogen v. Ilikon Corporation, 361

7

F.2d 260 (1st Cir. 1966). Rogen was brought by the co-founder of a corporation who alleged that corporate officers' non-disclosure of material facts induced him to sell his shares in the corporation at an unfavorable rate. See id. at 261-62. In support of a motion for summary judgment, the defendants argued that the plaintiff could not establish reliance on their alleged misrepresentations, in part because the parties had entered into a contract containing a non-reliance clause. See id. at 265-66, 268. The First Circuit rejected this argument and held that the defendants could not invoke the non-reliance clause to establish the plaintiff's non-reliance as a matter of law. See id. at 268. This holding was premised on the First Circuit's interpretation of Section 29(a) of the Exchange Act, codified at 15 U.S.C. §78cc(a). See id. at 268. Despite their similarities with Rogen, the First Circuit did not address the implications of Section 29(a) in its subsequent Kennedy and Jackvony decisions.

Section 29(a) states that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of [the Exchange Act] or of any rule or regulation thereunder . . . shall be void." 15 U.S.C. §78cc(a). In Rogen, the First Circuit held that Section 29(a) constrains the legal effect of non-reliance clauses in Section 10(b) cases, reasoning:

> [O]n analysis, we see no fundamental difference between saying, for example, "I waive any rights I might have because of your representations or obligations to make full

disclosure" and "I am not relying on your representations or obligations to make full disclosure." Were we to hold that the existence of this provision constituted the basis (or a substantial part of the basis) for finding non-reliance <u>as a matter of law</u>, we would have gone far toward eviscerating Section 29(a).

<u>Rogen</u>, 361 F.2d at 268 (emphasis added) (footnote omitted). Therefore, in <u>Rogen</u>, the First Circuit held that defendants could not invoke the contractual non-reliance clause to establish the plaintiff's non-reliance <u>as a matter of law</u>. <u>See</u> <u>id.</u> at 269.

More than thirty years later, the Third Circuit reached a similar conclusion in <u>AES Corporation v. Dow Chemical Company</u>, 325 F.3d 174 (3rd Cir. 2003). In <u>AES Corporation</u>, The Third Circuit held that contractual non-reliance clauses may be considered as <u>evidence</u> of whether a plaintiff relied on a defendants' alleged extracontractual misrepresentations. <u>See</u> <u>id.</u> at 180. However, the court agreed with the First Circuit's reasoning in <u>Rogen</u> and held that Section 29(a) prevents a defendant from invoking a non-reliance clause to establish a plaintiff's non-reliance <u>as a matter of law</u>. <u>See</u> <u>id.</u> at 180-81.

After oral argument on this issue at the February 1, 2024 hearing, the court took the Romulus Defendants' motion to dismiss Plaintiffs' federal claims under advisement. <u>See</u> Clerk's Note (Dkt. No. 47). The court scheduled an additional hearing on the motions to dismiss Plaintiffs' state law claims for February 28, 2024. <u>See</u> Feb. 12, 2024 Order (Dkt. No. 54).

9

At the February 28, 2024 hearing, the court orally decided the motion to dismiss Plaintiffs' Section 10(b) claim. See Feb. 28, 2024 Hr'g Tr. at 5-23 (Dkt. No. 67). The transcript of this decision has been converted to a Memorandum and Order, which is attached hereto as Exhibit 1.

Citing Rogen and Section 29(a), the court held that the Romulus Defendants could not invoke the Transfer Agreements' non-reliance clauses to establish Plaintiffs' non-reliance as a matter of law on a motion to dismiss. See id. at 12-14. However, the court stated that the Romulus Defendants might be able to offer the non-reliance clauses as evidence of whether Plaintiffs in fact relied on the Romulus Defendants' alleged extracontractual misrepresentations. See id. at 13 (citing AES Corporation, 325 F.3d at 180). The court stated that Kennedy and Jackvony did not alter its reasoning, largely because the First Circuit did not address the applicability of Section 29(a) in either case, and because both cases were decided in different postures—Kennedy on a motion for summary judgment and Jackvony on a motion for a directed verdict. See id. at 14. Having resolved the reliance issue, the court held that Plaintiffs had plausibly alleged facts that, if true, would prove each element of their Section 10(b) claim and denied the Romulus Defendants' motion to dismiss Plaintiffs' federal claims. See id. at 23.

