UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

REPUBLIC MAXIMAL LLC, et )
al.,                     )
                         )
     Plaintiffs,         )
                         )
                         )
                         )    C.A. No. 22-cv-10429-MLW
     v.                  )
ROMULUS CAPITAL PARTNERS II, )
LLC, et al.,             )
                         )
                         )

     Defendants.

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                              June 25, 2024

     This Memorandum is based on the part of the transcript of the
February 28, 2024 hearing in which the court explained its decision
denying defendants Romulus Capital Partners II, LLC, and Neil
Chheda's (collectively, the "Romulus Defendants") motion to
dismiss Plaintiffs'[1] federal claims, which were brought under
Section 10(b) and Section 20(a) of the Securities and Exchange Act

---

[1] The federal claims were brought by plaintiffs Republic Maximal
LLC, Republic Master Fund, LP, EquipmentShare Growth One, LP,
EquipmentShare Growth Two, LP, EquipmentShare Growth Three, LP,
EquipmentShare Romulus Close Two, LP, EquipmentShare Secondary
One, LP, EquipmentShare Secondary Two, LP, EquipmentShare
Secondary Three, LP, EquipmentShare Secondary 2020, LP,
EquipmentShare Secondary II, LP, EquipmentShare Secondary III, LP,
EquipmentShare Qualified 2020, LP, EquipmentShare Qualified 2020
II, LP, EquipmentShare Qualified 2020 III, LP, and EquipmentShare
Qualified 2020 IV, LP. Throughout this Memorandum and Order, these
parties are referred to collectively as "Plaintiffs."

of 1934 (the "Exchange Act"). This Memorandum adds a more detailed explanation of the alleged misrepresentations, as well as headings and citations, and it clarifies and amplifies some language.

## I.   BACKGROUND

We are here pursuant to my February 2, 5, and 12, 2024 Orders (Dkt. Nos. 48, 50, 54). In the February 5 Order, I informed the parties that, following the lengthy February 1, 2024 hearing, I had decided to deny the Romulus Defendants' motion to dismiss the two federal claims. I will now explain that decision.

This case arises from a series of transactions that were structured by two investment entities, plaintiff Republic Maximal LLC ("Republic") and Defendant Romulus Capital Partners II, LLC ("Romulus"). Defendant Neil Chheda ("Chheda") is the co-founder and managing partner of Romulus. See Complaint ¶14 (Dkt. No. 1).

These transactions concerned limited partnership interests ("LP Interests"), in an investment fund called Romulus EquipmentShare Growth LP (the "Series A Fund"). The Series A Fund was created by Romulus for the sole purpose of investing in a startup called EquipmentShare. See id. ¶¶2, 11. Thus, the value of LP Interests in the Series A Fund are fully determined by the value of EquipmentShare. See id. ¶2.

Republic created multiple entities (or "series") under the Republic Master Fund for the sole purpose of purchasing LP

Interests in the Series A Fund (collectively, these entities are referred to as the "Series A Plaintiffs").[2] See id. ¶7. Over the course of five transactions (the "LP Interest Transactions"), the Series A Plaintiffs purchased LP Interests owned by defendants Athena 2, Inc. ("Athena"), SNC 1 LLC ("SNC"), and Apollo1 Inc. ("Apollo") (collectively, the "Transferors"). See id. ¶¶27-129. Plaintiffs allege that the Romulus Defendants misrepresented the value of the Transferors' LP Interests during the negotiations proceeding each transaction. Specifically, Plaintiffs allege that the Romulus Defendants misled Plaintiffs into believing that the Transferors owned an inaccurately large share of the Series A Fund's total LP Interests. See, e.g., id. ¶2. Plaintiffs also allege that the Romulus Defendants failed to disclose that Chheda's father, Vasant Chheda, was the founder and CEO of each of the Transferors. See id. ¶¶148-156.

