# Exhibit D

Page 1

Volume I
Pages 1 to 321
Exhibits 1 to 49

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - -x
                                    :
 REPUBLIC MAXIMAL, LLC, et          :
 al.,                               :
                Plaintiffs,         :
                                    :   Civil Action No.
          vs.                       :   1:22-cv-10429
                                    :
 ROMULUS CAPITAL PARTNERS II,       :
 LLC, et al.,                       :
                Defendants.         :
- - - - - - - - - - - - - - - - - -x

         VIDEO-RECORDED DEPOSITION OF ROMULUS
CAPITAL PARTNERS II, LLC, by and through its
representative NEIL V. CHHEDA, a witness called by
the Plaintiffs, taken pursuant to Rule 30(b)(6) of
the Federal Rules of Civil Procedure, before
Alexander K. Loos, Registered Diplomate Reporter and
Notary Public in and for the Commonwealth of
Massachusetts, at the Offices of Holland & Knight,
LLP, 10 St. James Avenue, 11th Floor, Boston,
Massachusetts, on Monday, September 29, 2025,
commencing at 9:11 a.m.
PRESENT:
    PAG.LAW, PLLC
         (By Daniel C. Mazanec, Esq.; Manuel
         Ferro, Esq.; and Christina Mastrucci
         Lehn, Esq. (via videoconference))
         E-mail:  Dan@pag.law
                  Manuel@pag.law
                  Christina@pag.law
         1441 Brickell Avenue
         Suite 1120
         Miami, FL 33131
         786.292.1599
         for the Plaintiffs



Page 17

LLC, for purposes of this deposition?

A.    Okay.

Q.    Okay.  Next one is Romulus EquipmentShare Growth, LP.

Can we agree to refer to that entity as the "Series A fund"?

A.    Yes, sir.

Q.    Okay.  As you know, there will be some limited partner transfer and execution agreements that we'll be talking about in your deposition.

As to those agreements, fair to call them "transfer agreements"?

A.    Yes, sir.

Q.    And you'll know what I'm referring to?

A.    Yes.

Q.    And then the last one is there are three entities that we have called in a lot of filings in this case the transferors.  That's Athena 2, Inc., SNC 1, LLC, and Apollo1, Inc.

Will you understand that if I refer to the "transferors," it is a reference to those three entities?

A.    Yes.

Q.    Great.



Page 33

behalf of the GP?

A.   Yes.

Q.   And as you sit here today, you can't think of any other phone numbers you've used since January 1 of 2019?

A.   No.

Q.   Mr. Chheda, what is your current address?

A.   ████████████████████████████ ████████████████████████ Massachusetts 02493.

Q.   And that's your primary residence?

A.   Yes.

Q.   Same timeframe, Mr. Chheda, as my question about the phone.

From January 1 of 2019 to the present, how many e-mail addresses do you have?

A.   That I -- in my name, that I -- like Neil Chheda?  Or that I've used?

Q.   How many -- let's -- let's break it up that way.  We'll do --

So first you, Neil Chheda personally, how many e-mail addresses have you used since January 2019?

A.   Neil.chheda@gmail.com.  I'm going to get -- I don't know -- neil.chheda@gd.magic.d.


MAGNA
LEGAL SERVICES

Page 78

Q.   But let me try to ask a different way so that my question is more clear.

First, how many years have you been engaged in venture capital?

A.   It's been a long time.  More than ten years, maybe -- 10 to 15 -- yeah, 10 to 15 years.

Q.   And so as you sit here today with 10 to 15 years of experience as a venture capitalist, is it your testimony that you do not understand the difference between a limited partnership interest and a subscription?

A.   No.

MR. DEVOE:  Object to form.

THE WITNESS:  No.

BY MR. MAZANEC:

Q.   So you do understand that there's a difference?

MR. DEVOE:  Object to form.

THE WITNESS:  They're different words.

I mean partnership interest is partnership interest.  A subscription is a subscription. They're related, but they're different words.

BY MR. MAZANEC:

Q.   Right.


MAGNA
LEGAL SERVICES

Page 113

BY MR. MAZANEC:

Q.    Okay.  Mr. Chheda, you've just been handed two documents.  The first is marked as Exhibit 6 to your deposition.  It's identified by the Bates numbers ROMULUS_00031433 --

A.    Uh-huh.

Q.    -- to 31442.

Do you recognize the document that we've marked as Exhibit 6?