At the conclusion of the February 28, 2024 hearing, the court allowed in part and denied in part the Romulus Defendants' and Transferors' motions to dismiss Plaintiffs' state law claims. See id. at 107-117. On February 29, 2024, the court issued an Order memorializing its oral rulings, see Order (Dkt. No. 61), and a Scheduling Order establishing various pretrial deadlines, see Scheduling Order (Dkt. No. 62).

On March 22, 2024, the Romulus Defendants filed the Motion for Interlocutory Appeal (Dkt. No. 69). The Romulus Defendants request leave to appeal the court's decision that, under Rogen and Section 29(a), the Transfer Agreements' non-reliance clauses do not bar Plaintiffs from plausibly pleading, in the context of a motion to dismiss, reliance on the Romulus Defendants' alleged extracontractual misrepresentations as a matter of law. See id. at 2. Plaintiffs opposed the motion on March 29, 2024. See Opposition (Dkt. No. 72). The Romulus Defendants filed a reply on April 17, 2024. See Reply (Dkt. No. 80).

Pursuant to the February 29, 2024 Scheduling Order, Republic moved to amend the Complaint on April 29, 2024, pursuant to Federal Rule of Civil Procedure 15 ("Rule 15"). See Mot. to Amend (Dkt. No. 81); Mot. to Amend Mem. (Dkt. No. 82). Republic's counsel, Daniel C. Mazanec, reported that he had conferred with defendants' counsel, who were "evaluating the proposed amendment but [had] not yet determined whether they [would] oppose it." Mot. to Amend at

2. Under Rule 15(a)(3), any opposition to the motion to amend was due by May 13, 2024. See Fed. R. Civ. P. 15(a)(3); see also Local Rule 7.1(b)(2) (same). Neither the Romulus Defendants nor the Transferors have filed an opposition.

III. DISCUSSION

A. Republic's Motion to Amend

Republic has moved to amend its Complaint "for three discrete reasons." Mot. to Amend at 1. First, Republic proposes to eliminate dismissed parties and claims, as well as related allegations. See id. Second, Republic proposes to add allegations that the Romulus Defendants and Transferors represented, within the four corners of the Transfer Agreements, that the Transferors has "subscriptions" to the Series A Fund. See id. Finally, Republic proposes to add a state law consumer protection claim. See id. Defendants have not opposed this motion and the time for doing so has passed. See Fed. R. Civ. P. 15(a)(3); Local Rule 7.1(b)(2).

Rule 15(a)(2) provides that a district court "should freely give leave" for a plaintiff to amend their complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). A court should only deny a motion to amend when it is "characterized by 'undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'" Calderon-Serra v. Wilmington Trust Co., 715 F.3d 14, 19 (1st Cir. 2013) (quoting Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006)); see also Foman v. Davis, 83 S.Ct. 227, 230

12

(1962). While this standard weighs in favor of allowing motions to amend, a plaintiff must nevertheless present a "valid" reason to amend the complaint. Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 37 (1st Cir. 2022). "Generally, valid reasons include a motion to dismiss or a ruling from the court pointing out flaws in the original pleading or the discovery of new information. This is not a high hurdle, and the dispositive datum often will be the reasonableness of the pleader's actions." Id.