The Complaint alleges two federal claims, id. ¶¶264-273, and eleven state law claims, id. ¶¶199-263, 274-313. The parties are not diverse. See id. ¶¶5-17. Therefore, Plaintiffs rely solely on

---

[2] The Series A Plaintiffs are comprised of: plaintiffs EquipmentShare Growth One, LP, EquipmentShare Growth Two, LP, EquipmentShare Growth Three, LP, EquipmentShare Romulus Close Two, LP, EquipmentShare Secondary One, LP, EquipmentShare Secondary Two, LP, EquipmentShare Secondary Three, LP, EquipmentShare Secondary 2020, LP, EquipmentShare Secondary II, LP, EquipmentShare Secondary III, LP, EquipmentShare Qualified 2020, LP, EquipmentShare Qualified 2020 II, LP, EquipmentShare Qualified 2020 III, LP, and EquipmentShare Qualified 2020 IV, LP. Complaint ¶7.

federal question jurisdiction under 28 U.S.C. §1331 in bringing their claims in this court. Id. ¶18. I may exercise supplemental jurisdiction over the state law claims only so long as they "form part of the same case or controversy" as the federal claims. 28 U.S.C. §1367.

The Romulus Defendants and the Transferors have filed motions to dismiss all claims in this case. If the court were to dismiss the federal claims, it would be required to dismiss Plaintiffs' state law claims for lack of federal jurisdiction. See Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017). Therefore, I bifurcated the hearing on the motions to dismiss. See Jan. 18, 2024 Order (Dkt. No. 41). The hearing on the Romulus Defendants' motion to dismiss the federal claims (Counts 6 and 7 of the Complaint), was held on February 1, 2024. See Clerk's Note (Dkt. No. 47).

As I indicated previously, I am denying the motion to dismiss the two federal claims. The Complaint plausibly alleges, pursuant to Federal Rules of Civil Procedure 8 and 9, and the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. §78u-4, that the Romulus Defendants violated Section 10(b) of the Exchange Act. Plaintiffs' Section 20(a) claim is derivative of their Section 10(b) claim. See In re Stone & Webster, Inc., Sec. Litig., 424 F.3d 24, 27 (1st Cir. 2005). Therefore, I also find that the Complaint plausibly alleges that Chheda violated Section 20(a) of the Exchange Act. In addition, I find that Republic, Republic

4

Master Fund, and the Series A Plaintiffs have standing to bring these claims. Therefore, the Romulus Defendants' motion to dismiss the federal claims is being denied.

## II.   THE MOTION TO DISMISS STANDARD

As was discussed at the February 1, 2024 hearing on this motion to dismiss, I must consider the allegations in the Complaint and documents referred to in the Complaint that are central to Plaintiffs' claims. See Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998); Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993). I must accept all factual allegations as true and draw all reasonable inferences in favor of Plaintiffs. See Rodriguez-Ortiz v. Marao Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007); Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009). Ultimately, I must decide if the Complaint's allegations establish a plausible claim for relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III. DISCUSSION

### A. Standing

As I said, I find that Plaintiffs have plausibly alleged standing. The Romulus Defendants do not argue that Republic and Republic Master Fund cannot satisfy the constitutional elements as standing as defined in Lujan v. Defenders of Wildlife, 112 S.Ct.

2130, 2137 (1992). Rather, they challenge Republic and Republic Master Fund's standing under <u>Blue Chip Stamps v. Manor Drug Store</u>, a Supreme Court decision holding that "a private damages action under Rule 10b-5 is confined to actual purchasers or sellers securities." 95 S.Ct. 1917, 1919 (1975).

Although the Series A Plaintiffs were the technical "purchasers" of the LP Interests, Republic and Republic Master Fund were so integral to negotiating, structuring, and executing the transactions that they were, in essence, the "actual purchasers" of the LP Interests. See <u>Grubb v. Federal Deposit Ins. Corp.</u>, 868 F.2d 1151, 1161 (10th Cir. 1989)

Moreover, the policy concerns expressed in <u>Blue Chip</u> are absent here. In <u>Blue Chip</u>, the Court feared that expanding the class of potential Section 10(b) plaintiffs would invite vexatious litigation from bystanders to the securities marketing process. See <u>Blue Chip</u>, 95 S.Ct. at 1927. Republic and Republic Master Fund, however, were active participants in the transactions giving rise to this case, not mere bystanders, and they brought this suit in conjunction with the Series A Plaintiffs based on discrete allegations of fraud and economic loss. Therefore, at least for present purposes, Republic and Republic Master Fund have standing.