A.    6?  6, yes.

Q.    And this is a copy of the limited partnership transfer and substitution agreement between Tom Shippee -- S-h-i-p-p-e-e -- and Athena 2, Inc.?

A.    That's what it looks like.

Q.    And on the last page, Mr. Chheda, that is your signature on behalf of the GP?

A.    Yep.

Q.    You can put that aside for a moment.  I'll come right back to it.

The document that you've been handed marked as Exhibit 7 to your deposition and identified by Bates numbers REPUBLIC005639 to 5651.

Do you recognize that document?



Page 114

A.    It looks like it's two documents stapled together.

Q.    Yes.  And those two documents are a transfer agreement between Athena 2, Inc., and one of the Republic SPVs, and a side letter that accompanies it, correct?

A.    It looks like that.

Q.    And on the last page of the exhibit, that is your signature, your electronic signature, on behalf of the GP?

A.    Yes.

Q.    And on the third page, or the last page of the side letter, that is also your signature?

A.    The third page?

Q.    Last page of the side letter.

A.    Yes.

Q.    That is also your signature?

A.    Yes.

Q.    Okay.  So going back to Exhibit 6, and my question about the document, the transfer agreement being consistent with the limited partnership agreement.

First off, a limited partner can only transfer an interest in accordance with the limited



Page 131

(Document marked as Chheda

Exhibit 9 for identification)

THE REPORTER:  Exhibit 9.

BY MR. MAZANEC:

Q.   Okay.  Mr. Chheda, do you recognize the document that's been marked as Exhibit 9?

A.   Not -- not really.  I mean, I recognize the document, but not the notes on the side, no.

Q.   Okay.  I will represent to you, and for the record, this was Exhibit 7 to the deposition of Boris Revsin that does not have Bates numbers appearing on it.

A.   I see redlines on the side.  Sometimes it says who makes them.  Just my copy doesn't have that.

Q.   I see that.

The fact that the changes included adding the specific name of the Republic SPV that would be receiving -- that would own this transferred portion of the limited partnership interest, it's fair to say that these are edited, made by somebody on the Republic side?

A.   I don't know.

Q.   You don't know?



Page 132

So if you were the only person who made edits on behalf of Romulus, do you recognize any of these edits as your own?

A.   I don't recognize these edits as mine.

Q.   Okay.  And you see on this document that there is no edit to the "whereas" clause, the first "whereas" clause that we've been talking about in Exhibit --

A.   Correct.

Q.   -- 6 and 7, right?

A.   Uh-huh.

Q.   Has that refreshed your recollection as to whether, in fact, you were the person who made that change?

A.   It does not.

Q.   So you know that you were the only person who did it; you just -- made changes on behalf of Romulus; you just you can't recall making that specific change?

A.   What's the date of -- this is 2020 or 2019?

No, I don't remember -- I don't remember editing a -- no, I don't.

Q.   And assuming that, as we talked about, this is likely changes made by the Republic team --



Page 133

A.    Uh-huh.

Q.    -- the language that -- the "whereas" clause in Exhibit 7, the one that has been changed from Exhibit 6 --

A.    And 7 -- the "whereas" clause in -- this was 8.

The "whereas" clause in 7?  Okay.  Got it.

Q.    That was already in here when this was sent to Republic?

A.    When was this sent to Republic?

Can you repeat the question?

Q.    Sure.

The text, the "whereas" clause from Exhibit 7 that we've been talking about --

A.    Uh-huh.

Q.    -- that language appeared -- well, you testified a moment ago there is no change to that "whereas" clause in Exhibit 9?

A.    There's no change between 7 and 9.

Q.    Right.

A.    I agree.

Q.    And so that language was already included when this transfer agreement was sent in draft to Republic, correct?



Page 134

A.   I don't -- I don't know when -- what the date of this document is.  And what the date of this is, it appears to be so.  But I don't -- I don't know when this document was produced, when these redlines were made, or who made them.

Q.   Mr. Chheda, none of the transferors subscribed to the Series A fund, did they?

MR. DEVOE:  Object to form.

THE WITNESS:  None of the transferors?

MR. MAZANEC:  One second.

Mr. -- what's the basis, Tucker?

MR. DEVOE:  I'm not sure what you mean by the word "subscribed."  I think it's vague.

MR. JONES:  You also defined transferors to mean original limited partners and the transferors that Republic entered into agreements with at the outset of deposition.