Republic has timely moved to amend the Complaint. See Scheduling Order ¶2. It has also identified valid reasons for doing so. See Amyndas Pharms., 48 F.4th at 37. The proposed amendment will streamline the Complaint by removing dismissed parties, claims, and related allegations. See Mot. to Amend at 1; Mot. to Amend, Ex. A (red-lined copy of proposed amended complaint); cf. Amyndas Pharms., 48 F.4th at 37. In addition, the new allegations and the state law claim do not widen the scope of litigation or discovery and are substantially related to the allegations and claims in the original Complaint. See Mot. to Amend Mem. at 3-4; cf. Amyndas Pharms., 48 F.4th at 37. As defendants have not opposed the motion to amend and Plaintiffs have identified valid reasons

for amending, the motion to amend is being allowed. <u>See</u> Fed. R. Civ. P. 15(a)(3); Local Rule 7.1(b)(2).[2]

B. <u>The Romulus Defendants' Motion for Interlocutory Appeal</u>

As explained earlier, the Romulus Defendants have moved, pursuant to 28 U.S.C. §1292(b), for an interlocutory appeal of the court's order denying their motion to dismiss Plaintiffs' Section 10(b) claim. <u>See</u> Motion for Interlocutory Appeal at 2. They seek to appeal a single legal question:

> Whether, in an action for securities fraud under Section 10(b) of the Securities Exchange Act of 1934, sophisticated plaintiffs who signed integrated agreements containing certain specific representations among the parties and expressly disclaiming reliance on extracontractual representations cannot, as a matter of law, establish reasonable reliance on alleged misrepresentations not contained in the agreements.

<u>Id.</u> at 2.

Pursuant to 28 U.S.C. §1292(b), a district court:

> may certify an otherwise non-appealable order for interlocutory review by the Court of Appeals if the order (1) involves a controlling question of law (2) as to which there are grounds for a substantial difference of opinion and (3) an immediate appeal would materially advance the ultimate termination of the litigation.

<u>Waters v. Day & Zimmermann NPS, Inc.</u>, No. CV 19-11585-NMG, 2020 WL 4754984, at *1 (D. Mass. Aug. 14, 2020) (citing 28 U.S.C.

---

[2] As explained in section III.B., the court's decision to allow Plaintiffs' motion to amend does not affect the merits of the Motion for Interlocutory Appeal.

§1292(b)). "As a general rule," the First Circuit "do[es] not grant interlocutory appeals from a denial of a motion to dismiss." Caraballo-Seda v. Municipality of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005); see also McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir. 1984) (same). Therefore, courts should only certify an issue for interlocutory appeal in "exceptional circumstances" where "the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." Caraballo-Seda, 395 F.3d at 9.

"A question of law is 'controlling' if reversal would terminate the action." Waters, 2020 WL 4754984, at *2 (citing Philip Morris Inc. v. Harshbarger, 957 F.Supp. 327, 330 (D. Mass. 1997)). As a result, this requirement is "closely tied" to the requirement that an immediate appeal must "materially advance the ultimate termination of the litigation." Id. (citing Philip Morris, 957 F.Supp. at 330). "[A] controlling question typically implicates a pure legal principle that can be resolved without extensive consultation to the record and commonly involves 'a question of the meaning of a statutory or constitutional provision.'" Id. at *2 (quoting S. Orange Chiropractic Ctr., LLC v. Cayan LLC, No. CV 15-13069-PBS, 2016 WL 3064054, at *2 (D. Mass. May 31, 2016)).

As explained below, the proposed appeal presents a "difficult and pivotal question[] of law not settled by controlling

authority." <u>Caraballo-Seda</u>, 395 F.3d at 9. Moreover, this question "implicates a pure legal principle that can be resolved without extensive consultation to the record." <u>Waters</u>, 2020 WL 4754984, at *2. Therefore, this is one of the "exceptional circumstances" in which interlocutory certification is warranted under 28 U.S.C. §1292(b). See <u>Caraballo-Seda</u>, 395 F.3d at 9.