## B. The Section 10(b) Claim

The Romulus Defendants have argued that the Complaint fails to adequately plead five of the six elements of a Section 10(b) claim.[3] As I will explain, their arguments are not meritorious.

To state a Section 10(b) claim, the Complaint must plead six elements: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. See In re Biogen Inc. Sec. Litig., 857 F.3d 34, 41 (1st Cir. 2017). Section 10(b) claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") and the PSLRA. Under Rule 9(b), the Complaint must plead with particularity the circumstances constituting fraud or mistake. See Fed. R. Civ. P. 9(b). To do so, "[a] plaintiff must specify the 'who, what, where, and when of the allegedly false or fraudulent representation.'" Angelos v. Tokai Pharms., Inc., 494 F.Supp.3d 39, 46 (D. Mass. 2020) (quoting Rodi v. S. New England Sch. Of Law, 389 F.3d 5, 15 (1st Cir. 2004)).

Under the PSLRA, the Complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. §78u-4(b)(1)(B). A

---

[3] The Romulus Defendants do not argue that the Complaint fails to plausibly allege that the misrepresentations and omissions were made in connection with the purchase or sale of a security.

"misleading statement" is an untrue statement of material fact. 15 U.S.C. §78u-4(b)(1)(A). A statement that is not literally false can nevertheless be misleading "if a reasonable investor, in the exercise of due care, would have received a false impression from the statement." Urman v. Novelos Therapeutics, Inc. 796 F.Supp.2d 277, 283 (D. Mass. 2011) (Gorton, J.) (quoting In re Par Pharm., Inc. Sec. Litig., 733 F.Supp. 668, 677 (S.D.N.Y. 1990)). An "omission" occurs when a defendant "omit[s] to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading." §78u-4(b)(1)(A).

The court applies an objective, "reasonable investor" test to determine if a statement is misleading. See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 135 S.Ct. 1318, 1327 (2015). "A fact is material if it is substantially likely 'that the disclosure of the omitted or misrepresented fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.'" Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc., 22 F.4th 1, 8 (1st Cir. 2021) (emphasis added) (quoting Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988)). "In general, the materiality of a statement or omission is a question of fact that should normally be left to a jury rather than resolved by the Court

on a motion to dismiss." In re Cabletron Sys., Inc., 311 F.3d 11, 34 (1st Cir. 2002).

Viewed through this prism of these standards, the Complaint plausibly alleges that the Romulus Defendants repeatedly misrepresented two facts during the negotiations surrounding the LP Interest Transactions: (1) the Transferors acquired their LP Interests in connection with EquipmentShare's Series A valuation, and (2) EquipmentShare had an inaccurately low implied valuation at the time of each LP Interest Transaction. For the sake of brevity, I will explain how the Complaint plausibly alleges that the Romulus Defendants misrepresented these facts in connection with the first two LP Interest Transactions—the Athena Transaction and the First SNC Transaction. The Complaint plausibly alleges that the Romulus Defendants made similar misrepresentations in connection with the latter three LP Interest Transactions.

The Complaint alleges that during the negotiations preceding the Athena Transaction, "Republic asked Romulus to confirm the EquipmentShare valuation at which Athena acquired the Athena LP Interest." Complaint ¶39. It alleges that Chheda replied: "I believe that the precise answer to your question is: the post-money valuation at which the stake was acquired was $102,500,000"

(i.e., EquipmentShare's Series A Valuation[4]). <u>Id.</u> ¶40. The
Complaint also claims that Standish Management ("Standish"), the
Series A Fund's administrator, confirmed this figure. <u>Id.</u> ¶42. In
fact, Athena did not acquire the Athena LP Interest at
EquipmentShare's Series A Valuation or in connection with the
Series A Offering. <u>See</u> <u>id.</u> ¶53. Plaintiffs later learned that
Athena, like the other Transferors, acquired the Athena LP Interest
in an undisclosed secondary transaction after the Series A
Offering. <u>Id.</u> ¶137.