MR. MAZANEC:  No, I actually didn't, Mike.

MR. JONES:  You did, but you can go ahead.

MR. MAZANEC:  Well, the transcript will show it, but that's fine.

BY MR. MAZANEC:

Q.   Let me just ask this differently.

You understood, Mr. Chheda, when we talked



Page 166

I think he is from Boston.

Q.    Let me correct it.

A.    I don't think he came.

Sorry.  Go ahead.

Q.    I could have gotten that wrong.

So on September 3rd, 2019, to your recollection is the day you remember meeting with Boris Revsin from Republic Labs in Boston?

A.    Yes.

Q.    In person?

A.    Yes.

Q.    And at that point in time, Boris expressed to you that Republic was interested in investing in EquipmentShare, and you told him -- let me leave it there.

He expressed to you that Republic was interested in investing in EquipmentShare, correct?

A.    Correct.

Q.    And one of the things you told him was that you expected there to be an upcoming primary for which you believed Romulus would have a substantial allocation, given its historic support of EquipmentShare?

A.    No.


MAGNA
LEGAL SERVICES

Page 219

But I remember him saying, "That's fine. That's not something that we should profulgate" -- I remember him saying "profulgate" because profulgate is not a word -- but that he would work it out on the back end.

And that he would probably have transfers upon transfers in his entity. That there would be limited partners in his entity, but he would probably sell that to someone, and that may sell it to someone.

So I recall having that discussion about the potential sellers in a secondary transaction on the 3rd with Boris.

Q.   So as you sit here today testifying as the corporate rep of the GP under oath, I have it correct that you remember very specific details of your meeting with Boris Revsin in person on September 3rd, but you cannot recall how you obtained the signatures for Athena 2, Inc., on the transfer agreements?

MR. DEVOE:  Object to form.

THE WITNESS:  I -- I recall the meeting very well because -- I even remember we walked down Tremont Street.  I live near Tremont Street.



MAGNA
LEGAL SERVICES

Page 252

(Document marked as Chheda

Exhibit 33 for identification)

THE REPORTER:  32 and 33.

THE WITNESS:  32 and 33, correct.

MR. DEVOE:  Just for the record, could we have which is which?

MR. MAZANEC:  Yeah.

32 is the transfer agreement between Belz and SNC 1, identified by the Bates ROMULUS_00076552 to 560, plus two additional pages, 00015467 and 68.

And then Exhibit 33 is the transfer agreement between Groveman and SNC 1 with a Bates ROMULUS_00076542 to 550, plus Page 15468.

BY MR. MAZANEC:

Q.   Mr. Chheda, Exhibit 32 is a copy of the transfer agreement between Belz and SNC 1.

A.   Yes.

Q.   If you turn to the last page, that's your signature there on behalf of the GP?

A.   Yes.

Q.   Who is Dhiraj Shah?

A.   Dhiraj Shah is Pushpa's husband.

Q.   Do you have any idea why he executed these agreements?



A.    No.

Q.    Your father never told you why he asked Mr. Shah to sign this?

A.    Correct.

Q.    Same -- same question briefly as to Exhibit 33.

This is the transfer agreement between Groveman and SNC 1, LLC.

A.    I see that.

Q.    And if you turn to the last page of that --

A.    Uh-huh.

Q.    -- that's your signature there on behalf of the GP?

A.    Yes.

Q.    Again, it's Dhiraj Shah signing on behalf of SNC 1, LLC?

A.    Yes.  I see that.

Q.    And is it the same answer that you don't know why Mr. Shah signed on behalf of SNC 1, LLC?

A.    Same answer.

Q.    To your knowledge, did your father have any contact with Belz or Groveman?

A.    I don't know.

Q.    To your knowledge, did he conduct due


MAGNA
LEGAL SERVICES

Page 259

Q.   And that's your signature for the GP?

A.   Here on the last page?  This?  Yeah.  Yes.

Q.   There should be I think three agreements here.

A.   Yeah.  There's also side letters.

Q.   And side letters, yes.

A.   Yes.

Q.   How -- who is Dhiraj Dedhia?

A.   Dhiraj Dedhia I think is the same as Dhiraj Shah.

Q.   And how do you know that?

A.   In my -- in my extended family, many people use the last name Shah, even though I think originally the last name is Dedhia.

Q.   Do you know where Mr. Dedhia resided at the time he executed that?

A.   I think in India.

Q.   How did you -- well, this -- let me ask this first:

It appears to be an electronic signature.