"[T]here are grounds for a substantial difference of opinion," both within the First Circuit and among the Federal Circuits, regarding the weight that courts should give contractual non-reliance clauses in Section 10(b) cases. See 28 U.S.C. §1292(b). The First Circuit has not clearly or consistently explained the implications of Section 29(a) for non-reliance clauses in such cases. As discussed earlier, the First Circuit wrote in <u>Rogen</u> that, if it were to hold that non-reliance clauses constitute "the basis (or a substantial part of the basis) for finding non-reliance as a matter of law, [the court] would have gone far toward eviscerating Section 29(a)." <u>Rogen</u>, 361 F.2d at 268. Yet, in <u>Jackvony</u>, the First Circuit relied on the non-reliance clause of an integrated contract in affirming a directed verdict for defendants, holding that no reasonable juror could have found that the plaintiff relied on the defendants' alleged extracontractual statements. See <u>Jackvony</u>, 873 F.2d at 416-17. Although <u>Jackvony</u> involved a Section 10(b) claim, the First Circuit did not discuss the applicability of either <u>Rogen</u> or Section 29(a)

in its decision. Therefore, it remains unclear whether, and to what extent, the First Circuit implicitly abrogated Rogen when it decided Jackvony.[3]

The Federal Circuits are also split on this issue. The Romulus Defendants have cited cases in which the Second, Seventh, and D.C. Circuits held, on motions to dismiss, that non-reliance clauses barred plaintiffs from plausibly alleging the essential reliance element of a Section 10(b) claim. See ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd., 493 F.3d 87, 105 (2d Cir. 2007); Cornielsen v. Infinium Capital Management, LLC, 916 F.3d 589, 597 (7th Cir. 2019); One-O-One Enters., Inc. v. Caruso, 848 F.2d 1283, 1287 (D.C. Cir. 1988). As discussed earlier, these decisions conflict with the First Circuit's decision in Rogen and the Third Circuit's decision in AES Corporation. Indeed, this court noted at the February 1, 2024 hearing that, if it were in the Second Circuit, it would likely dismiss Plaintiffs' Section 10(b) claim. See Feb. 1, 2024 Hr'g Tr. 58:20-23.

---

[3] The Romulus Defendants also cited Kennedy in support of their argument that it is possible, in the First Circuit, to invoke non-reliance clauses to establish a plaintiff's non-reliance as a matter of law. See Romulus MTD Mem. at 16 (Dkt. No. 27). However, the First Circuit did not discuss whether the contract at issue in Kennedy contained a non-reliance clause. Instead, the court held that the plaintiffs could not have reasonably relied on alleged misrepresentations that were specifically contradicted by the terms of the contract. See Kennedy, 814 F.2d at 804-05.

The issue that the Romulus Defendants seek to appeal—namely, whether non-reliance clauses preclude sophisticated plaintiffs from establishing reliance as a matter of law—is also a "controlling question of law." See 28 U.S.C. §1292(b). This issue "implicates a pure legal principle that can be resolved without extensive consultation to the record." Waters, 2020 WL 4754984, at *2. Moreover, the proposed appeal will give the First Circuit the opportunity to resolve uncertainty concerning the meaning of Section 29(a). These facts weigh in favor of finding that the proposed appeal involves a controlling question of law. See id.

Finally, an immediate appeal of this issue "may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). The original Complaint only pleads reliance on the Romulus Defendants' alleged extracontractual misrepresentations—specifically, representations made during the conversations and emails preceding each LP Interest transaction. See Complaint ¶¶241-258, 265. If the First Circuit concludes that the Transfer Agreements' non-reliance clauses bar Plaintiffs from pleading reliance on extracontractual statements as a matter of law, Plaintiffs will have failed to plausibly plead the essential reliance element of their Section 10(b) claim. See Carbonite, 22 F.4th at 7 (enumerating reliance as one of the six elements of a Section 10(b) claim). If Plaintiffs cannot plausibly plead reliance, the court will be required to dismiss their federal

18

claims.[4] As explained earlier, if the court dismisses Plaintiffs' federal claims, it will be required to dismiss their remaining state law claims for lack of supplemental jurisdiction. See 28 U.S.C. §1367; Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017).

Plaintiffs contend that they can plead the reliance element of their Section 10(b) claim even if the First Circuit reverses this court. See Opposition at 9. Unlike the original Complaint, the First Amended Complaint ("FAC") alleges, for the first time, that the Romulus Defendants made material misrepresentations within the four corners of the Transfer Agreements. See FAC ¶¶125-126 (Dkt. No. 90). Specifically, the FAC alleges that each Transfer Agreement contained a provision stating that each Transferor was "a Limited Partner with a Subscription to the [Series A Fund]." Id. ¶125 (emphasis altered); see also Transfer Agreement at 1.