The Complaint does not allege that Chheda's statement was
literally false: Chheda referred to the valuation at which the
"stake" was acquired, not the valuation at which "Athena" acquired
the LP Interest. <u>Id.</u> ¶40. The original owner of the Athena LP
Interest may have indeed acquired the "stake" at the Series A
Valuation. Nevertheless, since Republic had explicitly asked when
<u>Athena</u> acquired the LP Interest, a reasonable investor could infer
that Chheda misrepresented that Athena had acquired the Athena LP
Interest at the Series A valuation. <u>See</u> <u>Construction Industry</u>, 22
F.4th at 8.

Plaintiffs allege that they relied on this representation to
determine the value of the Athena LP Interest. <u>See</u> Complaint ¶¶45-

---

[4] The Romulus Defendants repeatedly stated this figure incorrectly.
EquipmentShare's Series A Valuation was $102,050,000, not
$102,500,000. <u>See, e.g.</u>, Complaint ¶¶43, 59. This appears to have
been an unintentional typographical error.

47. Although Plaintiffs knew how much Athena had paid for its LP Interest, they did not know the percentage of the Series A Fund's total LP Interests that Athena held. See id. ¶¶27-55. Since Plaintiffs believed that Athena was one of the original investors in the Series A Fund, they divided the amount that Athena paid for its LP Interest by the total original investment in the Series A Fund to calculate the relative size of Athena's LP Interest (i.e., $600,000/$3,980,000). See id. ¶46. Plaintiffs thus calculated that the Athena LP Interest represented 15.08% of the Series A Fund's total LP Interests. See id. ¶46. In fact, the Athena LP Interest only represents 2.51% of the Series A Fund's total LP Interests. Id. ¶54.

The Complaint also alleges that Chheda misrepresented, in a more unequivocal manner, when SNC acquired the First SNC LP Interest, as well as the EquipmentShare valuation implied by the First SNC Transaction. The Complaint alleges that, in advance of the First SNC Transaction, Romulus represented that EquipmentShare had an implied valuation of $1,380,000,000. See id. ¶59. Romulus did so by sending Republic the following equation: "[9,1000,000 [sic] / 675,000] * $102,500,000 = ~$1.38B." Id. ¶59 (brackets in original). To understand the significance of this equation, one must consider what the figures in this equation represent.

The fraction at the start of the equation represents SNC's asking price ($9.1 million) divided by the price it paid for the

11

First SNC LP Interest ($675,000). See id. ¶57. Chheda previously represented that the Transferors' asking prices were directly proportional to the degree by which EquipmentShare's valuation had increased while the Transferors' held their LP Interests. See id. ¶¶35, 57. Therefore, by representing that SNC was asking for roughly 13.5x what it paid for the First SNC LP Interest, Chheda impliedly represented that the Series A Fund's valuation had increased by 13.5x while SNC held the First SNC LP Interest. See id. ¶70. The next figure in the equation, $102,500,000,[5] represents EquipmentShare's Series A Valuation. Id. ¶22. The final figure, $1.38 billion, represents Chheda's calculation of EquipmentShare's implied valuation around the time of the transaction. See id. ¶59.

By representing that SNC's asking price was directly proportional to the change in EquipmentShare's valuation since SNC acquired the First SNC LP Interest, Chheda's equation represented that SNC acquired the First SNC LP Interest at the Series A Valuation ($102,050,000) and that EquipmentShare was valued at $1.38 billion at the time of the proposed sale. See id. ¶¶59, 65. The Complaint alleges that both of these representations were false.