A.   Yes.

Q.   How did you obtain Mr. Dedhia's electronic signature?

A.   I can't recall.  I can't recall.



Page 272

A.    Yeah.

Q.    Let me direct your attention to the page before the side letter --

A.    Yes.

Q.    -- which has 10 at the bottom, the signature page.

A.    Yep.

Q.    That is your signature at the top on behalf of the GP?

A.    Yes.

Q.    And on behalf of SNC 1, LLC, again we have Dhiraj Dedhia?

A.    Yes.

Q.    How did -- how did you obtain Mr. Dedhia's electronic signature on this document?

A.    Same as when we discussed it previously.

Q.    Meaning you don't know how you got his signature?

A.    That's right.

Q.    And this is -- if you look at the first page, this was for 29.64 percent of that partnership interest that's being transferred, so there are I believe a couple of others.

      But my question, just briefly to move



42.

Tucker, did I give you a copy of the chats?

MR. DEVOE:  Yes, you did.  Thank you.

Dan, on 42, do you have a first page?  I wasn't sure.  The copy you handed me just doesn't have Page 1.

MR. MAZANEC:  Oh, it doesn't have a first page?

MR. DEVOE:  I can look off of the witness' copy for the first page, if necessary.

MR. MAZANEC:  We can get you a copy.

MR. DEVOE:  Thank you.  Okay.

BY MR. MAZANEC:

Q.   Okay.  So, Mr. Chheda, let's talk about Exhibit 41 first.

A.   Okay.

MR. MAZANEC:  And for the record, this is identified by Bates ROMULUS_00019740 to 19748.

BY MR. MAZANEC:

Q.   And my first question with this document is, just to go to the last page there, that's your signature on behalf of the GP?

A.   Yes.

Q.   And then the signature block for Apollo1,



Page 287

MR. DEVOE:  Okay.  Copy of the document.

MR. MAZANEC:  Apologies.

MR. DEVOE:  Thank you.

BY MR. MAZANEC:

Q.    And so what we've marked as Exhibit 45, Mr. Chheda, identified by the Bates numbers ROMULUS_00028514 to 524, this is an e-mail with an attachment that you sent to yourself --

A.    Uh-huh.

Q.    -- through your Gmail account on September 13th of 2020.

A.    Uh-huh.  Yes.

Q.    And this is a transfer agreement between the -- between Apollo1 and Republic SPV.

If you would turn to the last page with signatures on it.

A.    Yes.

Q.    That's your signature on behalf of the GP?

A.    Yes.

Q.    And how did you obtain the wet signature of Dhaval Lalan?

A.    Same -- the same way we've spoken about the other signatures.

Q.    And when you say the "same way," you mean



MAGNA
LEGAL SERVICES

Page 292

thing.

If you would turn to the last page.

A.    It's -- if it's the same question, it's the same answer.

Q.    The same answers across the board for the signatures and not knowing how you obtained the signature for Dhaval Lalan?

A.    I didn't -- why don't you ask the question.

Q.    Okay.  Let's do a clean record.

So if you turn to the last page of Exhibit 46, that's your signature on top for the GP?

A.    Yes.  Yes.

Q.    And the signature block for Apollo1 is signed by Dhaval Lalan, as an authorized person, and appears to be in wet ink?

A.    I see that.

Q.    How did you come to have a signed copy of this document with Mr. Lalan's signature on it?

A.    The same way that I usually would.  Either I would request Vasant or a family member to get the documents executed and send them back to me.  I would do that from my phone or from my laptop.

Q.    And as with Exhibit 45, you searched for any records of how this was signed by Mr. Lalan and



Page 299

A.    Yes.

Q.    And if you turn to the page with 19267 at the bottom.

A.    267.

Q.    267, last three.

A.    Okay.

Q.    That is your signature on behalf of the GP?

A.    Yes, sir.

Q.    And here SNC 1, LLC, is -- appears to be signed on by Dhiraj Dedhia.

A.    I see that.

Q.    That's the individual you testified earlier you believe is the same person as Dhiraj Shah?

A.    Is the same person.

Q.    Is the same person?

A.    Yeah.  That's the same person.

Q.    Do you know why the different -- the two different last names were used for that individual?

A.    I don't.

As I told you, many members in our extended family use Dedhia and Shah for lots of purposes. They've been doing that for decades.

In this instance, I don't know.

Q.    And as to the signature here, the