Citing to the Romulus Defendants' counterclaims against Plaintiffs, Plaintiffs contend that "subscribe" is a term of art in the venture capital industry indicating that an entity is an original investor in a fund. See Opposition at 9-10 (quoting

---

[4] Plaintiffs' second federal claim is a "control-person" claim brought against Chheda under Section 20(a) of the Exchange Act. See Complaint ¶¶270-273. This claim is derivative of Plaintiffs' Section 10(b) claim. See ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 67 (1st Cir. 2008). Therefore, if the court dismisses Plaintiffs' Section 10(b) claim, it must also dismiss their Section 20(a) claim.

Romulus Defendants' Counterclaims ¶21 (Dkt. No. 71)).[5] Plaintiffs consequently argue that they can plead reliance without relying on extracontractual statements, because the Romulus Defendants represented that the Transferors were original investors in the Series A Fund within the four corners of the Transfer Agreements. See Opposition at 9-10.

Plaintiffs' contention is not correct because the term "Subscription," as it is defined in the Transfer Agreements, encompasses both original and subsequent investors in the Series A Fund. The Transfer Agreements state that "[c]apitalized terms not otherwise defined herein have the same meaning as in the Limited Partnership Agreement of the Partnership (the 'Partnership Agreement')." Transfer Agreement at 1. The Transfer Agreements do not define the term "Subscription." See Transfer Agreement §1 (defining terms). Therefore, it is necessary to refer to the Partnership Agreement, which defines "Subscription" as "the total amount that [a] Partner (and <u>any predecessor in interest of a Partner that acquired an interest in the Partnership in a Transfer</u>) has agreed to contribute to the Partnership . . .." Reply, Ex. 1, at I-5 (Dkt. No. 80-1) (emphasis added).

---

[5] The Romulus Defendants have filed a document titled "Answer, Affirmative Defenses, Counterclaims, and Third-Party Claims of Defendants Romulus Capital Partners II, LLC and Neil Chheda" (Dkt. No. 71). The Counterclaims cited in this Memorandum and Order begin on page 93 of this document.

Therefore, the Partnership Agreement explicitly defines "Subscription" to encompass both original and subsequent investors. See id. The court must interpret contracts according to their plain terms and, whenever possible, ensure that each word is given effect. See DeWolfe v. Hingham Ctr., Ltd., 464 Mass. 795, 803-04 (2013); Osborn ex rel. Osborn v. Kemp, 991 A.2d 1153, 1159 (Del. 2010). Therefore, the court must employ the Partnership Agreement's definition of "Subscription" when interpreting the Transfer Agreements. See Transfer Agreement at 1. Whatever meaning the term "subscription" might carry in the realm of venture capital, that meaning does not supersede the express definition of the term adopted by the parties.

Therefore, Plaintiffs' have failed to plausibly allege that the Romulus Defendants made material misrepresentations within the four corners of the Transfer Agreements, upon which Plaintiffs could have reasonably relied. Cf. Opposition at 9-10. If the First Circuit reverses this court and holds that the Transfer Agreements' non-reliance clauses bar Plaintiffs from establishing reliance on extracontractual statements as a matter of law, this court will be required to dismiss Plaintiffs' federal claims. In addition, if the court dismisses Plaintiffs' federal claims, it intends to dismiss Plaintiffs' state law claims for lack of supplemental jurisdiction. The court, therefore, finds that an immediate appeal

is likely to "materially advance the ultimate termination of the litigation." <u>See</u> 28 U.S.C. §1292(b).

IV.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Plaintiffs' Motion to Amend the Complaint (Dkt. No. 81) is ALLOWED.

2. The Romulus Defendants' Motion for Interlocutory Appeal (Dkt. No. 69) is ALLOWED.

UNITED STATES DISTRICT JUDGE