The Complaint alleges that, like Athena, SNC was not an original investor in the Series A Fund, but instead acquired the

---

[5] Once again, this figure appears to have been mistyped; the Series A Valuation was actually $102,050,000.

First SNC LP Interest in an undisclosed transaction that occurred after the Series A Offering. Id. ¶75. Therefore, the Complaint plausibly alleges that Chheda misrepresented that SNC acquired the First SNC LP Interest at the Series A Valuation. See id. ¶75. By extension, the Complaint also alleges that Chheda misrepresented EquipmentShare's implied valuation at the time of the First SNC Transaction.

The Complaint alleges that the Romulus Defendants made similar misrepresentations in connection with the remaining LP Interest Transactions between Plaintiffs and the Transferors. See id. ¶¶79, 80, 120, 121. I find that Plaintiffs have plausibly alleged that these misrepresentations were material because they were directly pertinent to the LP Interests' value. See Construction Industry, 22 F.4th at 8.

The Complaint also plausibly alleges that Plaintiffs relied on the Romulus Defendants' alleged misrepresentations. The Supreme Court has written that "the traditional and most direct way a plaintiff can demonstrate reliance is by showing that he was aware of the company's statements and engaged in a relevant transaction—e.g., purchasing common stock—based on that specific misrepresentation." Erica P. John Fund, Inc. v. Halliburton Co., 131 S.Ct. 2179, 2185 (2011). Plaintiffs have done so here. The Complaint alleges that Plaintiffs relied on the misrepresentations I described earlier when they calculated each LP Interest's value

and ownership stake in the Series A Fund. Thus, the Complaint plausibly alleges justifiable reliance.

Rather than challenging the sufficiency of the Complaint's allegations, the Romulus Defendants argue that Plaintiffs cannot establish reliance as a matter of law because of the non-reliance clauses and integration clause (jointly, the "non-reliance clauses") contained in the Transfer Agreements that governed each of the LP Interest Transactions. This contention, however, is not persuasive in view of the First Circuit's decision in Rogen v. Ilikon Corp., 361 F.2d 260 (1st Cir. 1966). There, the First Circuit reversed a grant of summary judgment for defendants in a Section 10(b) suit, in part because the court concluded that Section 29(a) of the Exchange Act precluded defendants from invoking contractual non-reliance clauses to establish the plaintiff's non-reliance as a matter of law.

Section 29(a) of the Exchange Act, codified at 15 U.S.C. §78cc(a), states: "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision [of the Exchange Act] or of any rule or regulation thereunder ... shall be void." 15 U.S.C. §78cc(a). In Rogen, the First Circuit described Section 29(a)'s application to contractual non-reliance clauses as follows:

> On analysis, we see no fundamental difference between saying, for example, "I waive any rights I might have because of your representations or obligations to make full disclosure" and

"I'm not relying on your representation or obligations to
make full disclosure." Were we to hold that the existence of
this provision constitutes the basis (or substantial part of
the basis) for finding non-reliance as a matter of law, we
would have gone far toward eviscerating Section 29(a).

Id. at 268 (footnote omitted). Thus, the First Circuit held that
the defendants in Rogen could not establish the plaintiff's non-
reliance as a matter of law for the purpose of summary judgment.
As the Third Circuit held in AES Corp. v. Dow Chem. Co., where it
affirmed a grant of summary judgment for defendants, the Romulus
Defendants may later be able to use the Transfer Agreements' non-
reliance clauses as evidence of whether Plaintiffs relied on the
Romulus Defendants' alleged misrepresentations. 325 F.3d 174, 180
(3rd Cir. 2003). However, under Rogen and Section 29(a), the
Romulus Defendants cannot use these clauses to establish
Plaintiffs' non-reliance as a matter of law in the context of this
motion to dismiss.

The two First Circuit cases relied upon by the Romulus
Defendants—Kennedy v. Josephthal, 814 F.2d 798 (1st Cir. 1987) and
Jackvony v. RIHT Financial Corporation, 873 F.2d 411 (1st Cir.
1989)—do not alter this conclusion for several reasons. First,
these cases do not mention Section 29(a) and its implications.
Second, these cases were decided in different postures. Kennedy
was an appeal from a grant of summary judgment for defendants. See
Kennedy, 814 F.2d at 800. Jackvony was an appeal from a directed

15

verdict for the defendant. See Jackvony, 873 F.2d at 413. In contrast, this case is before the court on a motion to dismiss, where the moving party carries a higher burden than on a motion for summary judgment or directed verdict.

As the Third Circuit wrote in AES Corporation, the Romulus Defendants may be able to introduce the non-reliance clauses as evidence of a lack of reasonable reliance, but they cannot introduce these clauses to establish Plaintiffs' non-reliance as a matter of law. See AES Corporation, 325 F.3d at 180. Whether the non-reliance clauses are sufficient to establish Plaintiffs' non-reliance on a motion for summary judgment or at trial can only be determined after discovery. Therefore, Plaintiffs have plausibly alleged that they relied on the Romulus Defendants' alleged misrepresentations.

The Complaint also alleges facts that plausibly give rise to a strong inference of scienter. Under the PSLRA, a complaint must plead facts giving rise to a strong inference of either: (1) "intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities," or (2) "a high degree of recklessness." City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp., 632 F.3d 751, 757 (1st Cir. 2011) (internal quotation marks and citations omitted). An inference is "strong" if a reasonable person would "deem it cogent and at least as compelling as any opposing

16

inference one could draw from the facts alleged." In re Biogen, 867 F.3d at 41. The court evaluates scienter by assessing the Complaint as a whole, not by reference to "piecemeal allegations." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 59 (1st Cir. 2008).

Plaintiffs have not alleged any irrefutable or "smoking gun" evidence. Nevertheless, viewed in the light most favorable to Plaintiffs, the Complaint plausibly alleges facts creating a strong inference that the Romulus Defendants intentionally misled Plaintiffs regarding the size and value of the Transferors' LP Interests.

As I said earlier, the Complaint plausibly alleges that the Romulus Defendants misrepresented, during the negotiations preceding all five LP Interest Transactions, that the Transferors had acquired their LP Interests in connection with the Series A offering. Romulus is the general partner of the Series A Fund. See Complaint ¶10. It is therefore reasonable to infer that Romulus knew that the Transferors had not purchased their LP Interests at the Series A valuation. The Complaint's particularized allegations that the Romulus Defendants misrepresented the same information in connection with each LP Interest Transaction gives rise to a strong inference that these misrepresentations were intentional and weakens any inference that the misrepresentations were negligent or unintentional. See In re Cabletron, 311 F.3d at 39 (stating

that the complaint's "particularized allegations of large-scale fraudulent practices over time . . . makes it difficult to escape a strong inference of" scienter).

A strong inference of scienter is buttressed by the Complaint's allegations of motive and concealment. As the Supreme Court wrote in Tellabs, Inc. v. Makor Issues & Rts., Ltd., motive is relevant to the scienter analysis, and "personal financial gain may weigh heavily in favor of a scienter inference." 127 S.Ct. 2499, 2511 (2007). The Complaint alleges that Chheda's father is the founder and CEO of each of the Transferors. See Complaint ¶¶15-17. It also alleges that the Transferors compensated the Romulus Defendants for brokering the LP Interest Transactions. See id. ¶156.

Moreover, when Plaintiffs asked to inspect the Series A Fund's books and records, the Complaint alleges that the Romulus Defendants initially refused to comply with the request unless Republic signed a form releasing Romulus from all potential claims that the Series A Plaintiffs might bring. See id. ¶189. From this allegation, one can plausibly infer that the Romulus Defendants were aware of their fraud and actively attempted to conceal it, further reinforcing the strong inference of scienter. See S.E.C. v. Durgarian, 477 F.Supp.2d 342, 353-355 (D. Mass. 2007), aff'd sub nom. S.E.C. v. Papa, 555 F.3d 31 (1st Cir. 2009).

Finally, Plaintiffs have plausibly alleged economic loss and loss causation, which are the final two elements of a Section 10(b) claim. See Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc., 22 F.4th 1, 7 (1st Cir. 2021). To satisfy these elements, the Complaint must plausibly allege that the Romulus Defendants caused Plaintiffs to suffer an economic loss by misrepresenting that the Transferors acquired their LP Interests in connection with the Series A offering.

The allegations that Plaintiffs purchased the Transferors' LP Interests "at prices far in excess of their actual value," and that the LP Interests are "worth at least 60 million less than plaintiffs were led to believe" satisfy the economic loss requirements. See Complaint ¶¶147, 155. And the allegations that the Romulus Defendants misrepresented when the Transferors purchased their LP Interests "to ensure that" Plaintiffs purchased the LP Interests "at prices far in excess of their actual value" satisfy loss causation requirement. See id. ¶155.

The Romulus Defendants argue that the Complaint fails to demonstrate an economic loss because it does not allege that "the LP Interests are worth less today than what [Plaintiffs] paid." Romulus MTD Mem. at 22 (Dkt. No. 27). This argument is not meritorious. In Affiliated Ute Citizens v. United States, the Supreme Court held that "the correct measure of damages" in a Section 10(b) case "is the difference between the fair value of

all that the [seller] received and the fair value of what he would have received had there been no fraudulent conduct." 92 S.Ct. 1456, 1473 (1972). This standard is traditionally used to determine economic loss. See Acticon AG v. China N. E. Petroleum Holdings Ltd., 692 F.3d 34, 38 (2d Cir. 2012).

The Complaint alleges that Plaintiffs believed they were purchasing LP Interests representing 93.59% of the Series A Fund's total LP Interests. Complaint ¶147. In fact, Plaintiffs only acquired 12% of the Series A Fund's total LP Interests. Id. ¶147. The Complaint also alleges that Plaintiffs purchased the Transferors' LP Interests "at prices far in excess of their actual value," id. ¶155, and that the LP Interests were "worth at least $60 million less" than what Plaintiffs believed they were worth, id. ¶2. Therefore, the Complaint alleges that because of the Romulus Defendants "fraudulent conduct," Plaintiffs did not receive the "fair value" of the LP Interests that they purchased. See Affiliated Ute, 92 S.Ct. at 1473. The Complaint thus plausibly alleges that the Romulus Defendants caused Plaintiffs to suffer economic loss. See id. at 1473; Acticon AG, 692 F.3d at 38.

The Supreme Court's reasoning in Dura Pharmaceuticals does not, as the Romulus Defendants argue, alter this conclusion. In Dura Pharmaceuticals, the Court wrote:

> Normally, in cases such as this one (i.e., fraud-on-the-market-cases) an inflated purchase price will not itself constitute or proximately cause the relevant economic loss.

> For one thing, as a matter of pure logic, at the moment the
> transaction takes place, the plaintiff has suffered no loss.
> The inflated purchase payment is offset by ownership of a
> share that, <u>at that instant</u>, possesses equivalent value.

<u>Dura Pharms.</u>, 125 S.Ct. at 1631 (emphasis in original). The facts alleged in this case, however, are materially different than those of <u>Dura</u>. First, the Supreme Court's reasoning in <u>Dura</u> was premised on the market-based pricing of publicly traded securities. <u>See id.</u> at 1631. In this case, the price of each of the Transferors' LP Interests was negotiated by the parties, not determined by the market. Second, the underlying Complaint in <u>Dura</u> failed to allege that the plaintiffs had suffered any loss as a result of purchasing stock at an artificially inflated price. <u>Id.</u> at 1634. In contrast, the Complaint in this case alleges that Plaintiffs not only purchased the Transferors' LP Interests at artificially inflated prices, but also that Plaintiffs have suffered an economic loss because those interests are worth over $60 million less than plaintiffs expected. <u>See</u> Complaint ¶2. Therefore, Plaintiffs have plausibly alleged that, unlike the <u>Dura</u> plaintiffs, they suffered an economic loss at "the moment the transactions took place." <u>See</u> <u>Dura</u>, 125 S.Ct. 1631. The applicability of the Court's reasoning in <u>Dura</u> is largely confined to fraud-on-the-market cases in which stock prices are determined by the market, rather than negotiated by the parties to the transaction.

In the context of publicly traded securities, if an investor learns that it paid an artificially inflated price for shares of stock before the market learns of this information, the investor may be able to sell its shares at the same price that it acquired them. See id. at 1631-32. In that circumstance, the misrepresentation will not have led to any loss. See id. at 1631-32. Therefore, an investor may be able to avoid incurring an economic loss despite purchasing stock in an artificially inflated price.

In this case, however, Plaintiffs acquired the Transferors' LP Interests through private transactions. The prices were negotiated by the parties, not set by the market, and loss occurred and could be calculated as of the time of the completed transaction. Therefore, Plaintiffs suffered an economic loss the moment that each of the LP Interest Transactions took place.

The Complaint also alleges economic loss causation with specificity that the Complaint in Dura lacked. In this case, the Complaint alleges that because of the Romulus Defendants' misrepresentations, Plaintiffs purchased LP Interests that were then, and are now, significantly less valuable than they expected. See Complaint ¶¶2, 147, 155. In contrast, the complaint in Dura failed to allege any connection between the defendants' alleged misrepresentations and a subsequent drop in the defendant

company's stock. See Broudo v. Dura Pharms., Inc., 339 F.3d 933, 939 (9th Cir. 2003), rev'd, 125 S.Ct. 1627 (2005).

Finally, the Complaint's allegations are sufficient to survive a motion to dismiss even if the LP Interests are now worth as much or more than Plaintiffs believed they were worth when they purchased them. Acticon AG is instructive on this point. There, the Second Circuit reasoned:

> [A] share of stock that has regained its value after a period of decline is not functionally equivalent to an inflated share that has never lost value. This analysis takes two snapshots of the plaintiff's economic situation and equates them without taking into account anything that happened in between; it assumes that if there was any intervening losses, they can be offset by the intervening gains. But it is improper to offset gains that the plaintiff recovers after the fraud becomes known against losses caused by the revelation of the fraud if the stock recovers value for completely unrelated reasons. Such a holding would place the plaintiff in a worse position than he would have been absent to fraud.

Acticon AG, 692 F.3d at 41. This case is similar. As discussed earlier, the value of Plaintiff's LP Interests in the Series A Fund is determined solely by the value of EquipmentShare. See Complaint ¶¶2, 11, 23-26. Plaintiffs allege that the Romulus Defendants misrepresented the size and value of the Transferors' LP Interests, but they do not allege that the Romulus Defendants misrepresented any facts about EquipmentShare's business activities, health, or prospects. While it is possible that EquipmentShare's valuation has increased since Plaintiffs acquired the Transferors' LP Interests, any such increase would be unrelated

to the Romulus Defendants' alleged fraud and does not negate Plaintiffs' alleged economic loss. See Acticon AG, 692 F.3d at 41.

As the Second Circuit said in Acticon AG, "[s]uch a holding would place [plaintiffs] in a worse position than [they] would have been absent the fraud. Id. at 41. If Plaintiffs had acquired 93.59% of the Series A Fund's total LP Interests, as they expected, they would have received a greater benefit from subsequent increases in EquipmentShare's valuation than any benefit they have received from holding 12% of the Series A Fund's total LP Interests. See id. at 41. Therefore, the Complaint plausibly alleges that Plaintiffs have suffered an economic loss, regardless of whether their LP Interests have appreciated in value since Plaintiffs acquired them.

In view of the foregoing, the Romulus Defendants' motion to dismiss Plaintiffs' federal claims is DENIED.

UNITED STATES DISTRICT JUDGE

24